UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Michael S. Etkin, Esq. (metkin@lowenstein.com)
Paul Kizel, Esq. (pkizel@lowenstein.com)
Wojciech F. Jung, Esq. (wjung@lowenstein.com)
Philip J. Gross, Esq. (pgross@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*



**Order Filed on March 19, 2019**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

In re:

ACETO CORPORATION, *et al.*,[1]

                    Debtors.

Chapter 11

Case No. 19-13448 (VFP)

(Jointly Administered)

## ORDER (A) AUTHORIZING AND APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL ASSETS COMPRISING THE DEBTORS' PHARMA BUSINESS; (B) AUTHORIZING AND APPROVING BID PROTECTIONS; (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) SCHEDULING A SALE HEARING; (E) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; <u>AND (F) GRANTING RELATED RELIEF</u>

The relief set forth on the following pages, numbered two (2) through twenty-four

(24), is hereby **ORDERED**.

**DATED: March 19, 2019**

_____
**Honorable Vincent F. Papalia**
**United States Bankruptcy Judge**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Aceto Corporation (0520); Aceto Agricultural Chemicals Corporation (3948); Aceto Realty LLC (7634); Rising Pharmaceuticals, Inc. (7959); Rising Health, LLC (1562); Acetris Health, LLC (3236); PACK Pharmaceuticals, LLC (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

Page:        2
Debtors:     ACETO CORPORATION, *et al.*
Case No.:    Case No. 19-13448 (VFP)
Caption:     Order (A) Authorizing And Approving Bidding Procedures In Connection With The Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B) Authorizing And Approving Bid Protections; (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice Thereof; And (F) Granting Related Relief

---

Upon the motion (the "Motion") [Doc. No. 109]² of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), seeking entry of an order (this "Order"), pursuant to sections 105, 363, 365 and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1, 6004-2 and 6004-3 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"):

(i) (a) authorizing and approving certain bidding procedures (as attached hereto as **Exhibit 1**, the "Bidding Procedures") in connection with the sale (the "Sale") of the Purchased Assets (as defined in the Stalking Horse Agreement (defined below)), which comprise substantially all of the Debtors' Pharma Business (as defined in the Motion) pursuant to that certain Asset Purchase Agreement, dated as of March 7, 2019 (together with the schedules thereto and related documents, and as may be amended, supplemented or otherwise modified from time to time, the "Stalking Horse Agreement"), substantially in the form attached to the Motion as **Exhibit B**, by and among Rising Pharmaceuticals, Inc., Pack Pharmaceuticals, LLC, Rising Health, LLC, and Acetris Health, LLC (together, the "Sellers" and each a "Seller"), Aceto Corporation, as Parent, and Shore Suven Pharma, Inc. (the "Buyer" or "Stalking Horse Bidder"),

---

² Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures attached hereto as **Exhibit 1**.

Page:       3
Debtors:    ACETO CORPORATION, *et al.*
Case No.:   Case No. 19-13448 (VFP)
Caption:    Order (A) Authorizing And Approving Bidding Procedures In Connection With The Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B) Authorizing And Approving Bid Protections; (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice Thereof; And (F) Granting Related Relief

---

subject to the outcome of an auction (the "Auction") if the Sellers receive one or more timely Qualified Bids (as defined in the Bidding Procedures); (b) authorizing and approving the Break-Up Fee and Expense Reimbursement (each as defined in the Bidding Procedures, and together, the "Bid Protections") for the Stalking Horse Bidder; (c) scheduling the Auction and a hearing (the "Sale Hearing") to consider approval of the Sale; (d) approving procedures related to the assumption and assignment of certain of the Sellers' executory contracts and unexpired leases (the "Assumption and Assignment Procedures"); (e) approving the form and manner of notice thereof; and (f) granting related relief (collectively, the "Bidding Procedures Relief"); and (ii) (a) authorizing the Sale of the Purchased Assets free and clear of Liens and Claims (each as defined in the Stalking Horse Agreement) and Interests,[3] except as provided in the Stalking Horse Agreement or other Proposed Asset Purchase Agreement of the Successful Bidder (each as

---

[3] As used herein, "Interests" means all encumbrances and other interests, including, but not limited to: (1) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal or termination of the Debtors' interest in the Purchased Assets, or any similar rights, including rights under section 365(h) of the Bankruptcy Code; (2) those relating to taxes arising under or out of in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing; and (3) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, rights of setoff or recoupment, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, and (b) all debts arising in any way in connection with any agreements, acts or failures to act of any of the Debtors or any of the Debtors' predecessors or affiliates, Claims, obligations, liabilities, rights of set off or recoupment, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of the Debtors' bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, Claims otherwise arising under doctrines of successor liability to the greatest extent permitted by applicable law.

Page:      4
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B) Authorizing And Approving Bid Protections; (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice Thereof; And (F) Granting Related Relief

---

defined in the Bidding Procedures); (b) approving the assumption and assignment of certain of the Sellers' executory contracts (each, an "Executory Contract") and unexpired leases (each, an "Unexpired Lease") related thereto (any such Executory Contract or Unexpired Lease designated by the Successful Bidder to be assumed and assigned pursuant to the Sale, a "Buyer Assumed Agreement" and collectively, the "Buyer Assumed Agreements"); and (c) granting related relief; and upon the First Day Declaration and the *Declaration of Mark Buschmann in Support of Debtors' Motion to Approve Bidding Procedures in Connection With the Sale of Substantially all Assets Comprising the Debtors' Pharma Business* [Doc. No. 109-6] (the "Buschmann Declaration"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and this Court having determined that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and upon all of the proceedings in these

Page:      5
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The
           Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
           Authorizing And Approving Bid Protections; (C) Approving Procedures For The
           Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
           (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
           Thereof; And (F) Granting Related Relief

---

Chapter 11 Cases had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is hereby

FOUND, CONCLUDED, AND DETERMINED THAT:

A.      The Debtors have demonstrated good and sufficient reasons for, and the best

interests of their estates, creditors, and other parties in interest will be served by, this Court

granting, to the extent provided herein, the relief requested in the Motion relating to the bidding

process, including approval of (1) the Bidding Procedures, (2) the Bid Protections, (3) the

Assumption and Assignment Procedures, and (4) the forms of the Cure Notice (as defined below)

and Sale Notice (as defined below) attached to the Motion as **Exhibit C** and **Exhibit D**,

respectively.

B.      Good and sufficient business reasons exist for the Court to authorize the Debtors

to enter into Stalking Horse Agreement in accordance with the terms of this Order and the

Bidding Procedures.

C.      The Debtors have demonstrated good and sufficient reasons for, and the best

interests of their estates will be served by, this Court scheduling the Sale Hearing to consider

granting the other relief requested in the Motion, including approval of the Sale and the transfer of

the Purchased Assets (and the assumption and assignment of the Buyer Assumed Agreements) to

the Successful Bidder free and clear of all Liens, Claims and Interests, except those expressly

Page:       6
Debtors:  ACETO CORPORATION, *et al.*
Case No.: Case No. 19-13448 (VFP)
Caption:  Order (A) Authorizing And Approving Bidding Procedures In Connection With The
          Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
          Authorizing And Approving Bid Protections; (C) Approving Procedures For The
          Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
          (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
          Thereof; And (F) Granting Related Relief

---

assumed as set forth in the Stalking Horse Agreement, pursuant to sections 363(f) and 365 of the

Bankruptcy Code.

      D.      The Bid Protections as set forth in Section 8.3 of the Stalking Horse Agreement to

be paid under the circumstances described therein to the Stalking Horse Bidder are: (1) an actual

and necessary cost of preserving the value of the respective Debtors' estates within the meaning

of section 503(b) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits

conferred upon the Debtors' estates by the Stalking Horse Bidder; and (3) reasonable and

appropriate in light of the size and nature of the proposed Sale and comparable transactions, the

commitments and accommodations of the Stalking Horse Bidder that have been made for the

benefit of the Debtors' estates, and the efforts that have been and will be expended by the Stalking

Horse Bidder.

      E.      The Bid Protections are the product of negotiations between the Debtors and the

Stalking Horse Bidder conducted in good faith and at arm's length, and the Stalking Horse

Agreement (including the Bid Protections) is the culmination of a process undertaken by the

Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay

the highest or otherwise best purchase price for the Purchased Assets to maximize the value of the

Debtors' estates.

      F.      Moreover, the Bid Protections are an essential and material inducement and

express condition of the Stalking Horse Bidder's entry into, and continuing obligations under, the

Page:       7
Debtors:    ACETO CORPORATION, *et al.*
Case No.:   Case No. 19-13448 (VFP)
Caption:    Order (A) Authorizing And Approving Bidding Procedures In Connection With The
            Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
            Authorizing And Approving Bid Protections; (C) Approving Procedures For The
            Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
            (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
            Thereof; And (F) Granting Related Relief

Stalking Horse Agreement.  Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Sale or otherwise be bound under the Stalking Horse Agreement (including the Stalking Horse Bidder's obligation to maintain its committed offer while such offer is subject to higher and/or otherwise better offers as contemplated by the Bidding Procedures).  The Bid Protections have induced the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid for the Purchased Assets on which the Debtors, their creditors and other bidders can rely, and which encourages and facilitates the Auction process.  The Stalking Horse Bidder has thus provided a material benefit to the Debtors, their estates and creditors by increasing the likelihood that the best possible purchase price for the Purchased Assets will be realized. Accordingly, the Bid Protections are fair, reasonable and appropriate, and necessary to facilitate a competitive, value-maximizing Sale for the benefit of the Debtors' estates.

G.      The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and except as set for in the Buschmann Declaration, no common identity of directors, officers or controlling stockholders exists among the Stalking Horse Bidder and the Debtors.  The Stalking Horse Bidder and its counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Bidder's negotiations of the Bid Protections and the Bidding Procedures and entry into the Stalking Horse Agreement.

Page:      8
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The
           Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
           Authorizing And Approving Bid Protections; (C) Approving Procedures For The
           Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
           (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
           Thereof; And (F) Granting Related Relief

---

H.      The Bidding Procedures are fair, reasonable, and appropriate and are designed to

maximize the recovery from the Sale of the Purchased Assets.

I.      The process for submitting Qualified Bids is fair, reasonable, and appropriate and

is designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and parties in

interest.

J.      Good and sufficient notice of the relief sought in the Motion has been provided

under the circumstances, and no other or further notice is required except as set forth in the

Bidding Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity

to object or be heard regarding the relief requested in the Motion has been afforded to all parties

in interest.

K.      The Sale Notice, the Cure Notice, and the Supplemental Cure Notice (each as

defined below) are appropriate and reasonably calculated to provide all interested parties with

timely and proper notice of this Order, the Bidding Procedures, the Sale, the Sale Hearing, and

any and all objection deadlines related thereto, including with respect to cure amounts and the

assumption and assignment of Executory Contracts and Unexpired Leases, and no other or further

notice is required of the foregoing.

L.      The findings and conclusions set forth herein constitute the Court's findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding

pursuant to Bankruptcy Rule 9014. To the extent any of the foregoing findings of fact constitute

Page:      9
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The
           Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
           Authorizing And Approving Bid Protections; (C) Approving Procedures For The
           Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
           (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
           Thereof; And (F) Granting Related Relief

---

conclusions of law, they are adopted as such. To the extent any of the following conclusions of

law constitute findings of fact, they are adopted as such.

IT IS HEREBY ORDERED THAT:

1.      The Motion and Bidding Procedures Relief is GRANTED as set forth herein.

2.      All objections or reservations of rights to the Motion or the Bidding Procedures

Relief requested therein that have not been incorporated herein or otherwise withdrawn, waived

or settled are hereby overruled.

**I.      Sales Dates and Deadlines**

3.      The Debtors are authorized to proceed with the Bidding Procedures and are

authorized to take any and all actions necessary or appropriate to implement the Bidding

Procedures (subject to the terms thereof) in accordance with the following dates and deadlines:

| Sale Dates and Deadlines | |
|---|---|
| Deadline to Serve Sale Notice and Cure Notice | No later than two (2) business days after entry of the Bidding Procedures Order |
| Cure Objection Deadline and Assignment Objection Deadline | Later of (a) ten (10) days after service of the Cure Notice or Supplemental Cure Notice, as applicable, and (b) the Sale Objection Deadline |

Page:      10
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B) Authorizing And Approving Bid Protections; (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice Thereof; And (F) Granting Related Relief

| | |
|---|---|
| Sale Objection Deadline (for parties other than the Committee and Indenture Trustee (each as defined below), Prepetition Administrative Agent and DIP Administrative Agent)[4] | March 28, 2019 at 5:00 p.m. prevailing ET |
| Bid Deadline | March 29, 2019 at 5:00 p.m. prevailing ET |
| Deadline to Notify Qualified Bidders | April 1, 2019 |
| Deadline to Select Starting Bid | April 1, 2019 |
| Auction (if required) | April 2, 2019 at 10:00 a.m. prevailing ET |
| Notice of Successful Bidder to be Filed | One (1) business day after conclusion of the Auction |
| Sale Objection Deadline (for the Committee and Indenture Trustee) | One (1) day after filing of the notice of the Successful Bidder  at 4:00 p.m. prevailing ET |
| Sale Objection Deadline (for Prepetition Administrative Agent and DIP Administrative Agent) | April 6, 2019 at 4:00 p.m. prevailing ET |
| Deadline for Reply Pleadings in Support of Sale | April 7, 2019 at 4:00 p.m. prevailing ET |
| Sale Hearing | April 8, 2019 at 10:00 a.m. prevailing ET |

---

[4] The Committee and Indenture Trustee will provide the Debtors and Stalking Horse Bidder with preliminary comments, if any, on the proposed Sale Order by no later than March 28, 2019, at 5:00 p.m. prevailing Eastern Time.

Page:      11
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The
           Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
           Authorizing And Approving Bid Protections; (C) Approving Procedures For The
           Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
           (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
           Thereof; And (F) Granting Related Relief

---

## II.    The Bidding Procedures

4.      The Bidding Procedures attached hereto as **Exhibit 1** are approved and shall govern all bids and bid proceedings relating to the sale of the Purchased Assets.

5.      If the Sellers do not receive a Qualified Bid with respect to the Purchased Assets other than the Stalking Horse Bid (as defined in the Bidding Procedures) in accordance with the Bidding Procedures, the Sellers will not hold the Auction and the Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the Purchased Assets in accordance with the Bidding Procedures; provided  that all parties' rights and interests with respect to the approval of any Sale to the Stalking Horse Bidder are expressly preserved.  Only if the Sellers receive one or more Qualified Bids with respect to the Purchased Assets in addition to the Stalking Horse Bid in accordance with the Bidding Procedures, the Sellers will conduct the Auction for the Purchased Assets.

6.      In the event of a competing Qualified Bid with respect to the Purchased Assets, the Stalking Horse Bidder shall be entitled, but not obligated, to submit Subsequent Bids (as defined in the Bidding Procedures) and shall be entitled, but not obligated, in any and all such Subsequent Bids to credit bid the full amount of the Bid Protections in lieu of cash, and for purposes of evaluating the Subsequent Bid, the full amount of such Bid Protections shall be treated as equal to cash in the same amount.

Page:      12
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B) Authorizing And Approving Bid Protections; (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice Thereof; And (F) Granting Related Relief

---

### III.   Stalking Horse Bidder, Bid Protections, and Stalking Horse Agreement

7.      The Debtors' entry into the Stalking Horse Agreement is authorized, subject to higher and/or better offers at the Auction regarding the Purchased Assets in accordance with the Bidding Procedures.

8.      The Debtors are authorized to perform all obligations of the Debtors set forth in the Stalking Horse Agreement that are intended to be performed prior to the Sale Hearing and prior to the entry of the Sale Order, subject to the terms of the Bidding Procedures.

9.      The Bid Protections for the Stalking Horse Bidder are approved in their entirety. The Debtors are authorized to pay any amounts that may become due to the Stalking Horse Bidder on account of the Bid Protections on the terms set forth in the Stalking Horse Agreement. The Stalking Horse Bidder shall be granted an allowed administrative expense claim under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code in an amount equal to the Break-Up Fee and Expense Reimbursement to the extent they become due in accordance with the terms of the Stalking Horse Agreement, which (if triggered) shall be payable in accordance with the terms of the Stalking Horse Agreement, without further order of or proceedings before this Court. Nothing in this Order shall be construed as authorizing and directing the payment of any Bid Protections to the Stalking Horse Bidder in the event the Stalking Horse Bidder becomes the Successful Bidder with respect to the Purchased Assets.

Page:      13
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The
           Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
           Authorizing And Approving Bid Protections; (C) Approving Procedures For The
           Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
           (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
           Thereof; And (F) Granting Related Relief

---

10.    No person or entity, other than the Stalking Horse Bidder, shall be entitled to any

expense reimbursement, break-up fee, "topping," or other similar fee or payment.

11.    Any deposit provided by the Stalking Horse Bidder and all other Qualified Bidders

shall be held in escrow by the Debtors or their agent, and shall not become property of the

Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the

terms of the applicable escrow agreement or order of this Court.

12.    The Stalking Horse Bidder shall not be required to seek or obtain relief from the

automatic stay under section 362 of the Bankruptcy Code to take any action necessary or required

under the Stalking Horse Agreement or any other sale-related document. The automatic stay

imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to

implement the preceding sentence, underlined, _provided_, _however_, that this Court shall retain exclusive

jurisdiction over any and all disputes with respect thereto.

**IV.    Sale Hearing**

13.    The Sale Hearing shall be held on **April 8, 2019 at 10:00 a.m. (prevailing**

**Eastern Time)** before this Court, the United States Bankruptcy Court for the District of New

Jersey, Martin Luther King, Jr. Federal Building, 50 Walnut Street, 3rd Floor, Newark, New

Jersey 07102.  Any objections to the Sale (a "Sale Objection") must (a) be in writing, (b) state the

basis of such objection with specificity, (c) conform to the Bankruptcy Rules and the Local Rules

and (d) be filed with the Bankruptcy Court and served upon the Notice Parties (as defined below)

Page:     14
Debtors:  ACETO CORPORATION, *et al.*
Case No.: Case No. 19-13448 (VFP)
Caption:  Order (A) Authorizing And Approving Bidding Procedures In Connection With The
          Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
          Authorizing And Approving Bid Protections; (C) Approving Procedures For The
          Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
          (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
          Thereof; And (F) Granting Related Relief

---

so as to be received not later than **5:00 p.m. prevailing Eastern Time on March 28, 2019** (the

"Sale Objection Deadline"); provided that (i) the Official Committee of Unsecured Creditors (the

"Committee") and the indenture trustee (the "Indenture Trustee") for the Convertible Senior

Notes due 2020 issued by Aceto Corporation may file any Sale Objection until one (1) day after

filing of the notice of the Successful Bidder at 4:00 p.m. prevailing Eastern Time, and (ii) the

Prepetition Administrative Agent and DIP Administrative Agent may file any Sale Objection until

April 6, 2019 at 4:00 p.m. prevailing Eastern Time.  Any party failing to timely file a Sale

Objection by the Sale Objection Deadline shall be forever barred from objecting and shall be

deemed to have consented to the Sale, including the transfer of the Debtors' right, title and

interest in, to, and under the Purchased Assets free and clear of any and all Liens, Claims and

Interests (each as defined in the Stalking Horse Agreement) in accordance with the Stalking

Horse Agreement or other definitive agreement with respect to the Sale.

        14.     The Sale Hearing may be adjourned by the Debtors, in consultation with the

Consultation Parties (as defined in the Bidding Procedures), from time to time without further

notice to creditors or parties in interest other than by announcement of the adjournment in open

court on the date scheduled for the Sale Hearing.

Page:      15
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B) Authorizing And Approving Bid Protections; (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice Thereof; And (F) Granting Related Relief

---

## V.    Notice Procedures

15.    The *Notice of Proposed Sale, Auction Date, Objection Deadline and Sale Hearing (Pharma Business)*, in the form substantially similar to that attached to the Motion as **Exhibit D** (the "Sale Notice"), is approved.

16.    The Debtors shall, within two (2) business days after entry of this Order, serve a copy of the Sale Notice by first class mail, postage prepaid to: (a) the Office of The United States Trustee for the District of New Jersey; (b) McGuireWoods LLP, c/o Kenneth Noble, Esq., as counsel for the DIP Agent and Prepetition Agent; (c) the Indenture Trustee for the Noteholders; (d) any proposed counsel to the Official Committee of Unsecured Creditors; (e) the U.S. Securities and Exchange Commission, New York Regional Office; (f) the Internal Revenue Service; (g) the U.S. Food and Drug Administration; (h) the Assistant Attorney General in charge of the Antitrust Division of the U.S. Department of Justice; (i) all applicable state and local taxing authorities; (j) all persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Purchased Assets during the previous six months; (k) all entities known by the Debtors that may have a lien, claim, encumbrance, or other interest in the Purchased Assets (for which identifying information and addresses are available to the Debtors); (l) all non-Debtor parties to the Executory Contracts and Unexpired Leases; (m) all of the Debtors' known creditors; (n) the Office of the Attorneys General of the States of New York and New Jersey; (o) the United States Attorney's Office for the District of New Jersey; (p) the United

Page:       16
Debtors:    ACETO CORPORATION, *et al.*
Case No.:   Case No. 19-13448 (VFP)
Caption:    Order (A) Authorizing And Approving Bidding Procedures In Connection With The
            Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
            Authorizing And Approving Bid Protections; (C) Approving Procedures For The
            Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
            (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
            Thereof; And (F) Granting Related Relief

_____

States Attorney's Office for the Eastern District of New York; and (q) all parties that have

requested to receive notice in these cases under Bankruptcy Rule 2002.

17.      Additionally, within four days after entry of this Order, or as soon as reasonably

practicable thereafter, the Debtors shall publish a notice, setting forth the information contained in

the Sale Notice, on one occasion, in either *The New York Times, Wall Street Journal* or *USA*

*Today*.  Such publication notice shall be deemed sufficient and proper notice of the Sale to any

other interested parties whose identities are unknown to the Debtors.

## VI.    Assumption and Assignment Procedures

18.      The *Notice of Assumption and Assignment of Executory Contracts and Unexpired*

*Leases in Connection with Proposed Sale of Certain Assets of the Debtors Relating to the*

*Pharma Business*, in the form substantially similar to that attached to the Motion as **Exhibit C**

(the "Cure Notice"), is approved.

19.      The Debtors shall, within two (2) business days of the entry of this Order, serve

the Cure Notice upon each non-Debtor counterparty[5] to each Executory Contract or Unexpired

Lease to which a Seller is a party that may be assumed and assigned to the Stalking Horse Bidder,

regardless of whether, at that time, the Executory Contract or Unexpired Lease is listed as being

_____

[5] The Cure Notice served upon each non-Debtor counterparty may, in the Debtors' discretion, include an
individualized Exhibit 1 that lists only the recipient counterparty's Executory Contract(s) and/or Unexpired
Lease(s).

Page:       17
Debtors:    ACETO CORPORATION, *et al.*
Case No.:   Case No. 19-13448 (VFP)
Caption:    Order (A) Authorizing And Approving Bidding Procedures In Connection With The
            Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
            Authorizing And Approving Bid Protections; (C) Approving Procedures For The
            Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
            (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
            Thereof; And (F) Granting Related Relief

---

proposed to be assumed and assigned to the Stalking Horse Bidder. The Cure Notice shall state

the date, time and place of the Sale Hearing and the date by which any objection to the

assumption and assignment of such Executory Contract or Unexpired Lease must be filed and

served. The Cure Notice shall also identify the amounts, if any, that the Debtors believe are owed

to each counterparty to an Executory Contract or Unexpired Lease to cure any defaults that exist

under such contract or lease (such amounts, the "Cure Costs") pursuant to section 365 of the

Bankruptcy Code. The Cure Notice does not constitute an admission that an Executory Contract

or Unexpired Lease is in fact an executory contract or unexpired lease for the purposes of section

365 of the Bankruptcy Code, and the Debtors reserve any and all rights with respect to the

Executory Contracts and Unexpired Leases. The inclusion of an Executory Contract or

Unexpired Lease on the Cure Notice shall not obligate the Successful Bidder to take assignment

of such Executory Contract or Unexpired Lease. Only those contracts that constitute (a) Buyer

Assumed Agreements pursuant to the Stalking Horse Agreement or (b) if the Successful Bidder is

not the Stalking Horse Bidder, Buyer Assumed Agreements identified in the Successful Bidder's

Proposed Asset Purchase Agreement, shall be assumed, assigned and sold to such Successful

Bidder.

20.     If any counterparty to an Executory Contract or Unexpired Lease objects for any

reason to any proposed Cure Costs set forth in the Cure Notice or any Supplemental Cure Notice,

such counterparty must (a) file with the Court a written objection (a "Cure Costs Objection") and

Page:      18
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The
           Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
           Authorizing And Approving Bid Protections; (C) Approving Procedures For The
           Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
           (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
           Thereof; And (F) Granting Related Relief

---

(b) serve such Cure Costs Objection, so as to be received no later than the later of (i) ten (10) days after service of the Cure Notice or Supplemental Cure Notice, as applicable and (ii) the Sale Objection Deadline (the "Cure Objection Deadline"), on: (i) counsel to the Debtors, Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020 (Attn: Steven E. Siesser, Esq. (ssiesser@lowenstein.com),   Wojciech F. Jung, Esq. (wjung@lowenstein.com) and Philip J. Gross, Esq. (pgross@lowenstein.com)); (ii) counsel to the Buyer, Reed Smith LLP, 599 Lexington Ave, New York, New York 10036 (Attn: Niket Rele, Esq. (nrele@reedsmith.com), John Algie, Esq. (jalgie@reedsmith.com) and Derek J. Baker, Esq. (dbaker@reedsmith.com)); (iii) the Office of The United States Trustee, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102 (Attn: Fran B. Steele (Fran.B.Steele@usdoj.gov) and David Gerardi, Esq. (David.Gerardi@usdoj.gov)); and (iv) proposed counsel to the Official Committee of Unsecured Creditors, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Jayme T. Goldstein, Esq. (jgoldstein@stroock.com) and Erez E. Gilad, Esq. (egilad@stroock.com)) and Porzio, Bromberg & Newman, P.C., 100 Southgate Parkway, P.O. Box 1997, Morristown, New Jersey 07962 (Attn:  Warren J. Martin, Jr., Esq. (WJMartin@pbnlaw.com) and Robert M. Schechter, Esq. (rmschechter@pbnlaw.com)) (collectively, the "Notice Parties").

21.     If, at any time and from time to time after the entry of this Order, the Debtors or the Stalking Horse Bidder or other Successful Bidder identify additional Executory Contracts or

Page:       19
Debtors:    ACETO CORPORATION, *et al.*
Case No.:   Case No. 19-13448 (VFP)
Caption:    Order (A) Authorizing And Approving Bidding Procedures In Connection With The Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B) Authorizing And Approving Bid Protections; (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice Thereof; And (F) Granting Related Relief

---

Unexpired Leases to be assumed and assigned as Buyer Assumed Agreements in accordance with the terms of the Stalking Horse Agreement or Successful Bidder's Proposed Asset Purchase Agreement, the Debtors shall serve a supplemental Cure Notice (each, a "Supplemental Cure Notice") by facsimile, electronic transmission, hand delivery or overnight mail on the applicable non-debtor counterparty and its counsel (if known) no later than ten (10) days before the closing ("Closing") of the Sale, or, if such Executory Contract or Unexpired Lease is identified less than ten (10) days prior to the Closing, by the date set forth on the Supplemental Cure Notice. Each Supplemental Cure Notice shall: (a) state the date, time and place of the Sale Hearing (or later hearing, if applicable); (b) state the date by which any objection to the assumption and assignment of such Buyer Assumed Agreement must be filed and served, which date, for the avoidance of doubt, shall be ten (10) days after service of the Supplemental Cure Notice; and (c) identify the proposed Cure Costs, if any.

22.    Each Cure Costs Objection must set forth with specificity each and every asserted default in any Executory Contract or Unexpired Lease and the monetary cure amount asserted by such counterparty to the extent it differs from the Cure Costs, if any, specified by the Debtors in the Cure Notice or Supplemental Cure Notice, as applicable.

23.    In the event that the Debtors and the non-debtor party cannot resolve a Cure Costs Objection, disputed Cure Costs shall not be paid until the resolution of any such disputes by the Court or mutual agreement of the Debtors, with the consent of the Stalking Horse Bidder to the

Page:       20
Debtors:    ACETO CORPORATION, *et al.*
Case No.:   Case No. 19-13448 (VFP)
Caption:    Order (A) Authorizing And Approving Bidding Procedures In Connection With The Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B) Authorizing And Approving Bid Protections; (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice Thereof; And (F) Granting Related Relief

---

extent required in the Stalking Horse Agreement, and the objecting party. Cure Costs Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing.  Any resolution of an objection to a Cure Cost occurring after the Sale Hearing shall nevertheless remain subject to the rights, obligations and duties of the Debtors and the Stalking Horse Bidder under the Stalking Horse Agreement.

24.     Any counterparty to an Executory Contract or Unexpired Lease that fails to timely file and serve a Cure Costs Objection shall be forever barred from asserting that Cure Costs are owed in an amount in excess of that set forth in the Cure Notice or Supplemental Cure Notice.  If no Cure Costs Objection is timely filed and served by the Cure Objection Deadline with respect to a Buyer Assumed Agreement, the Cure Costs identified in the Cure Notice or Supplemental Cure Notice, as applicable, with respect to the applicable Executory Contract(s) and/or Unexpired Lease(s) shall be the only amounts necessary to be paid to cure all monetary defaults pursuant to section 365(b) of the Bankruptcy Code under such Buyer Assumed Agreement(s), to the extent the Stalking Horse Bidder (or other Successful Bidder) ultimately decides to have the applicable Buyer Assumed Agreement(s) assumed and assigned to it.  Any party failing to timely file a Cure Costs Objection shall be deemed to have consented and forever barred from objecting to the Cure Costs and from asserting any additional Cure Costs in connection with such Buyer Assumed Agreement against the Debtors, their estates or the Successful Bidder, notwithstanding anything to the contrary in any Executory Contract or Unexpired Lease, or any other document.  To the

Page:      21
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The
           Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
           Authorizing And Approving Bid Protections; (C) Approving Procedures For The
           Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
           (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
           Thereof; And (F) Granting Related Relief

---

extent a Cure Costs Objection is resolved or determined unfavorably to the applicable Debtor,

such Debtor may, with the prior written consent of the Successful Bidder, seek to instead reject

the applicable Executory Contract or Unexpired Lease after such determination.

25.    If any counterparty to an Executory Contract or Unexpired Lease objects to the

assumption and assignment of such Executory Contract or Unexpired Lease for any reason

(including with respect to adequate assurance of future performance) other than the amount of the

proposed Cure Costs (an "Assignment Objection"), such counterparty must file and serve such

Assignment Objection so as to be received by the Notice Parties by no later than the later of (a)

ten (10) days after service of the Cure Notice or Supplemental Cure Notice, as applicable, and (b)

the Sale Objection Deadline (the "Assignment Objection Deadline"). The Court shall make any

and all determinations concerning an Assignment Objection, including adequate assurance of

future performance under the Buyer Assumed Agreements pursuant to sections 365(b) and (f)(2)

of the Bankruptcy Code, at the Sale Hearing (or such later hearing as may be scheduled).

26.    If no Assignment Objection is timely filed and served by the Assignment Objection

Deadline, the counterparty to an Executory Contract or Unexpired Lease shall be deemed to have

consented (including deemed consent under section 365(c)(1) of the Bankruptcy Code), to the

assumption, assignment and sale of the Executory Contract or Unexpired Lease to the Successful

Bidder if such Executory Contract or Unexpired Lease is elected by the Successful Bidder as a

Buyer Assumed Agreement and shall be forever barred from asserting any objection with regard

Page:      22
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B) Authorizing And Approving Bid Protections; (C) Approving Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice Thereof; And (F) Granting Related Relief

---

to such assumption, assignment and sale; provided, however, in the event that the Successful Bidder is not the Stalking Horse Bidder, the non-debtor parties to the Executory Contracts and Unexpired Leases to be assumed and assigned to such Successful Bidder shall have until 4:00 p.m. on the business day prior to the Sale Hearing to object to the assumption, assignment and/or sale of their Executory Contracts and Unexpired Leases to such Successful Bidder; provided further, however, any such objection may relate solely to adequate assurance of future performance by such Successful Bidder pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code.

27.     The Stalking Horse Bidder may add or remove any Buyer Assumed Agreement to be assumed by the Debtors and assigned to the Stalking Horse Bidder at any time until one (1) day prior to the Auction at 5:00 p.m. prevailing Eastern Time (notwithstanding anything to the contrary in the Stalking Horse Agreement).  A Qualified Bidder (other than the Stalking Horse Bidder) may add or remove any Buyer Assumed Agreement to be assumed by the Debtors and assigned to such Qualified Bidder until one (1) day prior to the Auction at 5:00 p.m. prevailing Eastern Time.

28.     Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and the Debtors' estates shall be relieved of all liability accruing or arising after the assumption and assignment of the Buyer Assumed Agreements.

Page:       23
Debtors:    ACETO CORPORATION, *et al.*
Case No.:   Case No. 19-13448 (VFP)
Caption:    Order (A) Authorizing And Approving Bidding Procedures In Connection With The
            Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
            Authorizing And Approving Bid Protections; (C) Approving Procedures For The
            Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
            (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
            Thereof; And (F) Granting Related Relief

---

29.    Notwithstanding anything in this Order to the contrary, unless Cigna (as defined in

the Objection of Cigna Entities to the Motion [Doc. No. 130] (the "Cigna Objection")) and the

Debtors agree otherwise, the Debtors shall provide to Cigna, through its counsel of record, as

soon as practicable after receipt of such information, (i) written notice (which may be by email) of

whether the Stalking Horse Bidder or any other Qualified Bidder has proposed to the Debtors to

have any or all of the Cigna Contracts (as defined in the Cigna Objection) assumed by the Debtors

and assigned to such Qualified Bidder as part of the Sale; (ii) the identity of any Qualified Bidder

that has so proposed; and (iii) adequate assurance information for each such Qualified Bidder,

including a good faith estimate as to the number of employees of the Debtors who will become

employees of such Qualified Bidder if that Qualified Bidder becomes the Successful Bidder.  The

identity of any Qualified Bidder (other than the Stalking Horse Bidder) and other information

provided to Cigna pursuant to the preceding sentence shall not be disclosed by Cigna or its

counsel to any third party unless and until such Qualified Bidder becomes the Successful Bidder.

The Debtors also shall, unless Cigna and the Debtors agree otherwise, provide to Cigna, through

its counsel of record, no later than the calendar day following the close of the Auction: (i) written

notice of Debtor's irrevocable decision as to whether or not it proposes to assume and assign any

or all the Cigna Contracts to the Successful Bidder as part of the Sale; and (ii) the identity of the

Successful Bidder.

Page:      24
Debtors:   ACETO CORPORATION, *et al.*
Case No.:  Case No. 19-13448 (VFP)
Caption:   Order (A) Authorizing And Approving Bidding Procedures In Connection With The
           Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
           Authorizing And Approving Bid Protections; (C) Approving Procedures For The
           Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
           (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
           Thereof; And (F) Granting Related Relief

---

## VII.    Miscellaneous

30.    The Debtors are authorized to take such actions as may be necessary or appropriate to implement and effectuate the terms of this Order, including, but not limited to, taking such actions as may be necessary or appropriate to comply with the Bidding Procedures.

31.    In the event of any inconsistency between the provisions of this Order and any Exhibit referenced herein or in the Motion, the provisions of this Order shall control.

32.    The Court shall retain exclusive jurisdiction to interpret, implement, and enforce the terms and provisions of this Order, the Bidding Procedures, and the Stalking Horse Agreement and decide any issues or disputes concerning this Order, the Bidding Procedures and the Stalking Horse Agreement and the rights and duties of the parties hereunder and/or thereunder, including the interpretation of the terms, conditions, and provisions hereof and/or thereof.

33.    All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of the Purchased Assets, the Auction, and any Sale.

34.    Notwithstanding anything contained herein to the contrary, including any findings of fact or conclusions of law, this Order does not constitute and shall not in any way be deemed to be or construed as approval by the Court of the mutual release of claims, by and among Aceto

Page:       25
Debtors:    ACETO CORPORATION, *et al.*
Case No.:   Case No. 19-13448 (VFP)
Caption:    Order (A) Authorizing And Approving Bidding Procedures In Connection With The
            Sale Of Substantially All Assets Comprising The Debtors' Pharma Business; (B)
            Authorizing And Approving Bid Protections; (C) Approving Procedures For The
            Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases;
            (D) Scheduling A Sale Hearing; (E) Approving The Form And Manner Of Notice
            Thereof; And (F) Granting Related Relief

---

Corporation, certain of the other Debtors, and the other parties thereto dated as of March 7, 2019

(the "Mutual Release"), which Mutual Release shall be subject to review and approval of the

Court only upon a motion filed by the Debtors on appropriate notice, and entry of this Order shall

not in any way constitute a release of any party.  The agreements recited on the record during the

hearing on March 18, 2019 are hereby "so ordered".

35.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or

6006(d), or otherwise, the terms and conditions of this Order shall be immediately effective and

enforceable upon entry.

## EXHIBIT 1

**Bidding Procedures**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be used by Rising Pharmaceuticals, Inc., Pack Pharmaceuticals, LLC, Rising Health, LLC, and Acetris Health, LLC (together, the "Sellers" and each a "Seller"), for the proposed sale of the Purchased Assets (as defined in the Stalking Horse Agreement), which comprise substantially all of the Debtors' Pharma Business, and the assumption of certain related liabilities, in the Sellers' jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), case number 19-13448 (VFP), pursuant to that certain Asset Purchase Agreement, dated as of March 7, 2019 (together with the schedules thereto and related documents, and as may be amended, supplemented or otherwise modified from time to time, the "Stalking Horse Agreement"), by and among the Sellers, Aceto Corporation, as Parent, and Shore Suven Pharma, Inc. (the "Buyer" or "Stalking Horse Bidder").

The Buyer has submitted a Qualified Bid (as defined below) for the Purchased Assets pursuant to the terms of the Stalking Horse Agreement (the "Stalking Horse Bid").

On March 19, 2019, the Bankruptcy Court entered an order, which, among other things, authorized the Bidding Procedures to enable the Sellers to determine the highest or otherwise best offer for the Purchased Assets through the Bidding Procedures (the "Bidding Procedures Order").

The sale transaction pursuant to the Stalking Horse Agreement is subject to competitive bidding as set forth herein.

## A.      ASSETS TO BE SOLD

The Sellers seek to complete the sale of the Purchased Assets and the assumption of the Assumed Liabilities described in the Stalking Horse Agreement.

Except as otherwise provided in the Stalking Horse Agreement or such other approved purchase agreement of the Successful Bidder (as defined below), all of each Seller's respective right, title and interest in and to the Purchased Assets to be acquired shall be sold free and clear of all Liens, Claims and Interests (each as defined in the Stalking Horse Agreement), except for Permitted Liens and Assumed Liabilities (each as defined in the Stalking Horse Agreement) as may be specified in the Stalking Horse Agreement, and with any such Liens, Claims and Interests to attach solely to the proceeds of the sale of each applicable Purchased Asset.

A party may participate in the bidding process by submitting a Qualified Bid for any or all of the Purchased Assets.

## B.      THE BIDDING PROCEDURES

To ensure that the Sellers receive the maximum value for the Purchased Assets, the Stalking Horse Agreement  is subject to higher and/or otherwise better offers at the Auction (if any) in accordance with these Bidding Procedures, and, as such, the Stalking Horse Agreement will serve as the "stalking horse" bid for the Purchased Assets.

1

### 1.    Key Dates

The key dates for the process contemplated herein are as follows:[6]

| Sale Dates and Deadlines | |
| --- | --- |
| Bid Deadline | March 29, 2019 at 5:00 p.m. prevailing ET |
| Deadline to Notify Qualified Bidders | April 1, 2019 |
| Deadline to Select Starting Bid | April 1, 2019 |
| Auction (if required) | April 2, 2019 at 10:00 a.m. prevailing ET |
| Notice of Successful Bidder to be Filed | One (1) business day after conclusion of the Auction |
| Sale Hearing | April 8, 2019 at 10:00 a.m. prevailing ET |

### 2.    Confidentiality

In order to participate in the bidding process, each person other than the Stalking Horse Bidder who wishes to participate in the bidding process (a "Potential Bidder") must (to the extent not previously provided) provide an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to any Potential Bidder) in form and substance satisfactory to the Sellers, on terms not less favorable in the aggregate to the Sellers than the confidentiality agreement signed by the Stalking Horse Bidder, as determined by the Sellers, and without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions, as determined by the Sellers.

### 3.    Due Diligence

The Sellers will afford any Potential Bidder that has executed or that will execute a confidentiality agreement in accordance with paragraph 2 above such due diligence access or additional information as the Sellers, in consultation with their advisors, deem appropriate, and within their reasonable business judgment.  The Sellers will use good faith efforts to provide to the Stalking Horse Bidder access to written information made available to any Qualified Bidder (as defined below) if not previously made available to the Stalking Horse Bidder.

Unless otherwise agreed to by the Debtors, in consultation with the Consultation Parties, none of the Sellers nor any of their representatives shall be obligated to furnish any due diligence

---

[6]    These dates are subject to extension or adjournment as provided for herein or in the Stalking Horse Agreement and in consultation with the Consultation Parties (as defined below).

information to any Qualified Bidder after the Bid Deadline, provided that the Sellers shall continue to provide due diligence to the Stalking Horse Bidder.

4.      **Provisions Governing Qualified Bids**

A bid submitted will be considered a "Qualified Bid" only if the bid complies with all of the following, in which case the party submitting the bid shall be a "Qualified Bidder"; provided that, if the Debtors receive a bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors may provide the bidder with the opportunity to remedy any deficiencies until one (1) day prior to the Auction:

a.      it expressly discloses whether the bid is for some or all of the Purchased Assets;

b.      it fully discloses the identity of each entity that will be bidding for or purchasing some or all of the Purchased Assets, including any equity holders in the case of a Potential Bidder which is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such bid (including any co-bidder or team bidder), and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed bid. A bid must also fully disclose any connections, relationships (business or otherwise), whether or not known, to the Sellers or agreements or understandings with the Sellers, the Stalking Horse Bidder or any other known bidders, Potential Bidder or Qualified Bidder, and/or any officer, director or equity security holder of the Sellers;

c.      it states that the Qualified Bidder offers to purchase, in cash, some or all of the Purchased Assets upon terms and conditions that the Sellers, in consultation with the Consultation Parties, reasonably determine are at least as favorable to the Sellers as those terms and conditions set forth in the Stalking Horse Agreement (or pursuant to an alternative structure that the Sellers, in consultation with the Consultation Parties, reasonably determine is no less favorable to the Sellers than the terms and conditions of the Stalking Horse Agreement). For the avoidance of doubt, any Qualified Bid must, either on its own or when considered together with other Qualified Bid(s), provide value in excess of the Stalking Horse Agreement plus the Break-Up Fee, Expense Reimbursement and minimum overbid requirements detailed below in Section 4(k);

d.      it provides a detailed description of any anticipated regulatory or governmental approvals necessary to consummate the bid including, but not limited to, all domestic or foreign antitrust or anti-competition approvals required;

3

e.     it includes a commitment to close the transactions within the timeframe contemplated by the Stalking Horse Agreement;

f.     it includes a binding and enforceable signed writing that the Qualified Bidder's offer is irrevocable unless and until the Sellers accept a higher and/or otherwise better bid and such Qualified Bidder is not selected as a Back-Up Bidder (as defined below); provided that if such Qualified Bidder is selected as the Successful Bidder, its offer shall remain irrevocable until three (3) months after the execution of the applicable Proposed Asset Purchase Agreement (as defined herein). Such writing shall guarantee performance of the Qualified Bidder by its parent entities, if any, or provide such other guarantee of performance requested by and acceptable to the Sellers (in consultation with the Consultation Parties);

g.     it shall be accompanied by a deposit into escrow with the Sellers of an amount in cash equal to ten percent (10%) of the aggregate cash portion of the purchase price in the Proposed Asset Purchase Agreement (the "Good Faith Deposit");

h.     it includes confirmation that all necessary internal and shareholder or similar approvals have been obtained prior to the bid;

i.     it includes a duly authorized and executed copy of an asset purchase agreement, including the purchase price for the Purchased Assets expressed in U.S. Dollars, together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Stalking Horse Agreement (collectively, the "Proposed Asset Purchase Agreement") and a proposed form of order to approve the sale, together with a copy marked to show amendments and modifications to the proposed form of sale approval order attached to the motion to approve the sale of the Purchased Assets to the Stalking Horse Bidder; provided, however, that such Proposed Asset Purchase Agreement shall not include any financing or diligence conditions, or any other conditions that the Sellers, in consultation with the Consultation Parties, reasonably determine are less favorable to the Sellers than the conditions in the Stalking Horse Agreement;

j.     it includes written evidence of (i) sufficient cash on hand to fund the purchase price or (ii) sources of immediately available funds that are not conditioned on third-party approvals or commitments, in each case, that will allow the Sellers, in consultation with the Consultation Parties, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Proposed Asset Purchase Agreement.  Such written evidence shall include the most current audited and the most current unaudited financial statements, or such other financial information of the Qualified Bidder as may be requested by and reasonably acceptable to the Sellers (collectively,

the "Financials"), or, if the Qualified Bidder is an entity formed for the purpose of acquiring some or all of the Purchased Assets, the Financials of the Qualified Bidder's equity holder(s), sponsors or other financial backer(s) that are sponsoring or guaranteeing the Qualified Bidder's performance; provided that if a Potential Bidder is unable to provide Financials, the Sellers may accept such other information sufficient to demonstrate to each Seller's reasonable satisfaction, in consultation with the Consultation Parties, that such Potential Bidder has the financial wherewithal to consummate the applicable sale transaction.  The Potential Bidder also must establish to the Sellers' reasonable satisfaction, in consultation with the Consultation Parties, that it has the financial ability to consummate its proposed transaction within the timeframe contemplated for consummation of the Stalking Horse Agreement;

k.      it (in combination with any other bids for some or all of such assets) provides for a cash purchase price that exceeds the aggregate cash consideration to be paid to or for the benefit of the Sellers' estates set forth in the Stalking Horse Agreement by at least $1,922,500, which represents the sum of: (i) the Break-Up Fee of $672,500, plus (ii) the maximum amount of the Expense Reimbursement of $750,000, plus (iii) an overbid of $500,000, and otherwise has a value to the Sellers, in their exercise of their reasonable business judgment, after consultation with their advisors and the Consultation Parties, that is greater or otherwise better than the value offered under the Stalking Horse Agreement (including taking into account the impact of any liabilities assumed in the Stalking Horse Agreement);

l.      it identifies with particularity which executory contracts and unexpired leases the Qualified Bidder wishes to assume and provides details of the Qualified Bidder's proposal for the treatment of related Cure Costs (as defined in the Bidding Procedures Order), and contains sufficient information concerning the Qualified Bidder's ability to provide adequate assurance of future performance with respect to executory contracts and unexpired leases to be assumed and assigned;

m.      it includes an express acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding acquiring the Purchased Assets prior to making its bid; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Proposed Asset Purchase Agreement; and (iv) is not entitled to any

expense reimbursement, break-up fee, termination fee, or similar type of payment in connection with its bid;

n.      it includes evidence, in form and substance reasonably satisfactory to the Sellers, in consultation with the Consultation Parties, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) or, if required, the equity holders of the Qualified Bidder, with respect to the submission, execution, delivery, performance and closing of the Proposed Asset Purchase Agreement;

o.      it provides an irrevocable undertaking by the Qualified Bidder to execute and deliver to the Sellers such other guarantee of performance or assurance reasonably acceptable to the Sellers;

p.      it states that the Qualified Bidder consents to the jurisdiction of the Bankruptcy Court, as applicable;

q.      it contains such other information reasonably requested by the Sellers;

r.      it contains written confirmation that the bidder has not engaged in any collusion with respect to the bidding or the sale process; and

s.      it is received by the applicable Notice Parties (as defined in, and in accordance with, Section B.5) on or prior to **5:00 p.m. (prevailing Eastern Time) on March 29, 2019** (the "Bid Deadline").

**Non-Conforming Bids.** Notwithstanding anything to the contrary in these Bidding Procedures, the Sellers in consultation with the Consultation Parties (as defined below), shall have the right to entertain any bid that does not conform to one or more of the requirements herein and deem such bid a Qualified Bid (a "Non-Conforming Bid"); provided, however, that such Non-Conforming Bid so entertained by the Sellers must nevertheless meet each of the following requirements: (a) the Stalking Horse Bidder is provided the right to modify its Stalking Horse Bid to also revise its bid to provide similar non-conforming requirements; (b) the Good Faith Deposit must be made in the amount specified above; (c) the bid must meet the minimum overbid requirements set forth in Section B.4(k) above; (d) any Subsequent Bid (as defined below) must meet the requirements set forth in Section B.8(g) below; and (e) any condition to closing set forth in the applicable Proposed Asset Purchase Agreement cannot be more onerous (in any material respect) to the Sellers than any similar conditions set forth Stalking Horse Agreement.

Notwithstanding anything in these Bidding Procedures to the contrary, the Buyer is deemed to be a Qualified Bidder with respect to the Purchased Assets and the Stalking Horse Bid is deemed to be a Qualified Bid for all purposes in connection with the Bidding Procedures, the Auction, and the Sale, and the Stalking Horse Bidder shall not be required to take any further action in order to attend and participate in the Auction (if any) or, if the Stalking Horse Bidder is the Successful Bidder, to be named the Successful Bidder at the Sale Hearing.

The Sellers shall promptly notify each Qualified Bidder in writing (including via email) as to whether or not its bid constitutes a Qualified Bid. If any bid is determined by the Sellers not to be a Qualified Bid, the Debtors will refund such bidder's Good Faith Deposit and all accumulated interest thereon within ten (10) business days after the Bid Deadline. The Sellers shall also notify the Consultation Parties, the Stalking Horse Bidder and all other Qualified Bidders in writing (including via email) as to whether or not any bids constitute Qualified Bids no later than one (1) business day after the notification to any Qualified Bidder that its bid constitutes a Qualified Bid and provide a copy of Qualified Bids (excluding the Stalking Horse Agreement) to the Stalking Horse Bidder and the Consultation Parties. The notices described in this paragraph shall not be given later than one (1) business day following the expiration of the Bid Deadline.

**Consultation Parties.** The "Consultation Parties" are (a) the DIP Agent and its counsel and advisors with respect to the Purchased Assets, (b) counsel and any other advisors to the official creditors' committee appointed in the Sellers' bankruptcy cases, and (c) the indenture trustee (the "Indenture Trustee") for the Convertible Senior Notes due 2020 issued by Aceto Corporation, and its counsel and advisors. Notwithstanding anything herein to the contrary, the Sellers shall not be required to consult with any Consultation Party during the bidding and Auction process to the extent such Consultation Party is a Potential Bidder, a Qualified Bidder, or a financing source for a bidder, including, if the Sellers determine, in their reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection or determination would be likely to have a chilling effect on potential bidding or otherwise be contrary to goal of maximizing value for the Sellers' estates from the sale process.

Subject to the terms of any orders entered by the Bankruptcy Court, after consultation with the Consultation Parties, the Sellers shall have the right and obligation to make all decisions regarding bids and the Auction as provided herein as the Sellers determine to be in the best interest of their estates.

5.      **Submission of Bids**

A Qualified Bidder that desires to make a bid regarding some or all of the Purchased Assets must deliver written copies of its bid, so as to be received on or before the Bid Deadline, to each of the following parties (the "Notice Parties"):

a.      counsel to the Sellers: Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020 (Attn: Steven E. Siesser, Esq. (ssiesser@lowenstein.com), Paul Kizel, Esq. (pkizel@lowenstein.com), Kenneth A. Rosen, Esq. (krosen@lowenstein.com), and Philip J. Gross, Esq. (pgross@lowenstein.com));

b.      counsel to the DIP Agent: McGuireWoods LLP, 1251 Avenue of the Americas, 20th Floor, New York, New York 10020-1104 (Attn: Kenneth Noble, Esq. (knoble@mcguirewoods.com ) and Benjamin B. Iselin, Esq. (biselin@mcguirewoods.com)); and

c.      proposed counsel to the Official Committee of Unsecured Creditors: Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New

York 10038 (Attn: Jayme T. Goldstein, Esq. (jgoldstein@stroock.com) and Erez E. Gilad, Esq. (egilad@stroock.com)) and Porzio, Bromberg & Newman, P.C., 100 Southgate Parkway, P.O. Box 1997, Morristown, New Jersey 07962 (Attn:  Warren J. Martin, Jr., Esq. (WJMartin@pbnlaw.com) and Robert M. Schechter, Esq. (rmschechter@pbnlaw.com)); and

d.    counsel to the Indenture Trustee: Drinker Biddle & Reath LLP, 600 Campus Dr., Florham Park, NJ 07932-1047 (Attn: Robert K. Malone, Esq. (Robert.Malone@dbr.com)).

**6.    Evaluation of Competing Bids**

A Qualified Bid will be valued based upon several factors including, without limitation: (a) the amount of such bid (including, among other things, the cash portion of the purchase price and the value provided by the assumption of liabilities); (b) the risks and timing associated with consummating such bid; (c) any proposed revisions to the Stalking Horse Agreement (including any additional conditions to closing); and (d) any other factors deemed relevant by the Sellers, in consultation with the Consultation Parties.

**7.    No Qualified Bids**

If the Sellers do not receive a Qualified Bid with respect to the Purchased Assets other than the Stalking Horse Bid, the Sellers will not hold an Auction (as defined below) and the Stalking Horse Bidder will be deemed the Successful Bidder upon the Bid Deadline with respect to the Purchased Assets.

**8.    Auction Process**

If the Sellers receive one or more Qualified Bids with respect to the Purchased Assets in addition to the Stalking Horse Bid, the Sellers will conduct an auction (the "Auction") for the Purchased Assets (which the Sellers intend to transcribe) at **10:00 a.m. (prevailing Eastern Time) on April 2, 2019**, at the offices of Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020, or such other location as shall be timely communicated by the Sellers to all entities entitled to attend the Auction. The Auction shall be conducted in accordance with the following procedures:

a.    only the Sellers, the Consultation Parties, the Notice Parties, the Stalking Horse Bidder, and any other Qualified Bidders, in each case along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person);

b.    only the Stalking Horse Bidder and such other Qualified Bidders will be entitled to participate as bidders in, or make any Subsequent Bids at, the Auction; provided that all such Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

8

c.     each Qualified Bidder shall be required to confirm in a manner acceptable to the Sellers and the Committee that it has not engaged in any collusion with respect to the bidding or the sale (including communicating with other Bidders during the Auction (concerning any aspect of the Auction or bidding) without the consent of the Debtors and the Committee on the record of the Auction;

d.     at least one (1) business day prior to the Auction, each Qualified Bidder (other than a Stalking Horse Bidder) must inform the Sellers whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall, subject to the terms of the Stalking Horse Agreement, nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction, or (ii) if selected as the Successful Bidder, three (3) months after the execution of the applicable Proposed Asset Purchase Agreement.  No later than one business day prior to the start of the Auction, the Sellers will provide copies of the Qualified Bid (or combination of Qualified Bids, if applicable) which the Sellers believe, in consultation with the Consultation Parties, is the highest or otherwise best offer for the Purchased Assets (the "Starting Bid") to the Stalking Horse Bidder, all other Qualified Bidders and the Consultation Parties;

e.     all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction;

f.     the Sellers, after consultation with their advisors and the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules: (i) are not inconsistent with these Bidding Procedures, title 11 of the United States Code (the "Bankruptcy Code"), any order of the Bankruptcy Court entered in connection herewith or the Stalking Horse Agreement; (ii) provide that bids be made and received on an open basis, with all material terms of each bid to be fully disclosed to all other Qualified Bidders at the Auction; and (iii) are disclosed to each Qualified Bidder at the Auction; provided, further however, that the Sellers, in consultation with the Consultation Parties, may decrease the bidding increment;

g.     bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each a "Subsequent Bid") providing a net value to the Sellers' estates of at least an additional $500,000 above the prior bid for the Purchased Assets; provided that the Sellers may, in consultation with the Consultation Parties, decrease the minimum overbid amount.  After the first round of bidding and between each subsequent round of bidding, the

9

Sellers shall announce the bid (including the identity of the bidder or bidders, the material terms of such bid and the value of such bid(s)) that they reasonably believe to be the highest or otherwise best offer for the Purchased Assets (the "Highest Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity, as reasonably determined by the Sellers, to submit a Subsequent Bid with full knowledge of the then Highest Bid. The failure of the Stalking Horse Bidder to bid in a particular round of bidding shall not preclude the applicable Stalking Horse Bidder from bidding in subsequent rounds, if any. For the purpose of evaluating the value of the consideration provided by the Subsequent Bids (including any Subsequent Bid by the Stalking Horse Bidder), the Sellers (in consultation with the Consultation Parties) will give effect (on a dollar for dollar basis) to the Break-Up Fee and the maximum amount of the Expense Reimbursement payable to the Stalking Horse Bidder under the Stalking Horse Agreement as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Sellers as reasonably determined by the Sellers, as well as any other items of value included in such Subsequent Bid. If the Stalking Horse Bidder bids at the Auction, the Stalking Horse Bidder will be entitled to credit bid on a dollar for dollar basis the amount of the Break-Up Fee and the maximum amount of the Expense Reimbursement. To the extent a Subsequent Bid has been accepted entirely or in part because of the addition, deletion or modification of a provision or provisions in the applicable Proposed Asset Purchase Agreement or Stalking Horse Agreement, the Sellers will identify such added, deleted or modified provision or provisions and the Qualified Bidders shall be given the opportunity to modify the applicable Proposed Asset Purchase Agreement or Stalking Horse Agreement in a manner that materially provides any additional value that factored into selecting a Subsequent Bid from another Qualified Bidder. The Sellers shall, in consultation with the Consultation Parties, reasonably determine whether an addition, deletion or modification of the applicable Proposed Asset Purchase Agreement or Stalking Horse Agreement meets the standard of providing additional value. For the avoidance of doubt, the Stalking Horse Bidder shall be entitled to submit additional bids and make modifications to the Stalking Horse Agreement at the Auction consistent with these Bidding Procedures;

h.   No participant (including but not limited to any counterparty to an executory contract or unexpired lease) during the Auction may lodge any objection during the Auction to the proposed Sale or the assumption/assignment of an executory contract or unexpired lease; objections to the Sale or any assumption/assignment of any executory contract or unexpired lease shall only be preserved if filed as a Sale

10

Objection, Cure Costs Objection or Assignment Objection (as the case may be) by the deadlines set forth in the Bidding Procedures Order;

i.     the Sellers shall, in their reasonable discretion and after consultation with the Consultation Parties, honor reasonable requests for breaks in the Auction; and

j.     the Auction (and, if necessary, the Sale Hearing (as defined below)) may be adjourned as the Sellers, in consultation with the Consultation Parties, deem appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to the Stalking Horse Bidder, all other Qualified Bidders, the United States Trustee and the Consultation Parties.

**9.     Selection of Successful Bid**

Prior to the conclusion of the Auction, the Sellers, in consultation with their advisors and the Consultation Parties, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer for the Purchased Assets is the highest and/or otherwise best offer for the Debtors, their estates and general unsecured creditors from among the Qualified Bidders (including the Stalking Horse Bidder) submitted at or prior to the Auction by a Qualified Bidder (such bid, the "Successful Bid" and the bidder making such bid, the "Successful Bidder") and communicate to the Stalking Horse Bidder and the other Qualified Bidders the identity of the Successful Bidder and the material terms of the Successful Bid. Upon identification of the Successful Bid at the conclusion of the Auction, the Sellers may not solicit, encourage or accept any additional bids, except if, following consultation with their legal and financial advisors and the Consultation Parties, the Sellers determine that rejecting an additional unsolicited bid submitted after the conclusion of the Auction would be inconsistent with their fiduciary duties. The determination of the Successful Bid by the Sellers at the conclusion of the Auction shall be final, subject to the exercise of the Debtors' fiduciary duties, subject only to approval by the Bankruptcy Court.

By submitting a Qualified Bid, all Qualified Bidders and the Stalking Horse Bidder expressly agree that, absent the consent of the Debtors, they shall not submit additional bids or seek to reopen the Auction after the Sellers have selected the Successful Bid and Back-Up Bid, if any, and any such bid shall not be considered by the Sellers or the Bankruptcy Court, subject to the exercise of the Debtors' fiduciary duties. As soon as reasonably practicable after conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made and a copy of such documents shall promptly be made available to the Debtors and the Consultation Parties. Within one (1) business day after conclusion of the Auction, the Sellers shall file a notice identifying the Successful Bidder with the Bankruptcy Court.

The Sellers will sell the Purchased Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court.

10.    **Designation of Back-Up Bidder**

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best bid at the conclusion of the Auction for the Purchased Assets, as determined by the Sellers, in the exercise of their business judgment and in consultation with the Consultation Parties, shall be deemed to have submitted the next highest or otherwise best bid for such assets (such bid, a "Back-Up Bid" and the Qualified Bidder submitting such bid, a "Back-Up Bidder") and shall be announced at the time to all Qualified Bidders participating in the Auction.

If for any reason the Successful Bidder fails to consummate its Successful Bid within the time permitted after the entry of the Sale Order, then the Sellers may deem the Back-Up Bidder to be the new Successful Bidder and its Back-Up Bid to be the new Successful Bid, and the Sellers will be authorized (but not directed), without further order of the Bankruptcy Court, to consummate a sale transaction with such Back-Up Bidder on the terms of its Back-Up Bid; provided, that if the Sellers elect to do so, the Sellers, within their discretion, (i) will promptly notify the Consultation Parties and file a written notice of such transaction with the Bankruptcy Court at least 24 hours in advance of consummation thereof, and/or (ii) may (but shall not be required to) seek approval for the consummation of such sale transaction with such Back-Up Bidder pursuant to a separate order to be submitted at a later date consistent with the terms of the Back-Up Bid.

Each Back-Up Bid must remain open until three (3) months after execution of the applicable Stalking Horse Agreement or Proposed Asset Purchase Agreement (the "Outside Back-Up Date"), except in the event the Stalking Horse Bidder is designated as the Back-Up Bidder in which case the Stalking Horse Bidder shall not be permitted to terminate the Stalking Horse Agreement until the earlier of (a) the date upon which an Alternative Transaction has been consummated following approval by the Bankruptcy Court, or (b) May 31, 2019 (as such date may be extended pursuant to Section 8.1(b) of the Stalking Horse Agreement).

11.    **Good Faith Deposit**

Except as otherwise provided in this paragraph with respect to the Successful Bid and Back-Up Bid, if any, the Good Faith Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within three (3) business days after the Auction. The Good Faith Deposit of a Successful Bidder shall be held until the closing of the sale of the Purchased Assets and applied in accordance with the Successful Bid.  The Good Faith Deposit of any Back-Up Bidder (other than the Stalking Horse Bidder) shall be returned within three (3) business days after the Outside Back-Up Date.  If the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Sellers will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, which may be retained by the Sellers as liquidated damages, in addition to any and all rights, remedies and/or causes of action that may be available to the Sellers at law or in equity, and, the Sellers shall be free to consummate the proposed transaction at the next highest or otherwise best bid at the Auction by a Qualified Bidder, without the need for an additional hearing or order of the Bankruptcy Court.  Notwithstanding any provision hereof, the terms pertaining to any Good Faith Deposit submitted by the Stalking Horse Bidder pursuant to the Stalking Horse Agreement (including, without limitation, the entitlements of the Stalking Horse Bidder and

Sellers to such Good Faith Deposit and the timing of return of any Good Faith Deposit to the Stalking Horse Bidder) shall be governed by the terms of the Stalking Horse Agreement and the Bidding Procedures Order.

### 12. Sale Is As Is/Where Is

Except as otherwise provided in the Stalking Horse Agreement, any Proposed Asset Purchase Agreement, the Successful Bid or any order of the Bankruptcy Court approving the sale of the Purchased Assets, the Purchased Assets sold pursuant to these Bidding Procedures shall be conveyed at the closing of the sale in their then-present condition, "AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED."

## C. THE BID PROTECTIONS

In recognition of the expenditure of time, energy, and resources, and because the agreement to make payment thereof is necessary to preserve the value of each of the Sellers' estates, the Sellers have agreed that, among other triggering events, if the Buyer is not the Successful Bidder, then the Sellers will pay the Buyer, pursuant to and in accordance with the terms of the Stalking Horse Agreement, (a) an aggregate "break-up" fee of $672,500, as more fully described in the Stalking Horse Agreement (as defined therein, the "Break-Up Fee"), and (b) an amount in cash equal to the Expense Reimbursement (as such term is defined in the Stalking Horse Agreement (the "Expense Reimbursement"), which is not to exceed $750,000.  The Break-Up Fee and Expense Reimbursement shall be payable as provided for pursuant to the terms of the Stalking Horse Agreement, and nothing herein shall be deemed to limit or otherwise modify the terms thereof, including other circumstances pursuant to which the Break-Up Fee and Expense Reimbursement may be payable.

Except for the Stalking Horse Bidder, no Qualified Bidder or other party submitting a bid shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment.

## D. SALE HEARING

The Sellers will seek entry of an order from the Bankruptcy Court, at a hearing (the "Sale Hearing") to begin at **10:00 a.m. (prevailing Eastern Time) on April 8, 2019** or as soon thereafter as counsel may be heard, to approve and authorize the sale to the Successful Bidder (including, without limitation, the assumption and assignment to the Successful Bidder of any executory contracts or unexpired leases to be assigned to  the Successful Bidder in accordance with the Stalking Horse Agreement or Proposed Asset Purchase Agreement, as applicable, at the Sale Hearing on terms and conditions determined in accordance with the Bidding Procedures). The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties, from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

## E. MISCELLANEOUS

The Auction and the Bidding Procedures are solely for the benefit of the Sellers, the Stalking Horse Bidder and the Consultation Parties, and nothing contained in the Bidding Procedures

Order, the Bidding Procedures or the Stalking Horse Agreement shall create any rights in any other person or bidder (including, without limitation, rights as third-party beneficiaries or otherwise) other than the rights expressly granted to the Successful Bidder under the Bidding Procedures Order.

Without prejudice to the rights of the Stalking Horse Bidder under the terms of the Stalking Horse Agreement and the Bidding Procedures Order, the Sellers may modify the rules, procedures and deadlines set forth herein, or adopt new rules, procedures and deadlines that, in their reasonable discretion, in consultation with the Consultation Parties, will better promote the goals of these Bidding Procedures (namely, to maximize value for the estates); provided, however, that the Sellers may not modify the Bid Protections afforded to the Stalking Horse Bidder in accordance with the Stalking Horse Agreement, unless agreed in writing by the Stalking Horse Bidder and Sellers, in consultation with the Consultation Parties.  For the avoidance of doubt, the Sellers may not modify the rules, procedures, or deadlines set forth herein, or adopt new rules, procedures, or deadlines that would impair in any material respect the Stalking Horse Bidder's right to payment of the Break-Up Fee or the Expense Reimbursement without the express written consent of the Stalking Horse Bidder. All such modifications and additional rules will be communicated to each of the Consultation Parties, the Notice Parties, Potential Bidders, and Qualified Bidders (including the Stalking Horse Bidder) or announced at the Auction.

The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine all matters arising from or relating to implementation of the Bidding Procedures Order.