> **THIS MOTION SEEKS TO REJECT CERTAIN CONTRACTS AND LEASES. PARTIES RECEIVING THIS MOTION WHOSE CONTRACTS OR LEASES ARE SUBJECT TO REJECTION SHOULD LOCATE THEIR NAMES ON EXHIBIT "A" TO THE PROPOSED FORM OF ORDER ATTACHED HERETO.**

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
Michael S. Etkin, Esq.
Wojciech F. Jung, Esq.
Philip J. Gross, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtors and Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| ACETO CORPORATION, *et al.*,[1] | Case No. 19-13448 (VFP) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: July 2, 2019 at 10:00 a.m. (ET)<br>Objection Deadline: June 25, 2019 at 4:00 p.m. (ET) |

**DEBTORS' SECOND OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES (II) ESTABLISHING A CLAIMS BAR DATE, AS APPLICABLE, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, submit this motion (the "Motion"), pursuant to sections 105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 3003, 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Aceto Corporation (0520); Tri Harbor Chemical Holdings LLC (*f/k/a* Aceto Agricultural Chemicals LLC, *f/k/a* Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (*f/k/a* Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (*f/k/a* Rising Pharmaceuticals, LLC, *f/k/a* Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (*f/k/a* PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

Rules"), for entry of a second omnibus order, in substantially the form submitted herewith (the "Proposed Order") (i) authorizing the Debtors to reject the contracts and leases listed on **Exhibit A** to the Proposed Order, effective as of the Rejection Date indicated on Exhibit A to the Proposed Order, (ii) establishing a deadline to file proofs of claim reflecting rejection damages, if any, as applicable, and (iii) granting certain related relief, and respectfully state as follows:

## PRELIMINARY STATEMENT

1. The relief the Debtors seek through this Motion is essential to stem the ongoing dissipation of value resulting from the Rejected Contracts and Leases (as defined below) relating to the Debtors' prior businesses. Pursuant to the Court's sale orders, the Debtors have sold their Pharma Business and Chemical Plus Business and certain contracts and leases related to such businesses have been assumed and assigned to the buyers thereof. Additionally, certain contracts and leases certain have been rejected by the Debtors pursuant to the First Omnibus Rejection Order (as defined below). However, the Debtors continue to have certain remaining contracts and leases related to such businesses that yield no net financial benefit to the Debtors. Under these circumstances, rejection of such contracts and leases (to the extent executory) is a sound exercise of the Debtors' business judgment and should be approved.

## JURISDICTION

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The statutory predicates for the relief requested herein are sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rules 3003, 6003, 6004, and 6006 (each to the extent applicable).

**GENERAL BACKGROUND**

4. On February 19, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of New Jersey.

5. The Debtors are operating their businesses and managing their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this Motion, no request has been made for the appointment of a trustee or examiner in the Chapter 11 Cases.

6. On February 28, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 Cases. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Doc. No. 80].

7. A detailed description of the Debtors' business and the facts surrounding the commencement of the Chapter 11 Cases is set forth in the *Declaration of Rebecca A. Roof Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") [Docket No. 19], which is incorporated herein by reference.[2]

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

A.  **The Sales of the Chemical Plus and Pharma Businesses**

8. As described in the First Day Declaration and various other pleadings filed with the Court, the Debtors commenced the Chapter 11 Cases with the goal of addressing immediate liquidity issues by consummating going concern sales of their Chemical Plus Business and their Pharma Business.

9. Accordingly, on February 22, 2019, the Debtors filed a motion seeking, among other things, (i) to establish bidding procedures for the sale of the Chemical Plus Business, (ii) authority to sell substantially all assets comprising the Chemical Plus Business free and clear of all claims, liens, rights, interests, and encumbrances, and (iii) authority to assume and assign certain executory contracts and unexpired leases related to the sale of the Chemical Plus Business (the "Chemical Plus Sale Motion") [Doc. No. 45].

10. Further, on March 8, 2019, the Debtors filed a motion seeking, among other things, (i) to establish bidding procedures for the sale of the Pharma Business, (ii) authority to sell substantially all assets comprising the Pharma Business free and clear of all claims, liens, rights, interests, and encumbrances, and (iii) authority to assume and assign certain executory contracts and unexpired leases related to the sale of the Pharma Business (the "Pharma Sale Motion") [Doc. No. 109].

11. On March 15, 2019, the Court entered an order approving bidding procedures in connection with the Chemical Plus Sale Motion (the "Chemical Plus Bidding Procedures Order") [Docket No. 142]. On March 19, 2019, the Court entered an order approving bidding procedures in connection with the Pharma Sale Motion (the "Pharma Bidding Procedures Order," and together with the Chemical Plus Bidding Procedures Order, the "Bidding Procedures Orders") [Docket No. 174].

12. Thereafter, the Debtors simultaneously conducted two section 363 sale processes pursuant to the Bidding Procedures Orders. This involved, among other things, (i) negotiating with prospective purchasers, (ii) reviewing, negotiating, and resolving objections related to the cure notices filed by the Debtors with respect to each sale, (iii) reviewing and analyzing bids, (iv) conducting an auction with respect to the sale of the Chemical Plus Business on April 12, 2019.

13. These sale processes resulted in the Debtors presenting and obtaining the approval of the successful bids with respect to each sale at hearings held merely one week within one another. On April 9, 2019, the Court conducted a sale hearing with respect to the Pharma Business, and the Court entered an order authorizing the sale of the Pharma Business on April 10, 2019 (the "<u>Pharma Sale Order</u>") [Docket No. 372]. On April 16, 2019, the Court conducted a sale hearing with respect to the Chemical Plus Business, and entered an order approving such sale (the "<u>Chemical Plus Sale Order</u>," and together with the Pharma Sale Order, the "<u>Sale Orders</u>") [Docket No. 429].

14. Subsequent to the entry of each respective Sale Order, the Debtors worked tirelessly to consummate the sales approved by such Sale Orders. The sale with respect to the Debtors' Pharma Business closed on April 19, 2019, and the sale with respect to the Debtors' Chemical Plus Business closed on April 29, 2019.

B. **<u>The Remaining Contracts and Leases</u>**

15. The Sale Orders authorized the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related to the Chemical Plus and Pharma Businesses upon the closing of each respective sale. *See* Chemical Plus Sale Order, p. 3 & ¶ 21; Pharma Sale Order, p. 3 & ¶ 20.

16. On May 30, 2019, the Court entered its *First Omnibus Order (I) Authorizing the Rejection of Certain Executory Contracts and Unexpired Leases, (II) Establishing a Claims Bar Date, as Applicable, and (III) Granting Related Relief* (the "First Omnibus Rejection Order") [Docket No. 599] granting relief similar to the relief sought herein.

17. While certain executory contracts and unexpired leases have or will be assumed and assigned to the respective buyers pursuant to the Sale Orders or have been rejected by the Debtors pursuant to the First Omnibus Rejection Order, the Debtors continue to have remaining contracts and leases related to such businesses that have not and will not be assumed or assigned in accordance with the Sale Orders and have not been previously rejected. The Debtors have identified various contracts and leases on Exhibit A to the Proposed Order submitted (the "Rejected Contracts and Leases") that are no longer valuable to, or needed by, the Debtors. Accordingly, in order to prevent the continued accrual of potential administrative expenses in connection with the Rejected Contracts and Leases, the Debtors seek entry of an order authorizing the rejection of the Rejected Contracts and Leases.

18. Among the Rejected Contracts and Leases set forth on Exhibit A to the Proposed Order are certain automobiles leases (the "Rejected Auto Leases"). Upon information and belief, all of the automobiles subject to the Rejected Auto Leases were returned to the appropriate dealers prior to the closing of the applicable sale of the Chemical Plus or Pharma Business.

C.   **The Bar Date Order**

19. On May 9, 2019, the Court entered its *Order (A) Establishing Deadlines to File Proofs of Claim Against the Debtors, Including But Not Limited to Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form and Manner of Notice of the Bar*

*Dates, (C) Authorizing Publication of the Bar Dates, and (D) Granting Related Relief* (the "Bar Date Order") [Docket No. 509].

20. Among other things, the Bar Date Order (i) establishes June 19, 2019 as the General Bar Date (as defined in the Bar Date Motion), (ii) establishes August 19, 2019 as the Governmental Bar Date (as defined in the Bar Date Motion), and (iii) requires "any person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, trusts, and Governmental Units) that asserts a claim that arises from the rejection of an executory contract or unexpired lease to file a proof of claim based on such rejection by the later of (x) the Bar Date and (y) the date that is thirty (30) days following the entry of the order approving such rejection, (the 'Rejection Claims Bar Date' and together with the General Bar Date and the Governmental Bar Date, collectively, the 'Bar Dates')". *See* Bar Date Order, ¶¶ 2 & 4.

## RELIEF REQUESTED

21. By this Motion, the Debtors seek entry of an order, substantially in the form submitted herewith (the "Order"), (i) authorizing the Debtors to reject the Rejected Contracts and Leases listed on Exhibit A to the Proposed Order submitted herewith, effective as of the date of rejection (the "Rejection Date") indicated on Exhibit A to the Proposed Order, (ii) establishing a deadline for the parties to the Rejected Contracts and Leases to file proofs of claim for claims arising out of, or related to, the rejection of any contract or lease that is the later of (a) the deadline established in these Chapter 11 Cases for the filing of proofs of claim, or (b) thirty (30) days from entry of an order approving the rejection of the executory contract, and (iii) granting related relief.[3]

---

[3] The Debtors reserve the right to reject other contracts and leases, and to remove any Contract or Lease from Exhibit A, prior to the entry of any order with respect to this Motion. In addition, the inclusion of a Contract or Lease on Exhibit A hereto does not constitute an admission by the Debtors that such Contract or Lease is an

**BASIS FOR RELIEF**

**A.  Rejection of the Rejected Contracts and Leases is a Reasonable Exercise of the Debtors' Business Judgment**

22. A chapter 11 debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease[.]" *See* 11 U.S.C. § 365(a); *see also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (section 365 of the Bankruptcy Code "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed").  A debtor's decision to reject an executory contract or unexpired lease is governed by the deferential "business judgment" standard.  *See In re Nickels Midway Pier, LLC*, 341 B.R. 486, 500-501 (D.N.J. 2006); *see also In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court"); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989) (same criterion).  Courts routinely approve motions to reject executory contracts and unexpired leases upon a showing that a debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.  *See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 492 (3d Cir. 1998); *In re Taylor*, 913 F.2d 102, 107 (3d Cir. 1990); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or unexpired lease by the debtor is appropriate under section 365(a) of the Bankruptcy Code.").

---

executory contract or unexpired lease under section 365 of the Bankruptcy Code or that such Contract or Lease was not terminated or expired prior to the Petition Date.  The Debtors reserve all rights to take the position that any Contract or Lease on Exhibit A is not an executory contract or unexpired lease or that such Contract or Lease was terminated prior to the Petition Date.  The Debtors further reserve the right to raise any defense to, or otherwise dispute, any rejection damages or other claims asserted in connection with any Contract or Lease on Exhibit A hereto.

23. Courts in the Third Circuit have defined "business judgment" as "[t]he presumption that in making business decisions not involving direct self-interest or self-dealing, corporate directors act on an informed basis, in good faith, and in the honest belief that their actions are in the corporation's best interest." *Official Comm. of Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.)*, 330 B.R. 67, 75 (Bankr. D. Del. 2005). The "business judgment" standard is not a strict test; it merely requires a showing by the debtor that rejection of an executory contract or unexpired lease will benefit the debtor's estate. *See, e.g., In re Decora Indus.*, Inc., No. 00- 4459, 2002 WL 32332749, at *8 (D. Del. May 20, 2002) (stating that "[a] debtor satisfies the 'business judgment' test when it determines, in good faith, that assumption of an executory contract will benefit the estate and unsecured creditors"); *In re Meehan*, 59 B.R. 380, 385 (E.D.N.Y. 1986) ("The business judgment test is a flexible one …. The primary issue under the business judgment test is whether rejection of the contract would benefit general unsecured creditors."); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) ("To meet the business judgment test, the debtor in possession must 'establish that rejection will benefit the estate'"); *In re Exide Techn.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) (stating that the business judgment standard "is not a difficult standard to satisfy and requires only a showing that [the debtor's decision] will benefit the estate"); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (observing that the business judgment standard is satisfied, and that a debtor's decision to assume or reject must be "summarily affirmed," where such decision is not "the product of bad faith, or whim or caprice") (quotation omitted).

24. Courts will not second-guess a debtor's reasonable and good faith business judgment concerning the rejection of an executory contract or unexpired lease, unless the decision is the product of bad faith, whim or caprice. *See In re HQ Global Holdings, Inc.*, 290

B.R. 507, 511 (Bankr. D. Del. 2003) (applying a business judgment standard, absent a showing of bad faith, whim, or caprice); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (same); *see also In re Summit Land. Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstance, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). The standard merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Sharon Steel Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

25.    A court may also rely on its general equitable powers to grant the relief requested in this Motion. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a). Application of section 105(a) in the context of this Motion is appropriate because the relief requested herein is consistent with the rehabilitative policy of Chapter 11 of the Bankruptcy Code, will reduce waste, and preserve the Debtors' and the Court's limited resources. Moreover, other bankruptcy courts in this and other Circuits have granted similar di Q7 3.0*See, e.g., See, e.g., In re Dots, Inc., et al., Case No. 14-11016* (DHS) (Bankr. D.N.J. Feb. 19, 2014); *In re B. Moss Clothing Co., Ltd.*, Case No. 08-33980 (NLW) (Bankr. D. N.J. Dec. 23, 2008) (order establishing procedures for lease rejections); *In re Ormet Corporation,* Case No. 13-10334 (MFW) (Bankr. D. Del. Nov. 21, 2013) (approving procedures for rejection of leases and executory contracts and abandonment of personal property related thereto); *In re LCI Holding Co., Inc. et al.*, Case No. 12-13319 (KG) (Bankr. D. Del. May 6, 2013) (same); *In re Old HB, Inc. (f/k/a Hostess Brands, Inc.) et al.*, Case No. 12-22052 (RDD) (Bankr. S.D.N.Y. Nov. 30, 2012) (approving lease rejection procedures in context of a wind down order); *In re Roomstore, Inc.*, Case No. 11-37790 (KLP) (Bankr. E.D. Va. Jan. 5, 2012); *In re Movie Gallery,*

*Inc.*, Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010); and *In re S & K Famous Brands, Inc.*, No. 09-30805 (KRH) (Bankr. E.D. Va. July 10, 2009).

26. Rejection of the Rejected Contracts and Leases as of the applicable Rejection Effective Dates is an exercise of the Debtors' sound business judgment. Given the sale of Chemical Plus and Pharma Businesses, the Rejected Contracts and Leases no longer provide any benefit or value to the Debtors' estates. Indeed, absent rejection of the Rejected Contracts and Leases, the Debtors may accrue avoidable administrative expenses without any accompanying benefit to their estates. This waste of the constrained resources of the estates will be to the detriment of the Debtors' stakeholders. Accordingly, the Debtors' decision to reject any or all of the Rejected Contracts and Leases is a reasonable exercise of the Debtors' sound business judgment and in the best interests of the Debtors' estates and creditors. The Debtors therefore submit the Court should grant the relief requested herein.

**B.   The Court May Establish an Effective Date for the Rejection of Contracts and Leases**

27. The Debtors respectfully submit that it is appropriate for the Court to order that the effective date for the rejection of the Rejected Contracts and Leases is the applicable Rejection Date as set forth on Exhibit A to the Proposed Order. To the extent that a Contract or Lease is related to the one of the sales, the Rejection Date reflects the closing date of such sale.

28. While section 365 of the Bankruptcy Code does not specifically address whether the Court may order rejection to be effective, many courts have held that bankruptcy courts may, in their discretion, authorize rejection as of a date appropriate for the equities of the case. *See e.g., In re Thinking Machs. Corp.*, 67 F.3d 1021, 1028 (1st. Cir. 1995) ("bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates

in favor of such remediation"); *In re US Airways Group*, 287 B.R. 643, 646-47 (Bankr. E.D. Va. 2002) (rejection of aircraft and engine leases effective on third business day after Debtor provide written notice of rejection); *In re Jamesway Corp.*, 179 B.R. 33, 36-37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010) (approving retroactive rejection where counterparty to contract suffers no prejudice on account of such rejection) ); *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("We cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution."); *see also In re At Home Corp.*, 392 F.3d 1064, 1065-66 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection), *cert. denied sub nom., Pac. Shores Dev., LLC v. Home Corp.*, 546 U.S. 814 (2005).

29.     Indeed, courts have approved the rejection of contracts and leases *nunc pro tunc* to the petition date or other dates. *See In re O'Neil Theaters, Inc.*, 257 B.R. 806, 807 (Bankr. E.D. La. 2000) (permitting the debtor to reject lease of non-residential property retroactively to the petition date when the debtor had ceased using such property prior to filing its bankruptcy petition; *In re Amber's Stores*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that rejection of lease retroactive to the petition date was warranted as debtor turned over the keys and vacated the premises pre-petition, and served the motion to reject leases as soon as possible); *see also, Thinking* Machines, 67 F.3d at 1028; *In re Adelphia Business Solutions, Inc.*, 322 B.R. 51 (Bankr. S.D.N.Y. 2005), aff'd, 482 F.3d 682 (2d Cir. 2007) (permitting retroactive rejection of a non-residential real property lease); *In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (stating that rejection has been allowed *nunc pro tunc* to the date of the motion or when

the premises were surrendered). *See, e.g., In re Great Atlantic & Pacific Tea Co.*, No. 10-24549 (Bankr. S.D.N.Y. Dec. 15, 2010) (authorizing rejection of leases for facilities closed pre-petition effective as of the Petition Date); *In re Jamesway Corp.*, 179 B.R. at 36-37; *In re The Reader's Digest Ass'n, Inc.*, No. 09-23529 (Bankr. S.D.N.Y Sept. 17, 2009) (approving retroactive rejection of eight leases).

30. Rejection of the Rejected Contracts and Leases as of the applicable Rejection Dates set forth on Exhibit A to the Proposed Order is appropriate. Substantially all of the Rejection Dates set forth on Exhibit A to the Proposed Order reflect the closing date for the sale of the Business to which the Rejected Contract or Lease relates. As a result of the consummations of the sales, the Debtors no longer have any use for any of the Rejected Contracts or Leases. Accordingly, the balance of the equities favors rejection of the Rejected Contracts and Leases as of the applicable Rejection Date. Absent such relief, the Debtors may incur additional administrative expenses under the Rejected Contracts and Leases with little to no accompanying benefit.

31. On the other hand, counterparties to the Rejected Contracts and Leases (the "Counterparties") will not be unduly prejudiced if the rejection is deemed effective as of the applicable Rejection Date. The Counterparties will receive the Motion and will have adequate opportunity to act accordingly. Additionally, in the case of the Rejected Auto Leases, the Debtors have returned such automobiles on or before the applicable Rejection Date. Allowing the Debtors to reject the Rejected Contracts and Leases *nunc pro tunc* to the Rejection Date will expedite the rejection process and will save substantial administrative costs and expenses. Accordingly, rejection of the Rejected Contracts and Leases as of the Rejection Effective Date,

and the attendant reduction in the estate's potential administrative costs, is appropriate under the circumstances.

C. **Notice of Bar Date for Filing Rejection Damage Claims**

32. Bankruptcy Rule 3003(c)(3) provides that "[t]he court shall fix . . . the time within which proofs of claim may be filed." Bankruptcy Rule 2002(a)(7) requires at least twenty one (21) days' notice by mail of the time fixed for filing proofs of claim pursuant to Bankruptcy Rule 3003(c).

33. The Debtors' Bar Date Order set the Rejection Claims Bar Date for the later of (x) the applicable Bar Date and (y) the date that is thirty (30) days following the entry of the order approving the rejection of an executory contract or unexpired lease. *See* Bar Date Order, ¶¶ 2 & 4. The Debtors propose to give notice of such Bar Dates to the Counterparties by service of the order approving this Motion. The Debtors will serve the order approving this Motion upon the Counterparties within three (3) business days of its entry by the Court, thereby providing substantially more notice of Rejection Claims Bar Date than required by Bankruptcy Rule 2002(a)(7).

**REQUEST FOR IMMEDIATE RELIEF**

34. Pursuant to Bankruptcy Rule 6004(h), the Debtors seek a waiver of any stay of the effectiveness of an order granting this Motion, to the extent that such stay applies to the relief requested in this Motion. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

35. The Debtors continue to assess their contracts and leases to identify those that are of little or no value or are burdensome to their estates. To the extent that such contracts and

leases have been identified, the Debtors seek to reject such contracts and Leases quickly to avoid further waste of estate assets. The Debtors believes that any delay or interruption in this process will cause immediate and irreparable harm to the Debtors' estates as the Debtors may be forced to incur needless costs, expenses and fees associated with the remaining contracts and leases past a prudent time determined in the Debtors' business judgment.

36. Accordingly, the Debtors respectfully request that the 14 day stay set forth in Bankruptcy Rule 6004(h), to the extent applicable, be waived so that this Order may be deemed effective immediately. Such relief is necessary and appropriate under the circumstances.

## RESERVATION OF RIGHTS

37. Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order or the inclusion of a contract or lease on Exhibit A to the Proposed Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission that a contract or lease is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (g) an admission that such Contract or Lease was not terminated prior to the Petition Date; (h) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment

made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim. The Debtors may have claims against the Counterparties to the Rejected Contracts and Leases. The Debtors reserve the right to take the position that any Contract or Lease listed on Exhibit A to the Proposed Order is not an executory contract or unexpired lease or that such Contract or Lease was terminated or expired prior to the Petition Date. The Debtors do not waive any such claims or related defenses by filing this Motion and/or listing any Contract or Lease on Exhibit A to the Proposed Order. The Debtors reserve the right to reject other contracts and leases, and to remove any contract or lease from Exhibit A to the Proposed Order, prior to the entry of any order granting this Motion. Accordingly, the Debtors hereby expressly reserve all of their rights with respect thereto.

## WAIVER OF MEMORANDUM OF LAW

38. Because the legal points and authorities upon which this Motion relies are incorporated herein and do not raise any novel issues of law, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law pursuant to Local Rule 9013-2 be deemed waived.

## NO PRIOR REQUEST

39. No prior request for the relief sought herein has been made by the Debtors to this or any other court.

## NOTICE

40. Notice of this Motion has been given to (i) all Counterparties to the Rejected Contracts and Leases; (ii) the Office of the United States Trustee for the District of New Jersey; (iii) the Internal Revenue Service; (iv) the New Jersey Division of Taxation Compliance and

Enforcement - Bankruptcy Unit; (v) the Office of the Attorney General of the State of New Jersey, Division of Law; (vi) the United States Attorney's Office for the District of New Jersey; (vii) the New York State Department of Taxation and Finance; (viii) the Office of the Attorney General of the State of New York; (ix) the United States Attorney's Office for the Eastern District of New York; (x) the Securities and Exchange Commission, New York Regional Office; (xi) McGuireWoods LLP, c/o Kenneth Noble, Esq., as counsel for the DIP Administrative Agent and Prepetition Administrative Agent; (xii) McCarter & English LLP, c/o Joseph Lubertazzi, Jr., Esq. and Deirdre E. Burke, Esq., as local counsel for the DIP Administrative Agent and Prepetition Administrative Agent, (xiii) the Indenture Trustee for the Noteholders; (xiv) Stroock & Stroock & Lavan LLP, c/o Erez E. Gilad, Esq., Jayme T. Goldstein, Esq., Gabriel Sasson, Esq., and Joanne Lau, Esq., as co-counsel for the Committee; (xv) Porzio, Bromberg & Newman, P.C., c/o Warren J. Martin, Jr., Esq., Robert M. Schecter, Esq., and Rachel A. Parisi, Esq., as co- counsel for the Committee; and (xvi) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002.

41. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form submitted herewith, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: June 7, 2019                                      Respectfully submitted,

                                                         **LOWENSTEIN SANDLER LLP**

                                                         /s/ *Kenneth A. Rosen*
                                                         Kenneth A. Rosen, Esq.
                                                         Michael S. Etkin, Esq.
                                                         Wojciech F. Jung, Esq.

Philip J. Gross, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
metkin@lowenstein.com
wjung@lowenstein.com
pgross@lowenstein.com

*Counsel to the Debtors and Debtors-in-Possession*