**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>ACETO CORPORATION, *et al.*,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 19-13448 (VFP)<br><br>(Jointly Administered)<br><br>Hearing Date: July 25, 2019, at 11:00 a.m. (ET) |

**THE AD HOC CONSORTIUM OF EQUITY HOLDERS' OBJECTION TO DEBTORS'
FIRST MODIFIED DISCLOSURE STATEMENT FOR FIRST MODIFIED JOINT
PLAN OF LIQUIDATION OF ACETO CORPORATION AND ITS AFFILIATE
DEBTORS**

Argo Group US, Inc., and its subsidiaries and affiliates, Scoggin Worldwide Fund Ltd., and HZ Investments Family LP (collectively, the "Ad Hoc Consortium of Equity Holders" or "Consortium," and each a "Consortium Member") hereby submits this objection (the "Objection") to the *First Modified Disclosure Statement for First Modified Joint Plan of Liquidation of Aceto Corporation and its Affiliated Debtors* [Dkt. No. 685] (the "Disclosure Statement") and, in support thereof, respectfully states as follows:

**JURISDICTION**

1.      This Court has jurisdiction over the Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984 and amended on September 18, 2012 (Simandle, C.J.).

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Aceto Corporation (0520); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

1

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. On February 19, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of New Jersey (the "Court"). The Debtors are operating their business and managing their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Consortium is comprised of certain holders of the common stock of Debtor Aceto Corporation ("Aceto Common Stock").[2] The Consortium Members collectively hold over 5% of the Aceto Common Stock.[3]

5. On February 28, 2019, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") in these Chapter 11 Cases.[4]

6. On April 4, 2019, the Debtors filed their respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs. [Dkt. Nos. 329-37].

7. As set forth in the *Declaration of Rebecca A. Roof in Support of First Day Relief* [Dkt. No. 19] ("First Day Declaration"), Debtors intention in commencing the Chapter 11 Cases was to address liquidity issues by consummating sales of their Chemical Plus Business and Pharma Business (each, as defined in the First Day Declaration). After seeking and obtaining Court approval for the bidding procedures and sale of the Chemical Plus Business and Pharma

---

[2] The *Verified Statement of the Ad Hoc Consortium of Equity Holders Pursuant to Bankruptcy Rule 2019* [Dkt. No. 733] is filed contemporaneously herewith.

[3] Upon information and belief this is objection is supported by other holders of Aceto Common Stock, as well.

[4] *Notice of Appointment of Official Committee of Unsecured Creditors* [Dkt. No. 80].

Business, the Debtors closed the sale of the Pharma Business on April 19, 2019 and the sale of the Chemical Plus Business on April 29, 2019.[5]

8. On June 17, 2019, Debtors filed a *Joint Plan of Liquidation of Aceto Corporation and its Affiliated Debtors* [Dkt. No. 639] and the *Disclosure Statement for the Joint Plan of Liquidation of Aceto Corporation and its Affiliated Debtors* [Dkt. No. 640].

9. On June 27, 2019, Debtors filed the *First Modified Joint Plan of Liquidation of Aceto Corporation and its Affiliated Debtors* [Dkt. No. 684] (the "Plan") and the accompanying Disclosure Statement. At the same time, Debtors filed their *Motion for Entry of an Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing to Consider the Adequacy of the Disclosure Statement and Confirmation of the Plan; (III) Approving the Form and Manner of Notice of the Combined Hearing; (IV) Establishing Deadlines and Procedures for Filing Objections to Confirmation of the Plan; (V) Establishing Deadlines and Procedures for Voting on the Plan; (VI) Approving Solicitation Procedures; (VII) Establishing Procedures for Tabulation of Votes; and (VIII) Granting Related Relief* [Dkt. No. 686] ("Disclosure Statement Motion").

---

[5] *Order (A) Authorizing and Approving Bidding Procedures in Connection with the Sale of Substantially All Assets Comprising the Debtors Chemical Plus Business; (B) Authorizing and Approving Bid Protections; (C) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (D) Scheduling a Sale Hearing; (E) Approving the Form and Manner of Notice Thereof; and (F) Granting Related Relief* [Dkt. No. 142]; *Order (A) Authorizing and Approving Bidding Procedures in Connection with the Sale of Substantially All Assets Comprising the Debtors Pharma Business; (B) Authorizing and Approving Bid Protections; (C) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (D) Scheduling a Sale Hearing; (E) Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief* [Dkt. No. 174]; *Order Authorizing and Approving the Sale of Substantially All Assets Comprising the Debtors Pharma Business Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (B) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief* [Dkt. No. 372]; *Order (A) Authorizing and Approving the Sale of Substantially All Assets Comprising the Debtors Chemical Plus Business Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (B) Authorizing the Debtors to Perform their Obligations Under the Purchase Agreement, (C) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (D) Granting Related Relief* [Dkt. No. 429].

10. The Plan contemplates the further liquidation of the Debtors' assets, including, *inter alia*, the proceeds from the sale of Debtors Chemical Plus Business and Pharma Business, and the anticipated proceeds from certain litigation initiated by the Debtors.[6] *See, e.g.*, Plan §§ 1.09, 1.23, 1.62, 1.95.

11. According to the Disclosure Statement, administrative and priority claims, and creditor classes 1 and 2 (priority and secured claims) are all expected to be paid in full under the Plan. *See* Disclosure Statement § I.D. The Disclosure Statement does not provide the estimated recovery under the Plan for classes of general unsecured creditors (*i.e.*, Classes 3A-5). *See id.* Notably, three out of four of the exhibits to the Disclosure Statement, the "Preliminary Version of Distribution Calculation (Exhibit B), the "Preliminary Version of Wind-Down Budget (Exhibit C), and "Hypothetical Liquidation Analysis" (Exhibit D), are "to be filed" and have not be filed publicly to-date. *See id.*

12. The Consortium Members are members of Class 6A (Interests in Aceto) under the Plan. *See id.*

13. On July 15, 2019, the Debtors filed their corporate monthly operating report for the period of April 1, 2019 to April 30, 2019 [Dkt. No. 723] (the "April MOR"). Based on the April MOR and other publicly available information, the Consortium strongly believes that unsecured creditors will be paid in full under the Plan and the holders of Aceto Common Stock are "in the money" under the Plan.[7] Accordingly, the holders of Aceto Common Stock need a

---

[6] *See, e.g.*, Adversary Complaint, *Aceto Corp., et al. v. Reddy, et al.* (*In re Aceto Corp.*), Adv. Pro. No. 19-01981-VFP (Bankr. D.N.J. May 31, 2019) [Dkt. No. 1] (the "Reddy Adversary Proceeding") (alleging fraud, negligent misrepresentation, and breach of contract and the duty of good faith and fair dealing in connection with Debtors' purchase of certain rights in pharmaceutical products). The Reddy Adversary Proceeding seeks substantial damages arising from defendants' misconduct in connection with a multi-million dollar transaction.

[7] Accordingly, the Plan, which does not afford holders of Aceto Common Stock any rights, may suffer from confirmation infirmities.

voice in the Plan confirmation process to protect their interests in the value of the Debtors distributable assets and any efforts to increase the value of the Debtors' distributable assets through litigation or otherwise, as any increase in the value of the Debtors' distributable assets would likely be for equity holders' sole benefit.

14. The Consortium intends to promptly request that the U.S. Trustee appoint an equity committee to represent the interests of the holders of Aceto Common Stock in connection with Plan confirmation.

## OBJECTION

15. Section 1125 of the Bankruptcy Code prohibits the solicitation of votes on a reorganization plan prior to court approval of a written disclosure statement, after notice and a hearing, which contains "adequate information." *See* 11 U.S.C. § 1125(b).

16. "Adequate information" is defined by the code as "information of a kind, and in sufficient detail, as far as is reasonably practicable . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1); *see Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'").

17. The primary purpose of a disclosure statement is to provide "adequate information" to parties in interest about the terms of the proposed plan, allowing for both an informed vote and knowledgeable participation in the confirmation process. *See In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988) ("The disclosure statement was

intended by Congress to be the primary source of information upon which creditors and shareholders could rely in making an informed judgment about a plan of reorganization."). Accordingly, "[a] disclosure statement . . . is evaluated . . . in terms of whether it provides sufficient information to permit enlightened voting by holders of claims or interests." *In re BSL Operating Corp.*, 57 B.R. 945, 950 (Bankr. S.D.N.Y. 1986).

18. Here, the Disclosure Statement does not contain information that would enable a hypothetical investor typical of or similar to holders of Aceto Common Stock to make an informed decision about the Plan. In particular, in its current form, the Disclosure Statement does not provide: (i) any estimate of the Debtors' "Net Distributable Asset;" (ii) the "Estimated Allowed Amount" of claims for any class of claims; (iii) a preliminary "Distribution Calculation;" (iv) an estimated "Wind-Down Budget;" or (v) a "Hypothetical Liquidation Analysis."

19. The Consortium strongly believes, based upon the information in the April MOR and other public sources, that the Debtors' distributable assets are sufficient to satisfy all higher-priority classes of claims under the Plan and, thus, holders of Aceto Common Stock stand to recover on their equity interests under the Plan.

20. Any incremental (or saved) value in the Debtors' distributable assets likely inures to the sole benefit of the holders of Aceto Common Stock; higher-priority classes that get paid in full under the Plan would have no interest in whether and how this value is achieved.

21. In this scenario, the holders of Aceto Common Stock are the only creditor constituency with any incentive to scrutinize the professional fees charged by the Debtors' professionals in connection with the administration of the Debtors estate and, particularly relevant here, the prosecution of causes of action belonging to the Debtors ("Causes of Action").

If excess professional fees are charged and paid out of the Debtors' estate, such fees are coming out of the pockets of the holders of Aceto Common Stock, not secured or unsecured creditors. The holders of Aceto Common Stock, thus, need the means and opportunity to meaningfully evaluate and, if necessary, challenge such fees.

22. More specifically, assuming the Consortium is correct that holders of Aceto Common Stock are "in the money," holders of Aceto Common Stock have an interest in the Debtors' Wind-Down Budget and the prosecution of Causes of Action, such as the Reddy Adversary Proceeding.[8] As the sole beneficiaries of any proceeds from Debtors' Causes of Action, holders of Aceto Common Stock would, in order to evaluate their treatment under the Plan, require: (a) the opportunity to and information required to meaningfully evaluate the value of any potential recovery on Debtors' Causes of Action; (b) an opportunity to and the information required to evaluate the risks associated with Debtors' Causes of Action; and (c) an opportunity to evaluate the Debtors' Wind-Down Budget and, specifically, the amount of estate funds (which could be used to pay out equity) allocated to prosecuting Debtors' Causes of Action. Under these circumstances, holders of Aceto Common Stock should have a voice and the ability to make an informed decision as to whether the Debtors' distributable assets are spent on prosecuting Causes of Action or satisfying the claims of Debtors' equity holders. With Debtors' current Disclosure Statement and without an equity committee, the holders of Aceto Common Stock have neither.

## CONCLUSION

WHEREFORE, the Consortium respectfully requests that this Court deny approval of the Disclosure Statement and grant such other relief as the Court may deem just, proper, and

---

[8] The Wind-Down Budget shall include line items for estimated funds necessary to, *inter alia*, "prosecut[e] Causes of Action" belonging to the Debtors. *See* Plan § 1.161.

equitable. In the alternative, the Consortium requests a brief adjournment of the July 25, 2019 hearing in connection with the Disclosure Statement Motion to allow for the formation of an equity committee, such that an estate fiduciary, properly represented, can carefully examine the proposed Plan and Disclosure Statement, discuss the same with Debtors and the Committee (and their professionals), and protect the rights and interests of the holders of Aceto Common Stock.

Dated: July 18, 2019
New York, New York

Respectfully submitted,

**BROWN RUDNICK LLP**

/s/ *David Molton*
David Molton (NJ Bar No. 032511989)
Robert Stark (NJ Bar No. 032361995)
Jessica Meyers (*pro hac* to be filed)
Seven Times Square
New York, New York 10036
Tel: (212) 209-4800
Fax: (212) 209-4801
Email: dmolton@brownrudnick.com
Email: rstark@brownrudnick.com
Email: jmeyers@brownrudnick.com

-and-

Jeffrey Jonas (*pro hac* to be filed)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
Fax: (617) 856-8201
Email: jjonas@brownrudnick.com

*Counsel to the Ad Hoc Committee of Equity Security Holders*