**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
Michael S. Etkin, Esq.
Wojciech F. Jung, Esq.
Michael Savetsky, Esq.
Philip J. Gross, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtors and*
*Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>ACETO CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-13448 (VFP)<br><br>(Jointly Administered)<br><br>Hearing Date: September 17, 2019 at 10:00 a.m. (ET)<br>Obj. Deadline: September 10, 2019 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) FURTHER
EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER
11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION
1121 OF THE BANKRUPTCY CODE, AND (B) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, submit this motion (the "Motion") for entry of an order, in an abundance of caution, substantially in the form submitted herewith, (a) further extending the period during which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by 60 days, from August 19, 2019 through and including October 18,

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Aceto Corporation (0520); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

2019,[2] and extending the period during which the Debtors have the exclusive right to solicit votes thereon (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods") by 60 days, from October 17, 2019 through and including December 16, 2019, without prejudice to the Debtors' right to seek a further extension of the Exclusive Periods, and (b) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. Less than *three* months after successfully closing on the Court-approved sales of their two businesses at the end of April, and less than *six* months after commencement of these Chapter 11 Cases, the Debtors extensively negotiated, drafted, filed and obtained this Court's approval to commence solicitation of votes on their proposed Plan (as defined below), which is supported by the Committee. A hearing to consider confirmation of the Plan is scheduled for September 12, 2019, which is less than a month from now.

2. The Plan represents the culmination of good faith negotiations between the Debtors, the Committee and other stakeholders and incorporates an efficient and fair resolution of various inter-estate issues, including the treatment of intercompany claims, the allocation of cost and expenses of administration among the Debtors, and whether and to what extent the liabilities and assets of the Debtors should be substantively consolidated for distribution purposes.

3. Since the Court granted the Debtors' first request for a 60 day extension of exclusivity in mid-June, the Debtors have, as they represented they would, continued to expeditiously move these Chapter 11 Cases forward with the overarching goal of maximizing the value of their estates for the benefit of all of their stakeholders. The Debtors are now on the cusp of confirming the Plan, which contemplates an orderly and efficient liquidation of their

---

[2] Pursuant to this Court's *Order (A) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code, and (B) Granting Related Relief* [Doc. No. 648], the Exclusive Periods are automatically extended by the filing of this Motion until this Court's entry of an order with respect hereto.

-2-

remaining assets, wind-down of their estates, and distribution of estate assets in accordance with the priorities established by the Bankruptcy Code.

4. Out of an abundance of caution, and to ensure an orderly plan confirmation process and that the considerable progress already achieved in these Chapter 11 Cases is not disrupted, the Debtors seek a modest additional 60 day extension of the Exclusive Periods, to the extent necessary. A premature expiration of exclusivity at this critical juncture of these Chapter 11 Cases would result in needless distraction and potentially costly and unnecessary instability to the detriment of the Debtors' estates and creditors. Such an outcome would be contrary to the fundamental objectives of chapter 11 and would defeat the very purpose of section 1121 of the Bankruptcy Code—to afford a debtor a meaningful opportunity to propose and confirm a chapter 11 plan that maximizes value and that is fair and equitable to all economic stakeholders

5. Accordingly, for the reasons set forth above and in further detail below, the Debtors submit that sufficient "cause" exists to grant the Debtors' request for a 60 day extension of the Exclusive Periods and the Motion should therefore be granted.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. The statutory predicates for the relief requested herein are section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

8. On February 19, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned

-3-

chapter 11 cases (collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of New Jersey.

9. The Debtors are operating their businesses and managing their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this Motion, no request has been made for the appointment of a trustee or examiner in the Chapter 11 Cases.

10. On February 28, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 Cases. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Doc. No. 80].

11. A detailed description of the Debtors' businesses and the facts surrounding the commencement of the Chapter 11 Cases is set forth in the *Declaration of Rebecca A. Roof in Support of First Day Relief* (the "First Day Declaration") [Doc. No. 19].

12. As described in the First Day Declaration and other pleadings filed with the Court, the Debtors commenced the Chapter 11 Cases with the goal of addressing immediate liquidity issues by consummating value maximizing going concern sales of their Chemical Plus and Pharma businesses. The Debtors obtained entry of bidding procedures orders (*see* Doc. Nos. 142 and 174) and Court approval of both sales within two months of the Petition Date (*see* Doc. Nos. 372 and 429), and closed on the respective sales on April 19 and April 29, 2019.

13. The Debtors then immediately began working expeditiously to formulate, negotiate, and draft a chapter 11 plan of liquidation with the goal of promptly effectuating an orderly and efficient liquidation of their remaining assets, wind-down of their estates, and distribution of estate assets for the benefit of all stakeholders.

14. On June 17, 2019—less than two months after the closing of the second asset sale and after negotiations with the Committee that began prior to the closing of the second asset sale—the Debtors filed their *Joint Plan of Liquidation of Aceto Corporation and Its Affiliated Debtors* [Doc. No. 639] and an accompanying disclosure statement [Doc. No. 640]. After extensive negotiations with the Committee and obtaining its support, on June 27, 2019 the

Debtors filed their *First Modified Joint Plan of Liquidation of Aceto Corporation and Its Affiliated Debtors* [Docket No. 684], an accompanying disclosure statement [Doc. No. 685], and a motion for approval of the disclosure statement and plan solicitation procedures [Doc. No. 686].

15. On July 23, 2019, after further discussions with the Committee and other parties in interest, the Debtors filed their *Second Modified Joint Plan of Liquidation of Aceto Corporation and its Affiliated Debtors* [Doc. No. 747] and an accompanying modified disclosure statement [Doc. No. 748] containing certain additional information regarding claims and recovery estimates and other revisions.

16. On July 26, 2019, the Debtors filed solicitation versions of the *Second Modified Joint Plan of Liquidation of Aceto Corporation and its Affiliated Debtors* [Doc. No. 757] (as the same may be amended, modified, or supplemented from time to time, the "Plan") and the accompanying *Second Modified Disclosure Statement for Second Modified Joint Plan of Liquidation of Aceto Corporation and its Affiliated Debtors* [Doc. No. 758] (as the same may be amended, modified, or supplemented from time to time, the "Disclosure Statement"). Also on July 26, 2019, the Court entered an order [Docket No. 759] approving the Disclosure Statement on an interim basis and procedures for solicitation of and voting on the Plan.

17. The Debtors have solicited votes on the Plan, the voting deadline is August 30, 2019 at 4:00 p.m. (ET), and a confirmation hearing has been scheduled for September 12, 2019 at 11:00 a.m. (ET).

**RELIEF REQUESTED**

18. By this Motion, the Debtors seek, in an abundance of caution, entry of an order, substantially in the form submitted herewith, (a) further extending the Debtors' Exclusive Filing Period by 60 days, from August 19, 2019 through and including October 18, 2019, and the Debtors' Exclusive Solicitation Period by 60 days, from October 17, 2019 through and including December 16, 2019, without prejudice to the Debtors' right to seek a further extension of the Exclusive Periods, and (b) granting related relief.

**BASIS FOR RELIEF**

19. Pursuant to section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to propose and file a chapter 11 plan during the first 120 days of a chapter 11 case. Section 1121(c)(3) of the Bankruptcy Code extends exclusivity for an additional 60 days (to an initial maximum of 180 days from commencement of a case) to solicit and obtain acceptances of that plan. The purpose of the exclusivity period is "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." *In re Burns and Roe Enters., Inc.*, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005).

20. The Court, however, may extend a debtor's exclusivity periods "for cause" under section 1121(d)(1) of the Bankruptcy Code. Specifically, section 1121(d) provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause … increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d).

21. The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension of the Exclusive Periods. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), reprinted in 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *see also In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility").

22. The decision to extend a debtor's exclusivity periods should be based on the totality of the circumstances and is within the sound discretion of the bankruptcy court. *See, e.g., Burns and Roe Enters.*, 2005 WL 6289213, at *3; *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Express One Int'l. Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y.

1987). In determining whether cause exists to extend a debtor's exclusivity periods, a bankruptcy court may consider a variety of factors, including without limitation:

    (a)    the size and complexity of the case;

    (b)    the existence of good faith progress;

    (c)    the necessity of sufficient time to negotiate and prepare adequate information;

    (d)    whether creditors are prejudiced by the extension;

    (e)    whether the debtor is paying its debts as they become due;

    (f)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    (g)    whether the debtor has made progress negotiating with creditors;

    (h)    the length of time a case had been pending;

    (i)    whether the debtor is seeking an extension to pressure creditors; and

    (j)    whether or not unresolved contingencies exist.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834.

23. Because each case is unique, not all of these factors are relevant in each case and courts will only consider those factors that are relevant in the case at hand. *See, e.g., Express One*, 194 B.R. at 100 (identifying only four of the factors as relevant to its analysis as to whether cause existed to extend the exclusivity periods); *Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on only two of the factors in deciding to extend the exclusivity periods); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

24. The Debtors submit that application of the identified factors to the facts of these Chapter 11 Cases, especially when considering the status of these cases today, demonstrates that

more than ample cause exists to grant the Debtors' requested extension of the Exclusive Periods. Indeed, almost all of the factors identified above weigh in favor of an extension of the Exclusive Periods. The extension is necessary and appropriate and will, if necessary, afford the Debtors the opportunity contemplated by the Bankruptcy Code to hopefully obtain confirmation of the Plan supported by the Committee without the harmful disruption and unnecessary expense that may occur if competing plans were proposed at this juncture of these Chapter 11 Cases.

A.   **The Chapter 11 Cases are Large and Complex**

25.  As this Court is aware, these Chapter 11 Cases are large and complex, involving nine (9) Debtors with two separate businesses and creditor bodies, foreign non-debtor affiliates, diverse creditor groups and interests, and a variety of types of claims, including trade, litigation, tax, employee, unsecured noteholder and other claims. The Debtors' schedules of assets and liabilities indicate that the Debtors have hundreds of creditors on a consolidated basis, and over 15,000 parties in interest received notice of these Chapter 11 Cases and the Debtors' asset sales, among other notices. In addition, Aceto Corporation is a publicly held company with numerous shareholders that, as of late, have taken a more active role in these cases. In addition, the sales of the Debtors' Chemical Plus and Pharma businesses approved by this Court involved highly sophisticated and extensively negotiated transaction documents and, with respect to the Chemical Plus business, foreign regulatory and other complexities. In fact, there remain obligations and issues relating to both of these sales that are still being addressed.

B.   **The Debtors Continue to Make Significant Good Faith Progress Towards Confirmation of a Plan**

26.  These cases are just six months old and the Debtors are well on their way towards confirmation of the Plan. After conducting concurrent marketing and sale processes for their Chemical Plus and Pharma businesses and successfully closing on two complex sales within 70 days of the Petition Date (all while navigating the transition to chapter 11 and numerous business and other issues attendant to that transition), the Debtors have continued to move expeditiously through these Chapter 11 Cases with the overarching purpose of maximizing the value of their

estates for the benefit of all of their stakeholders. The Debtors have negotiated and proposed the Plan with the support of the Committee and have commenced the solicitation process. The confirmation hearing is scheduled for September 12, 2019.

27. The Debtors have done all that they represented and were required to do since the Debtors' first motion for an extension of the Exclusive Periods, which requested an extension of only 60 days (rather than the more typical 90 day request for an initial extension of exclusivity), was granted. The Debtors are now requesting a further modest extension of exclusivity of 60 days, as a precautionary measure, to ensure an orderly plan confirmation process and that the considerable progress already achieved in these Chapter 11 Cases is not potentially disrupted by a premature expiration of exclusivity.

28. The administration of these Chapter 11 Cases and confirmation of the Plan necessarily requires some additional time and effort. In light of the relatively short amount of time these cases have been pending and the progress the Debtors have made to date, the Debtors' modest requested precautionary extension of the Exclusive Periods is more than justified. In addition, the requested extension will ensure that the Plan process continues to move forward without the costly and unnecessary instability that could occur if exclusivity is not extended. Under these circumstances, the extension of the Exclusive Periods requested herein is necessary and appropriate to afford the Debtors the opportunity to confirm the Plan and a achieve a swift and successful conclusion to these Chapter 11 Cases. The Debtors therefore submit that their rapid and steadfast progress in moving these cases forward without delay towards confirmation of a viable Plan weighs heavily in favor of an extension of the Exclusive Periods.

C.  **The Requested Extension of Exclusivity is Not Intended to Pressure Creditors to Submit to the Debtors' Demands and Will Not Prejudice Creditors**

29. The Debtors have engaged constructively with their key stakeholders throughout these Chapter 11 Cases and intend to continue to do so. The Debtors have developed a collaborative working relationship with the Committee and have negotiated and proposed a plan that is supported by the Committee. The Debtors' conduct in these Chapter 11 Cases, including,

in particular, consultation and negotiation with their key stakeholders, demonstrates that the Debtors are acting in a prudent and transparent manner.

30. Rather than artificially delaying the administration of these Chapter 11 Cases and pressuring creditors, the Plan that is now on the cusp of confirmation is the result of collaboration and constructive dialogue. Specifically, the Debtors have held numerous meetings / telephonic conferences and negotiation sessions with their creditor constituencies to discuss every significant issue in these cases, including their DIP financing, the sales process, and the Plan. The Debtors' request for extending the Exclusive Periods is not a negotiation tactic. It reflects that the Debtors have negotiated a Plan that the Committee supports, commenced solicitation, and are in the process of tabulating votes on the Plan, which process should not be interrupted as the Debtors move to obtain confirmation of the Plan. The Debtors intend to continue to work constructively with all parties in interest to seek a consensual confirmation of the Plan.

31. The extension of the Exclusive Periods will not prejudice any party in interest. Rather, it will afford the Debtors the uninterrupted opportunity to confirm the Plan that has been extensively negotiated. Failure to extend the Exclusive Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, to provide the Debtors with a meaningful and reasonable opportunity to propose and pursue a confirmable chapter 11 plan. The potential disruption and increased costs that might result from expiration of the Exclusive Periods at this time would be to the detriment of all parties in interest. In addition, this Motion is without prejudice to any party seeking to shorten the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. *See* 11 U.S.C. § 1121(d). As such, no party in interest will be prejudiced if the requested extension is approved.

D. **The Debtors are Current on Payment of Post-petition Administrative Expenses**

32. Courts considering an extension of exclusivity may consider a debtor's liquidity and ability to pay the costs and expenses of administration. *In re Adelphia Commc'ns Corp.*, 352

B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Texaco Inc.*, 76 B.R. 322 (Bankr. S.D.N.Y. 1987). Here, the Debtors are paying their post-petition administrative expenses as they come due, and intend to continue to do so. Accordingly, this factor also weighs in favor of granting the Debtors' the extension of the Exclusive Periods requested herein.

## CONCLUSION

33. For all of the reasons set forth above, the facts and circumstances of these Chapter 11 Cases, especially now, demonstrate that the Debtors are proceeding in good faith to confirm the Plan and facilitate a successful conclusion to these Chapter 11 Cases and that "cause" exists for extending the Exclusive Periods. Accordingly, the Debtors respectfully submit that the Exclusive Periods should be extended as requested herein.

## WAIVER OF MEMORANDUM OF LAW

34. Because the legal basis upon which the Debtors rely is incorporated herein and this Motion does not raise any novel issues of law, the Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3)

## NO PRIOR REQUEST

35. This is the Debtors' second motion for an extension of the Exclusive Periods. No prior request for the relief sought herein has been made by the Debtors to this or any other court.

## NOTICE

36. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of New Jersey; (ii) the Internal Revenue Service; (iii) the New Jersey Division of Taxation Compliance and Enforcement - Bankruptcy Unit; (iv) the Office of the Attorney General of the State of New Jersey, Division of Law; (v) the United States Attorney's Office for the District of New Jersey; (vi) the New York State Department of Taxation and Finance; (vii) the Office of the Attorney General of the State of New York; (viii) the United States Attorney's Office for the Eastern District of New York; (ix) the Securities and Exchange Commission, New York Regional Office; (x) the Indenture Trustee for the Noteholders; (xi) Stroock & Stroock &

Lavan LLP, c/o Erez E. Gilad, Esq., Jayme T. Goldstein, Esq., Gabriel Sasson, Esq., and Joanne Lau, Esq., as co-counsel for the Committee; (xii) Porzio, Bromberg & Newman, P.C., c/o Warren J. Martin, Jr., Esq., Robert M. Schechter, Esq., and Rachel A. Parisi, Esq., as co-counsel for the Committee; and (xiii) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002.

37. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

[*Remainder of page intentionally left blank*]

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court: (i) enter an order, substantially in the form submitted herewith, granting the relief requested herein; and (ii) grant the Debtors such other and further relief as the Court deems just and proper.

Dated:  August 16, 2019                                          Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Mickey S. Etkin*
Kenneth A. Rosen, Esq.
Michael S. Etkin, Esq.
Wojciech F. Jung, Esq.
Michael Savetsky, Esq.
Philip J. Gross, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
metkin@lowenstein.com
wjung@lowenstein.com
msavetsky@lowenstein.com
pgross@lowenstein.com

*Counsel to the Debtors and
Debtors-in-Possession*