| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1**<br><br>**LOWENSTEIN SANDLER LLP**<br>Michael S. Etkin, Esq.<br>Wojciech F. Jung, Esq.<br>Philip J. Gross, Esq.<br>One Lowenstein Drive<br>Roseland, New Jersey 07068<br>(973) 597-2500 (Telephone)<br>(973) 597-2400 (Facsimile)<br><br>*Counsel to the Debtors and*<br>*Debtors-in-Possession* | <br><br>**Order Filed on September 4, 2019**<br>**by Clerk**<br>**U.S. Bankruptcy Court**<br>**District of New Jersey** |

| | |
|---|---|
| In re:<br><br>ACETO CORPORATION, *et al.*,[1]<br><br>                   Debtors. | Chapter 11<br><br>Case No. 19-13448 (VFP)<br><br>Jointly Administered |

**ORDER (I) AUTHORIZING AND APPROVING PRIVATE SALE OF DEBTOR ARSYNCO'S PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, SUBJECT TO HIGHER AND BETTER OFFERS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS WITH BASF CORPORATION, (III) AUTHORIZING THE PAYMENT OF BROKER'S COMMISSION, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on pages, two (2) through twenty-five (25), is hereby **ORDERED**.

**DATED: September 4, 2019**

_____

**Honorable Vincent F. Papalia**
**United States Bankruptcy Judge**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Aceto Corporation (0520); Tri Harbor Chemical Holdings LLC (*f/k/a* Aceto Agricultural Chemicals LLC, *f/k/a* Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (*f/k/a* Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (*f/k/a* Rising Pharmaceuticals, LLC, *f/k/a* Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (*f/k/a* Rising Health, LLC) (1562); Kavris Health LLC (*f/k/a* Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (*f/k/a* PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

Page:       2
Debtor:     Aceto Corporation, *et al.*
Case No.:   19-13448 (VFP)
Caption:    Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
            of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
            Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
            the Payment of Broker's Commission, and (iv) Granting Related Relief

---

Upon consideration of the *Debtors' Motion for Entry of an Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing the Payment of Broker's Commission, and (iv) Granting Related Relief* (the "Sale Motion") [Docket No. 836], filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") on August 12, 2019, seeking entry of an order (i) authorizing and approving the private sale of certain real property assets of Debtor Arsynco, Inc. ("Arsynco") free and clear of liens, claims and encumbrances, subject to higher and better offers, (ii) authorizing and approving the assumption and assignment of certain executory contracts of Debtor Arsynco with BASF Corporation ("BASF") to 511 Thirteenth Street LLC ("511 Thirteenth" or "Purchaser") (the assets described in clause (i) and (ii) collectively, the "Purchased Assets"), pursuant to a Purchase and Sale Agreement, dated as of July 31, 2019 (the "Arsynco Sale Agreement," a copy of which is attached to the Sale Order as an exhibit), (iii) authorizing the payment of a broker's commission (the "Broker's Commission") to Quantum Realty Services, Inc. ("Quantum") at the Closing, and (iv) granting related relief; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012; and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that due notice of the Sale Motion, the Sale Hearing, the Arsynco Sale Agreement, and the Sale

Page:        3
Debtor:      Aceto Corporation, *et al.*
Case No.:    19-13448 (VFP)
Caption:     Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
             of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
             Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
             the Payment of Broker's Commission, and (iv) Granting Related Relief

---

has been provided; and it appearing that no other or further notice need be provided; and the Court

having conducted a hearing on the Sale Motion (the "Sale Hearing") on September 4, 2019, at

which time all interested parties were offered an opportunity to be heard with respect to the Sale

Motion; and the Court having reviewed and considered the Sale Motion, the Arsynco Sale

Agreement, and any and all objections to the Sale, the Arsynco Sale Agreement and the other

documents filed in accordance with the Sale Motion; and the Court having heard statements of

counsel and the evidence presented in support of the relief requested in the Sale Motion at the Sale

Hearing and the Court having determined that the relief provided for herein is in the best interests

of the Debtors, their estates and creditors; and after due deliberation and sufficient cause appearing

therefor;

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.    Jurisdiction and Venue.  This Court has jurisdiction to consider the Sale

Motion and the Sale, including the transactions contemplated by the Arsynco Sale Agreement,

pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the *Standing Order of Reference to the*

*Bankruptcy Court Under Title 11* dated as of September 18, 2012 (Simandle, C.J.).  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of these cases and the Sale

Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Statutory Predicates.  The statutory and other legal predicates for the relief

sought in the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy

Rules 2002, 6004, 6006 and 9014, and Local Rules 6004-1 and 6004-5.

Page:       4
Debtor:     Aceto Corporation, *et al.*
Case No.:   19-13448 (VFP)
Caption:    Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
            of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
            Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
            the Payment of Broker's Commission, and (iv) Granting Related Relief

---

C.      <u>Final Order</u>.  This Sale Order constitutes a final and appealable order within

the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h),

6006(d) or any other applicable Bankruptcy Rule, and to any extent necessary under Bankruptcy

Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule

7054, the Court expressly finds that there is no just reason for delay in the implementation of this

Sale Order and the terms and conditions of this Sale Order should be immediately effective and

enforceable upon its entry, and expressly directs entry of judgment as set forth herein.

D.      <u>Notice</u>.   As evidenced by declarations and/or affidavits of service

previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion,

the Sale Hearing, and all related transactions collectively described in the Arsynco Sale Agreement

(collectively referred to as the "<u>Sale</u>") has been provided in accordance with sections 102(1), 363,

and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.  The

Debtors have complied with all obligations to provide notice of the Sale Motion, the Sale Hearing,

the Arsynco Sale Agreement, and the Sale.  The foregoing notice was good, sufficient, and

appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale

Hearing, the Arsynco Sale Agreement, or the Sale is required.

E.      <u>Opportunity to Object</u>.  A reasonable opportunity to object or be heard with

respect to the Sale Motion and the relief requested therein has been afforded to all interested

persons and entities.

F.      <u>The Sale is Appropriate</u>.  The Sale is authorized pursuant to Bankruptcy

Code section 363(b)(1).  The Sale represents the sound business judgment of the Debtors and is

Page:       5
Debtor:     Aceto Corporation, *et al.*
Case No.:   19-13448 (VFP)
Caption:    Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
            of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
            Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
            the Payment of Broker's Commission, and (iv) Granting Related Relief

---

appropriate in light of the facts and circumstances surrounding the Sale and the Debtors' Chapter

11 Cases because (1) the Sale will result in the best value received for the Purchased Assets and

(2) the terms of the sale were negotiated at arm's length with the Purchaser.

       G.    <u>Corporate Authority</u>.  The Seller has full corporate power and authority to

execute the Arsynco Sale Agreement and all other documents contemplated thereby, and to

consummate the Sale.

       H.    <u>Business Justification</u>.  The Debtors have (1) articulated good, sufficient

and sound business reasons for consummating the Arsynco Sale Agreement, the sale of the

Purchased Assets and the Sale; (2) appropriately exercised their business judgment by entering

into the Sale; and (3) demonstrated compelling circumstances for entry into the Sale pursuant to

Bankruptcy Code section 363(b)(1), in that, among other things, the immediate approval by the

Court of the Sale with the Purchaser is necessary and appropriate to maximize the value of the

Debtors' estates.

       I.    <u>Best Interests</u>.  Approval of the Arsynco Sale Agreement and the

consummation of the Sale are in the best interests of the Debtors, their estates, their creditors and

other parties in interest.

       J.    <u>Opportunity to Submit Higher or Better Offers</u>.  A reasonable opportunity

to submit higher or better offers has been afforded to all interested persons and entities.

       K.    <u>Highest or Otherwise Best</u>.  As demonstrated by (1) the testimony and/or

other evidence proffered or adduced at the Sale Hearing; and (2) the representations of counsel

made on the record at the Sale Hearing, the Purchaser's offer for the purchase of the Purchased

Page:        6
Debtor:      Aceto Corporation, *et al.*
Case No.:    19-13448 (VFP)
Caption:     Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
             of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
             Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
             the Payment of Broker's Commission, and (iv) Granting Related Relief

---

Assets as set forth in the Arsynco Sale Agreement is fair and reasonable and constitutes the highest

or otherwise best offer for the Purchased Assets.

       L.     <u>Arm's Length Transaction and Purchaser's Good Faith</u>.  The Arsynco Sale

Agreement was negotiated, proposed and entered into by Seller and Purchaser from arm's-length

bargaining positions, without collusion, in good faith within the meaning of Bankruptcy Code

section 363(m).  The Purchaser is not an "insider" of the Debtors, as that term is defined in

Bankruptcy Code section 101(31).  The Arsynco Sale Agreement was not entered into, and neither

the Seller nor the Purchaser have entered into the Arsynco Sale Agreement, or propose to

consummate the Sale, for the purpose of hindering, delaying or defrauding creditors of the Debtors

under the Bankruptcy Code or under the laws of the United States, any state, territory, possession

thereof, or the District of Columbia.  Neither the Seller nor the Purchaser have entered into the

Arsynco Sale Agreement or is consummating the Sale with any fraudulent or improper purpose.

       M.     <u>No Liability Under Section 363(n)</u>.  Neither the Seller nor the Purchaser has

engaged in any conduct that would cause or permit the Arsynco Sale Agreement to be avoided

under Bankruptcy Code section 363(n).  Specifically, the Purchaser has not acted in a collusive

manner with any person and the purchase price was not controlled by any agreement with unrelated

third parties.

       N.     <u>Free and Clear</u>.  The Purchased Assets constitute property of the Seller's

estate and title thereto is vested in the Seller's estate within the meaning of Bankruptcy Code

section 541(a).  Except as provided in the Arsynco Sale Agreement, the transfer of the Purchased

Assets will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the

Page:       7
Debtor:     Aceto Corporation, *et al.*
Case No.:   19-13448 (VFP)
Caption:    Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
            of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
            Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
            the Payment of Broker's Commission, and (iv) Granting Related Relief

---

Purchaser with all right, title, and interest of the Seller in and to the Purchased Assets, pursuant to

Bankruptcy Code sections 105(a) and 363(f), free and clear, to the fullest extent available under

the Bankruptcy Code or any other applicable law, of all liens, claims and encumbrances affecting

the Property (the "Encumbrances"), with the exception of the Permitted Encumbrances as defined

in the Arsynco Sale Agreement, because, in each case, one or more of the standards set forth in

Bankruptcy Code section 363(f)(1)-(5) have been satisfied.  Those other holders of Encumbrances

on the Purchased Assets who did not object (or who withdrew their objections) to the Sale Motion

or the Sale are deemed to have consented to the Sale Motion and the Sale pursuant to Bankruptcy

Code section 363(f)(2).  Those holders of Encumbrances on the Purchased Assets who did object

fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are

adequately protected by having their Encumbrances on the Purchased Assets attach to the

remaining proceeds of the Sale, if any, ultimately attributable to the Purchased Assets against or

in which such Encumbrances are asserted, subject to the terms of such Encumbrances, with the

same validity, force and effect, and in the same order of priority, which such Encumbrances now

have against the Purchased Assets or their proceeds, subject to any rights, claims and defenses the

Debtors or their estates, as applicable, may possess with respect thereto.  Except as specifically

provided in the Arsynco Sale Agreement, all persons and entities asserting or holding any

Encumbrances in or with respect to the Purchased Assets (whether legal or equitable, secured or

unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated),

howsoever arising, shall be forever barred, estopped, and permanently enjoined from asserting,

prosecuting or otherwise pursuing such Encumbrances against the Purchaser.

Page:      8
Debtor:    Aceto Corporation, *et al.*
Case No.:  19-13448 (VFP)
Caption:   Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
           of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
           Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
           the Payment of Broker's Commission, and (iv) Granting Related Relief

---

O.    <u>Sale Outside Plan</u>.  The consummation of the Sale outside a plan of reorganization pursuant to the Arsynco Sale Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Sale does not constitute a *sub rosa* chapter 11 plan.

P.    <u>Assumption and Assignment of the BASF Agreements</u>.  The assumption and assignment of the BASF Agreements pursuant to the terms of this Sale Order are integral to the Arsynco Sale Agreement, are in the best interests of the Debtors and their respective estates, creditors, and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors.  The Debtors have met all requirements of section 365(b) and (f) of the Bankruptcy Code for assumption and assignment of each of the BASF Agreements.  The Purchaser and/or the Debtors have (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing under all of the BASF Agreements within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the BASF Agreements within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.  The Purchaser has provided adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) to the extent that any such assurance is required and not waived by the counterparties to such BASF Agreements.

Page:      9
Debtor:    Aceto Corporation, *et al.*
Case No.:  19-13448 (VFP)
Caption:   Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
           of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
           Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
           the Payment of Broker's Commission, and (iv) Granting Related Relief

---

Q.     <u>Injunction</u>.  An injunction against creditors and third parties pursuing the Encumbrances is necessary to induce the Purchaser to close under the Arsynco Sale Agreement; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Seller and Debtors' estates, and will benefit all creditors.

R.     <u>Prompt Consummation</u>.  Based on the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing, the sale of the Purchased Assets must be approved and consummated promptly to preserve the value of the Purchased Assets.  Time, therefore, is of the essence in effectuating the Arsynco Sale Agreement.  As such, the Debtors and the Purchaser intend to close the sale of the Purchased Assets as soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Arsynco Sale Agreement.  Accordingly, there is sufficient cause to waive the stay provided in Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d) or any other applicable Bankruptcy Rule.

S.     <u>Broker's Commission</u>.  The Broker Commission to be paid upon the Closing of the Sale to 511 Thirteenth from the sale proceeds to Arsynco is reasonable and appropriate in light of the efforts of Quantum in connection with the Sale of the Property.

T.     <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein.

U.     <u>Validity of Transfer</u>.  As of the Closing, the transfer of the Purchased Assets to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets, and will vest

Page:       10
Debtor:     Aceto Corporation, *et al.*
Case No.:   19-13448 (VFP)
Caption:    Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
            of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
            Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
            the Payment of Broker's Commission, and (iv) Granting Related Relief

---

the Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets, free

and clear of all Encumbrances on the Purchased Assets.

        V.     <u>Incorporation of Sale Hearing</u>.  All findings of fact and conclusions of law

made or announced by the Court at the Sale Hearing are incorporated herein.

**NOW, THEREFORE, IT IS ORDERED THAT**:

1.     The Sale Motion is GRANTED to the extent set forth herein.

2.     <u>Findings of Fact and Conclusions of Law</u>.  The findings of fact set forth above and

conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of

law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy

Rule 9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it

shall be so deemed and deemed so ordered, and to the extent any conclusion of law shall be

determined to be a finding of fact, it shall be so deemed and deemed so ordered.

3.     <u>Notice</u>.  As evidenced by the affidavits and/or certificates of service previously

filed with the Court and the representations of counsel at the Sale Hearing: (1) under the

circumstances of the Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Sale

Motion, the Sale Hearing, and the Sale has been provided by the Debtors to parties entitled to

notice; (2) such notice, and the form and manner thereof, including the Sale Notice, was good,

sufficient and appropriate under the circumstances; and (3) no other or further notice of the Sale

Motion, the Arsynco Sale Agreement, the Sale or the Sale Hearing shall be required.

4.     <u>Objections</u>.  All objections and responses, if any, to the Sale Motion or the relief

requested therein, that have not been withdrawn, waived or settled as announced to the Court at

Page:       11
Debtor:     Aceto Corporation, *et al.*
Case No.:   19-13448 (VFP)
Caption:    Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
            of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
            Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
            the Payment of Broker's Commission, and (iv) Granting Related Relief

---

the Sale Hearing or by stipulation filed with the Court or pursuant to the terms of this Sale Order,

and all reservations of rights included therein, are hereby overruled on the merits, with prejudice.

All persons and entities given notice of the Sale Motion that failed to timely object thereto are

deemed to consent to the relief sought therein.

5.      <u>Approval of the Sale Order and the Arsynco Sale Agreement</u>.  The Arsynco Sale

Agreement, substantially in the form attached hereto as **<u>Exhibit A</u>**, the Sale and all of the terms

and conditions and the Sale contemplated in connection with the Arsynco Sale Agreement are

hereby authorized and approved pursuant to, *inter alia*, Bankruptcy Code sections 105(a) and

363(b).  Pursuant to Bankruptcy Code section 363(b), Arsynco is authorized to consummate the

Sale pursuant to and in accordance with the terms and conditions in the Arsynco Sale Agreement

and this Sale Order.   The Seller, the other Debtors, and their respective affiliates, officers,

employees and agents, are authorized to execute and deliver, and authorized to perform under,

consummate and implement, the Arsynco Sale Agreement together with all additional instruments

and documents that may be reasonably necessary or desirable to implement the Arsynco Sale

Agreement, and to take all further actions as may be (a) reasonably requested by the Purchaser for

the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or

reducing to possession, the Purchased Assets; or (b) necessary or appropriate to the performance

of the obligations contemplated by the Arsynco Sale Agreement, all without further order of the

Court.

6.      <u>Good Faith</u>.  The Sale has been undertaken by the Purchaser without collusion and

in good faith.  The Purchaser satisfies the good faith requirement of Bankruptcy Code section

Page:      12
Debtor:    Aceto Corporation, *et al.*
Case No.:  19-13448 (VFP)
Caption:   Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
           of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
           Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
           the Payment of Broker's Commission, and (iv) Granting Related Relief

363(m) and, accordingly, the Purchaser and the Sale are entitled to all of the protections afforded

by Bankruptcy Code section 363(m).  Pursuant to Bankruptcy Code section 363(m), if any or all

of the provisions of this Sale Order are hereafter reversed, modified, or vacated by a subsequent

order of this Court or any other court, such reversal, modification, or vacatur shall not affect the

validity and enforceability of any sale, transfer or assignment under the Arsynco Sale Agreement

or obligation or right granted pursuant to the terms of this Sale Order, and notwithstanding any

reversal, modification or vacatur, shall be governed in all respects by the original provisions of

this Sale Order or the Arsynco Sale Agreement, as the case may be, unless such authorization and

consummation of such Sale are duly and properly stayed pending such appeal.  The Sale approved

by this Sale Order is not subject to avoidance and no damages may be awarded pursuant to

Bankruptcy Code section 363(n).

7.      Payment of Sale Proceeds to the Seller or the Purchaser.  At Closing, any increase

or decrease in the Purchase Price that results from the closing adjustments described in Arsynco

Sale Agreement (the "Adjusted Closing Balance") shall be paid to the Seller by wire transfer to an

account designated by Seller, or if applicable, to the Purchaser by wire transfer to an account

designated by Purchaser.

8.      Transfer of Purchased Assets Free and Clear.

A.      Pursuant to Bankruptcy Code sections 105(a), 363(b) and 363(f), the

Debtors are authorized to transfer the Purchased Assets in accordance with the terms of the

Arsynco Sale Agreement.  The Purchased Assets shall be transferred to the Purchaser, and upon

the occurrence of the Closing, such transfer shall (1) be valid, legal, binding and effective and (2)

Page:      13
Debtor:    Aceto Corporation, *et al.*
Case No.:  19-13448 (VFP)
Caption:   Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
           of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
           Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
           the Payment of Broker's Commission, and (iv) Granting Related Relief

---

vest Purchaser with all right, title and interest of the Debtors in the Purchased Assets, free and

clear of all Encumbrances on the Purchased Assets, with the exception of the Permitted

Encumbrances as defined in the Arsynco Sale Agreement and with all Encumbrances on the

Purchased Assets that represent interests in property to attach to the remaining proceeds of the

Sale, if any, in the order of their priority and with the same validity, force and effect that they now

have against the Purchased Assets, subject to any rights, claims and defenses the Debtors or their

estates, as applicable, may possess with respect thereto.  Upon the occurrence of the Closing, this

Sale Order shall be considered and constitute for any and all purposes a full and complete general

assignment, conveyance and transfer of the Purchased Assets acquired by the Purchaser under the

Arsynco Sale Agreement and/or a bill of sale or assignment transferring indefeasible title and

interest in the Purchased Assets to the Purchaser free and clear of all Encumbrances on the

Purchased Assets, with the exception of the Permitted Encumbrances.  All persons and entities are

prohibited and enjoined from taking any action to adversely affect or interfere with the ability of

the Debtors to transfer the Purchased Assets to Purchaser in accordance with the Arsynco Sale

Agreement and this Sale Order.

B.    Except as otherwise provided in the Arsynco Sale Agreement, all

Governmental Units (as defined in Bankruptcy Code sections 101(27) and 101(41)) and all persons

and entities (and their respective successors and assigns), including, without limitation, all debt

security holders, equity security holders, governmental, tax and regulatory authorities, lenders,

employees, former employees, pension plans, multiemployer pension plans, labor unions, trade

creditors and any other creditors holding Encumbrances on the Purchased Assets (whether legal

Page:        14
Debtor:      Aceto Corporation, *et al.*
Case No.:    19-13448 (VFP)
Caption:     Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
             of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
             Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
             the Payment of Broker's Commission, and (iv) Granting Related Relief

---

or equitable, secured or unsecured, known or unknown, matured or unmatured, contingent or non-

contingent, liquidated or unliquidated, senior or subordinated) arising under or out of, in

connection with, or in any way relating to the Purchased Assets are hereby forever barred, estopped

and permanently enjoined from asserting or pursuing any Encumbrances on the Purchased Assets

against the Purchaser, and/or its affiliates, designees, successors, assigns, officers, directors,

members, employees, equity holders, assets (including the Purchased Assets) or properties,

including, without limitation, taking any of the following actions with respect to a Claim relating

to the Purchased Assets: (1) commencing or continuing, in any manner, any action or other

proceeding against the Purchaser and/or its affiliates, designees, successors, assigns, officers,

directors, members, employees, equity holders, assets (including the Purchased Assets) or

properties with respect to any Claim relating to the Purchased Assets; (2) enforcing, attaching,

collecting or recovering, in any manner, any judgment, award, decree, or order against the

Purchaser and/or its affiliates, designees, successors, assigns, officers, directors, members,

employees, equity holders, assets (including the Purchased Assets) or properties with respect to

any Claim relating to the Purchased Assets; (3) creating, perfecting, or enforcing any liens, claims,

encumbrances or other interests against the Purchaser and/or its affiliates, designees, successors,

assigns, officers, directors, members, employees, equity holders, assets (including the Purchased

Assets) or properties with respect to any Claim relating to the Purchased Assets; (4) asserting any

setoff, right of subrogation or recoupment (whether or not a Claim or a Lien) of any kind for any

obligation due to the Purchaser and/or its affiliates, designees, successors, assigns, officers,

directors, members, employees, equity holders, assets (including the Purchased Assets) or

Page:       15
Debtor:    Aceto Corporation, *et al.*
Case No.:  19-13448 (VFP)
Caption:   Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
           of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
           Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
           the Payment of Broker's Commission, and (iv) Granting Related Relief

---

properties, in each case with respect to any Claim relating to the Purchased Assets; or (5)

commencing or continuing any action, in any manner or place, that does not comply, or is

inconsistent with, the provisions of this Sale Order.  Notwithstanding any of the injunctive

provisions above, nothing herein shall affect the rights of counterparties to the BASF Agreements

to assert any and all rights and remedies against the Purchaser as contained in the BASF

Agreements.

        C.     This Sale Order: (1) shall be effective as a determination that, as of the

Closing, except as otherwise provided in this Sale Order and the Arsynco Sale Agreement, all

Encumbrances on the Purchased Assets, have been unconditionally released, discharged and

terminated as to the Purchaser and the Purchased Assets, and that the conveyances and transfers

described herein have been effected; and (2) is and shall be binding upon and govern the acts of

all persons and entities, including all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal and local officials and all other persons and

entities who may be required by operation of law, the duties of their office, or contract, to accept,

file, register or otherwise record or release any documents or instruments, or who may be required

to report or insure any title or state of title in or to any lease; and each of the foregoing persons and

entities is hereby directed to accept for filing any and all of the documents and instruments

necessary and appropriate to consummate the transactions contemplated by the Arsynco Sale

Agreement.

Page:      16
Debtor:    Aceto Corporation, *et al.*
Case No.:  19-13448 (VFP)
Caption:   Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
           of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
           Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
           the Payment of Broker's Commission, and (iv) Granting Related Relief

---

D.    If any person or entity that has filed financing statements, mortgages, deeds of trust, mechanic's liens, *lis pendens* or other documents or agreements evidencing Encumbrances against the Purchased Assets has not delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Purchased Assets, then with regard to the Purchased Assets that are purchased by Purchaser pursuant to the Arsynco Sale Agreement and this Sale Order: (1) the Debtors are hereby authorized, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets; and (2) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against the Purchased Assets.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.  Notwithstanding and without limiting the foregoing, the provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of Encumbrances on the Purchased Assets, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order.

E.    Following the Closing of the Sale, no holder of any Claim with respect to the Purchased Assets shall interfere with the Purchaser's title to or use and enjoyment of the

Page:        17
Debtor:      Aceto Corporation, *et al.*
Case No.:    19-13448 (VFP)
Caption:     Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
             of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
             Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
             the Payment of Broker's Commission, and (iv) Granting Related Relief

---

Purchased Assets based on or related to any such Claim or based on any actions the Debtors may

take in their Chapter 11 Cases.

9.      <u>Assumption and Assignment of the BASF Agreements</u>.  The Debtors are authorized

and directed at the Closing to assume and assign each of the BASF Agreements to the Purchaser

pursuant to sections 105(a) and 365 of the Bankruptcy Code and the Arsynco Sale Agreement and

to execute and deliver to the Purchaser such documents or other instruments as may be necessary

to assign and transfer the BASF Agreements to the Purchaser.   There are no defaults or other

obligations of the Debtors under the BASF Agreements that require cure and, the Purchaser has

provided adequate assurances of future performance with respect to each of the BASF Agreements

within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code such that

Arsynco is authorized to assume the BASF Agreements and to assign such BASF Agreements to

the Purchaser.

10.     Pursuant to section 365(f) of the Bankruptcy Code, the BASF Agreements to be

assumed and assigned under the Arsynco Sale Agreement shall be assigned and transferred to, and

remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in

the BASF Agreements or other restrictions prohibiting their assignment or transfer.   Any

provisions in any BASF Agreement that prohibit or condition the assignment of such BASF

Agreement to the Purchaser (including the invocation of Section 1927 of the Social Security Act,

42 U.S.C. § 1396r-8, if applicable) or allow the counterparty to such BASF Agreement to

terminate, recapture, setoff or recoup, impose any penalty, condition on renewal or extension, or

modify any term or condition upon the assignment of such BASF Agreement to the Purchaser,

Page:       18
Debtor:    Aceto Corporation, *et al.*
Case No.:  19-13448 (VFP)
Caption:   Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
           of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
           Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
           the Payment of Broker's Commission, and (iv) Granting Related Relief

---

constitute unenforceable anti-assignment provisions that are void and of no force and effect. All

other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the

assumption by the Debtors and assignment to the Purchaser of the BASF Agreements have been

satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the

Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors under

the BASF Agreements, and such BASF Agreements shall remain in full force and effect for the

benefit of the Purchaser. Each counterparty to the BASF Agreements shall, with respect to each

BASF Agreement, be forever barred, estopped, and permanently enjoined from (a) asserting

against the Debtors or the Purchaser or their respective property any assignment fee, acceleration,

default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing

as of the Closing or arising by reason of the Closing, including, without limitation, any breach

related to or arising out of change-in-control provisions in such BASF Agreements, or any

purported written or oral modification to the BASF Agreements and (b) asserting against the

Purchaser (or its respective property, including, without limitation, the Purchased Assets) any

claim, counterclaim, defense, breach, condition, or setoff asserted, or assertable against the

Debtors existing as of the Closing or arising by reason of the Closing.

11.    There shall be no assumption of any BASF Agreement absent simultaneous

assignment thereof to the Purchaser. Upon the Closing, the Purchaser shall be deemed to be

substituted for the Debtors as a party to the applicable BASF Agreements and the Debtors shall be

released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the BASF

Agreements. There shall be assignment fees, increases, or any other fees charged to the Purchaser

Page:       19
Debtor:     Aceto Corporation, *et al.*
Case No.:   19-13448 (VFP)
Caption:    Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
            of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
            Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
            the Payment of Broker's Commission, and (iv) Granting Related Relief

---

or the Debtors as a result of the assumption and assignment of the BASF Agreements. The failure
of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any
BASF Agreement shall not be a waiver of such terms or conditions or of the right of the Debtors
or the Purchaser, as the case may be, to enforce every term and condition of such BASF
Agreement. The validity of the assumption and assignment of any BASF Agreement to the
Purchaser shall not be affected by any existing dispute between the Debtors and any counterparty
to such BASF Agreement. Any party that may have had the right to consent to the assignment of
any BASF Agreement is deemed to have consented for the purposes of section 365(e)(2)(A) of the
Bankruptcy Code.

12.     The assignments of each of the BASF Agreements are made in good faith under
sections 363(b) and (m) of the Bankruptcy Code.

13.     <u>Broker's Commission</u>.  Upon the closing of the Sale contemplated under the
Arsynco Sale Agreement to 511 Thirteenth, Quantum shall be entitled to immediate payment of
the Broker Commission from the proceeds of the Sale of the Property, without the need for the
filing of any monthly, interim, or final fee applications with respect to the Broker's Commission,
and the Debtors are hereby permitted to pay to Quantum the Broker's Commission from the
proceeds of the Sale upon the Closing of the Sale to 511 Thirteenth. For the avoidance of doubt,
no claims and interests shall attach to the portion of the Sale proceeds to be used to pay the Broker's
Commission or the Debtors' reasonable fees and attorneys' fees in connection with the Sale, and
any other costs and closing costs in connection with such Sale. Moreover, with the exception of
the Broker's Commission authorized in this paragraph, neither the Debtors nor the Purchaser is

Page:       20
Debtor:     Aceto Corporation, *et al.*
Case No.:   19-13448 (VFP)
Caption:    Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
            of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
            Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
            the Payment of Broker's Commission, and (iv) Granting Related Relief

---

and will be liable to any agent, broker, person or firm acting or purporting to act on behalf of either

the Debtors or the Purchaser for any commission, broker's fee or finder's fee respecting the Sale.

14.    Remediation Funding Source Bank Account.  Upon the Closing of the Sale and the

entry of this Sale Order, the Debtors shall be authorized and directed to transfer all funds held in

the Remediation Funding Source Bank Account to Aceto Corporation as soon as reasonably

practicable after the Closing of the Sale.  For the avoidance of doubt, no claims or interests of any

party holding a claim or interest against Arsynco or the Purchaser shall attach to any portion of the

funds held in the Remediation Funding Source Bank Account.

15.    Permanent Injunction.  This Sale Order shall operate as a permanent injunction

prohibiting any party to a contract that has been rejected by any of the Debtors that in any way

relates to any of the Purchased Assets from taking any action against the Purchaser in connection

with the Sale, whether pursuant to the Bankruptcy Code or any other statutory or non-statutory

federal, state or local law.

16.    Operation by Purchaser.  To the maximum extent available under applicable law

and except as provided for in the Arsynco Sale Agreement: (a) the Purchaser shall be authorized,

as of the Closing, to operate under any license, permit, registration, and any other governmental

authorization or approval of the Debtors with respect to the Purchased Assets and the BASF

Agreements; (b) all such licenses, permits, registrations, and governmental authorizations and

approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as

of the Closing; and (c) to the extent provided by section 525 of the Bankruptcy Code, no

governmental unit may revoke or suspend any permit or license relating to the operation of the

Page:       21
Debtor:     Aceto Corporation, *et al.*
Case No.:   19-13448 (VFP)
Caption:    Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
            of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
            Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
            the Payment of Broker's Commission, and (iv) Granting Related Relief

---

Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or

pendency of these Chapter 11 Cases or the consummation of the Sale.

17.    <u>Enforcement</u>.  The terms and provisions of the Arsynco Sale Agreement and this

Sale Order, and the transactions contemplated thereby and hereby, shall, as applicable, be

specifically enforceable against and be binding in all respects upon, or shall inure to the benefit of,

the Debtors, their estates, and their creditors, the Purchaser, and their respective affiliates,

successors and assigns, and any affected third parties, including all entities asserting

Encumbrances against the Purchased Assets, notwithstanding any subsequent appointment of any

trustee, examiner or receiver of the Debtors under any chapter of the Bankruptcy Code or any other

law, and all such terms and provisions likewise shall be binding on and specifically enforceable

against such trustee, examiner or receiver, and shall not be subject to rejection or avoidance by the

Debtors, their estates, their creditors, any other representatives of their estates, or any trustee,

examiner or receiver.

18.    <u>Police and Regulatory Liability</u>.  Nothing in this Sale Order or the Arsynco Sale

Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory

liability to a governmental unit that any entity would be subject to as the post-sale owner or

operator of property after the date of entry of this Sale Order.  Nothing in this Sale Order or the

Arsynco Sale Agreement authorizes the transfer or assignment of any governmental (a) license,

(b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any

obligation thereunder, without compliance with all applicable legal requirements and approvals

under police or regulatory law.  Nothing in this Sale Order divests any tribunal of any jurisdiction

Page:      22
Debtor:    Aceto Corporation, *et al.*
Case No.:  19-13448 (VFP)
Caption:   Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
           of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
           Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
           the Payment of Broker's Commission, and (iv) Granting Related Relief

---

it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense

asserted under this Sale Order.

19.    <u>Effect of Not Closing Sale</u>.  In the event that the Sale do not close, none of the

Seller's executory contracts and leases shall be assumed or rejected by virtue of this Order and

shall remain subject to further administration in this case.

20.    <u>No Bulk Sales</u>.  No bulk sales law or similar law of any state or other jurisdiction

shall apply in any way to the transactions contemplated by the Arsynco Sale Agreement, the Sale

Motion and this Sale Order.

21.    <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction to, among

other things, (a) interpret, enforce and implement the terms and provisions of this Sale Order and

the Arsynco Sale Agreement, all amendments thereto, any waivers and consents thereunder and of

each of the Arsynco Sale Agreements executed in connection therewith in all respects; (b) to

adjudicate disputes related to this Sale Order or the Arsynco Sale Agreement or the rights and

duties provided hereunder or thereunder or any issues relating to the Arsynco Sale Agreement and

this Sale Order including, but not limited to, the interpretation of the terms, conditions and

provisions hereof and thereof, the status, nature and extent of the Purchased Assets and the BASF

Agreements and all issues and disputes arising in connection with the relief authorized herein,

inclusive of those concerning the transfer of the Purchased Assets and the BASF Agreements free

and clear of all Encumbrances against the Purchased Assets; and (c) to enforce the injunctions set

forth herein.

Page:       23
Debtor:     Aceto Corporation, *et al.*
Case No.:   19-13448 (VFP)
Caption:    Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
            of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
            Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
            the Payment of Broker's Commission, and (iv) Granting Related Relief

22.    <u>Modification</u>.   The Arsynco Sale Agreement may be modified, amended or supplemented by the Purchaser and Arsynco in a writing signed by the party to be charged thereby without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the Arsynco Sale Agreement or modify the express terms of this Sale Order and subject to the restrictions set forth in Section 13.1 of the Arsynco Sale Agreement.

23.    <u>Survival</u>.  Nothing contained in any subsequent order of this Court or any court of competent jurisdiction in these Chapter 11 Cases (or any order entered after any conversion of a Chapter 11 Case of the Debtors to a case under chapter 7 of the Bankruptcy Code) or any chapter 11 plan confirmed in any Debtors' Chapter 11 Cases or any order confirming any such plan, or any order dismissing any Chapter 11 Case of the Debtors shall nullify, alter, conflict with, or in any manner derogate from the provisions of this Sale Order or the Arsynco Sale Agreement, and the provisions of this Sale Order or the Arsynco Sale Agreement shall survive and remain in full force and effect.  Any chapter 11 plan and order confirming said plan shall specifically incorporate the terms of this Sale Order.  For the avoidance of doubt, if the Debtors' Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, this Sale Order or the Arsynco Sale Agreement shall be binding on any chapter 7 trustee appointed in such chapter 7 cases.

24.    <u>Failure to Specify</u>.  The failure specifically to include any particular provision of the Arsynco Sale Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser that the Arsynco Sale Agreement be authorized and approved in its entirety with such amendments thereto as may

Page:        24
Debtor:     Aceto Corporation, *et al.*
Case No.:   19-13448 (VFP)
Caption:    Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
            of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
            Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
            the Payment of Broker's Commission, and (iv) Granting Related Relief

---

be made by the parties in accordance with this Sale Order and the terms of the Arsynco Sale

Agreement.

25.    <u>Non-Severability</u>.    The provisions of this Sale Order are non-severable and

mutually dependent.

26.    <u>Automatic Stay</u>.    The automatic stay pursuant to Bankruptcy Code section 362 is

hereby lifted with respect to the Debtors to the extent necessary, without further order of this Court,

to allow: (a) the Purchaser to give the Debtors any notice provided for in the Arsynco Sale

Agreement, and (b) the Purchaser to take any and all actions provided under or contemplated by

the Arsynco Sale Agreement in accordance with the terms and conditions thereof.

27.    <u>Order Immediately Enforceable</u>.    Notwithstanding the possible applicability of

Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9014 or any other applicable Bankruptcy

Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, the terms and conditions of this Sale

Order shall be immediately effective and enforceable upon its entry, there shall be no stay of

execution or effectiveness of this Sale Order, and the Debtors and the Buyer are authorized to close

the Sale immediately upon entry of this Sale Order.

28.    <u>Further Assurances</u>.    The Debtors are hereby authorized to promptly (a) execute

and deliver, or cause to be executed and delivered, all such other documents, agreements and

instruments as Purchaser may reasonably request to correct any errors or omissions hereunder, to

comply with changes in applicable law and any recordation requirements, or to make any

recordings, file any notices, or obtain any consents, as may be necessary or appropriate in

connection therewith as contemplated herein, and (b) do all such further lawful and reasonable

Page:      25
Debtor:    Aceto Corporation, *et al.*
Case No.:  19-13448 (VFP)
Caption:   Order (i) Authorizing and Approving Private Sale of Debtor Arsynco's Property Free and Clear
           of Liens, Claims and Encumbrances, Subject to Higher and Better Offers, (ii) Authorizing the
           Assumption and Assignment of Certain Contracts with BASF Corporation, (iii) Authorizing
           the Payment of Broker's Commission, and (iv) Granting Related Relief

---

acts, conveyances and assurances as may be necessary or appropriate to carry out of the intents and purposes of this Sale Order and related Agreement as the Purchaser shall reasonably require from time to time.

29.    <u>Conflicts</u>.  In the event of a direct conflict between the terms of this Sale Order and the terms of (a) the Arsynco Sale Agreement, or (b) any other order of this Court, the terms of this Sale Order shall govern and control.

30.    <u>No Waiver</u>.  Except as otherwise expressly set forth herein, nothing in this Sale Order shall modify or waive any closing conditions or termination rights in the Arsynco Sale Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

31.    <u>Closing</u>.  Notwithstanding anything to the contrary in the Arsynco Sale Agreement, the Closing Date shall be held no later than thirty (30) days from the entry of this Order.

## Exhibit A

**Arsynco Sale Agreement**

# PURCHASE AND SALE AGREEMENT

## BETWEEN

## ARSYNCO, INC.,

a New Jersey corporation

## AS SELLER,

## AND

## 511 THIRTEENTH STREET LLC,

a New Jersey limited liability company

## AS PURCHASER

Date:  As of July 31, 2019

## TABLE OF CONTENTS

ARTICLE 1 - SALE OF THE PROPERTY ......................................................................................2

    1.1.    Property to be Sold and Conveyed ...........................................................................2

    1.2.    Purchase Price ...........................................................................................................2

ARTICLE 2 – CLOSING ..............................................................................................................2

    2.1.    Closing Date ..............................................................................................................2

    2.2.    Closing Place .............................................................................................................2

    2.3.    Apportionments .........................................................................................................2

    2.4.    Seller's Deliveries .....................................................................................................3

    2.5.    Purchaser's Deliveries ..............................................................................................3

    2.6.    Realty Transfer Fee and Other Fees and Taxes........................................................4

    2.7.    Assessments ..............................................................................................................4

ARTICLE 3 - TITLE AND CONDITION OF PROPERTY ............................................................4

    3.1.    Title; Permitted Encumbrances ................................................................................4

    3.2.    Condition of Property ................................................................................................5

ARTICLE 4 – Bankruptcy Court Approval....................................................................................7

    4.1.    Court Approval..........................................................................................................7

    4.2.    Higher and Better Offers. .........................................................................................7

    4.3.    Assignment of BASF Settlement. ............................................................................8

    4.4.    Sale Order..................................................................................................................8

ARTICLE 5 - No Post-Closing Obligations ..................................................................................8

    5.1.    Certificate of Occupancy...........................................................................................8

    5.2.    No Post-Closing Obligations.....................................................................................8

ARTICLE 6 - CASUALTY AND CONDEMNATION....................................................................8

i

6.1.    Casualty ................................................................................................................8

6.2.    Condemnation. .......................................................................................................9

ARTICLE 7 – Environmental ................................................................................................9

7.1.    Purchaser's Environmental Examination and Remediation ..................................9

7.2.    ISRA Compliance and Transfer of Obligations to Purchaser ...........................11

7.3.    PCB Remediation and Transfer of Obligations to Purchaser............................12

7.4.    Environmental Indemnity and Release...............................................................13

7.5.    Survival ...............................................................................................................14

ARTICLE 8- REPRESENTATIONS AND WARRANTIES ......................................................14

8.1.    Warranties and Representations of Seller ...........................................................14

8.2.    Covenants of Seller .............................................................................................14

8.3.    Survival ...............................................................................................................15

8.4.    Warranties and Representations of Purchaser.....................................................15

8.5.    Survival ...............................................................................................................16

ARTICLE 9 - DEFAULT .......................................................................................................16

9.1.    Default by Purchaser ...........................................................................................16

9.2.    Default by Seller..................................................................................................17

ARTICLE 10 - ESCROW AGENT .........................................................................................17

10.1.    Deposit in Escrow ...............................................................................................17

10.2.    Deliveries by Escrow Agent................................................................................17

10.3.    Disputes................................................................................................................17

10.4.    Release and Indemnity ........................................................................................17

10.5.    Escrow Agent Only; Resignation........................................................................18

10.6.    Execution of Agreement......................................................................................18

ARTICLE 11 - CONTINGENCIES .........................................................................................18

11.1.    Conditions Precedent to Obligation of Purchaser. ....................................................18

11.2.    Conditions Precedent to Obligation of Seller...........................................................19

ARTICLE 12 – LIMITATION ON LIABILITY ................................................................20

12.1.    Limitation on Liability ...............................................................................20

ARTICLE 13 – MISCELLANEOUS .................................................................................21

13.1.    Entire Agreement; Merger; Amendments ...............................................................21

13.2.    Broker.......................................................................................................22

13.3.    Notices......................................................................................................22

13.4.    Governing Law; Submission to Jurisdiction. ............................................................23

13.5.    Interpretation .............................................................................................23

13.6.    Counterparts ..............................................................................................23

13.7.    Successors and Assigns ................................................................................24

13.8.    Further Assurances .....................................................................................24

13.9.    No Recording ............................................................................................24

13.10.   Termination ...............................................................................................24

13.11.   Confidentiality...........................................................................................24

13.12.   No Waiver. 24

13.13.   Waiver of Right to Jury Trial .........................................................................25

13.14.   Attorney's Fees ..........................................................................................25

13.15.   Section 1031 Exchange. ...............................................................................25

iii

## EXHIBITS

EXHIBIT A    Legal Description

EXHIBIT B    Permitted Encumbrances

EXHIBIT C    Form of Deed

EXHIBIT D    Form of Seller's Affidavit of Title

EXHIBIT E    Seller's FIRPTA Affidavit

EXHIBIT F    Environmental Documents

EXHIBIT G    RCRA Generator ID Number

EXHIBIT H    ISRA Remediation Certification Form

EXHIBIT I    Remediation Cost Review and RFS/FA Form

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "*Agreement*") made as of this 31st day of July, 2019 (the "*Effective Date*"), by and between **ARSYNCO, INC.**, a New Jersey corporation, having an address at 4 Tri Harbor Court, Port Washington, New York 11050 ("*Seller*"), and **511 THIRTEENTH STREET LLC**, a New Jersey limited liability company having an address at 252 Doremus Avenue, Newark, New Jersey 07105 ("*Purchaser*").

### WITNESSETH:

**WHEREAS**, Seller is the owner of all that certain tract of land, consisting of approximately 12.3 acres, situate in the Borough of Carlstadt, County of Bergen, State of New Jersey, and designated on the Official Tax Map of the Borough of Carlstadt as Block 91, Lot 1, and more commonly known as 511 Thirteenth Street, all as more fully described on **Exhibit A** attached hereto and made a part hereof as if fully reproduced herein, together with any and all buildings, improvements and fixtures thereon and all tenements, hereditaments, appurtenances, and rights of way incident and belonging thereto (collectively, the "*Property*");

**WHEREAS**, Seller desires to sell the Property to Purchaser on the terms and conditions set forth herein;

**WHEREAS**, Purchaser desires to purchase the Property from Seller on the terms and conditions set forth herein;

**WHEREAS**, on February 19, 2019, Seller filed a voluntary petition for bankruptcy commencing a case (Case No. 19-13454) (the "*Bankruptcy Case*") under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of New Jersey (the "*Bankruptcy Court*");

**WHEREAS**, subject to the terms and conditions set forth herein, following execution by Seller and Purchaser, Seller intends to file a motion with the Bankruptcy Court to approve the sale of the Property to Purchaser free and clear of all liens, claims and encumbrances pursuant to section 363 of the Bankruptcy Code and the assumption of the Settlement Agreement dated July 16, 2009 between Seller and BASF Corporation (the "*BASF Settlement*") pursuant to section 365 of the Bankruptcy Code; and

**WHEREAS**, the sale contemplated by this Agreement will be subject to the approval of the Bankruptcy Court and will be consummated only pursuant to a Sale Order to be entered in the Bankruptcy Case and other applicable provisions of the Bankruptcy Code.

**NOW, THEREFORE**, in consideration of the mutual promises contained herein and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

## ARTICLE 1 - SALE OF THE PROPERTY

1.1.    **Property to be Sold and Conveyed**.  Subject to the terms, conditions and covenants of this Agreement, Seller agrees to sell, assign, convey and deliver the Property and Purchaser agrees to purchase and accept all of Seller's right, title and interest in and to the Property upon the terms and conditions set forth herein subject to the Sale Order (defined in Article 4), free and clear of liens, claims and encumbrances, except for:  (a) such tenancies, easements, covenants, restrictions, agreements, encumbrances and other matters of title as enumerated on **Exhibit B** attached hereto, (b) all present and future zoning and other governmental laws and regulations, (c) all facts that would be revealed by an accurate survey or physical inspection of the Property, and (d) the BASF Settlement, which is to be assumed and assigned by Seller to Purchaser, as further set forth in **Section 4.3** herein (the items enumerated in (a) through (c) are hereinafter collectively referred to as the "***Permitted Encumbrances***").

1.2.    **Purchase Price**.  The purchase price for the Property (the "***Purchase Price***") is One Million Fifty Thousand and 00/100 Dollars ($1,050,000.00).  Subject to prorations and adjustments, the Purchase Price shall be paid by Purchaser as follows:

(a)    A deposit in the amount of One Million Fifty Thousand and 00/100 Dollars ($1,050,000.00) (the "***Deposit***") shall be paid by wire transfer of immediately available funds in U.S. dollars by Purchaser to the Riker Danzig Scherer Hyland & Perretti LLP Attorney Trust Account (the "***Escrow Agent***") within three (3) business days after the Effective Date.  The Deposit shall be held by the Escrow Agent in a non-interest bearing trust account in accordance with the provisions of Article 10 hereof.  Except as otherwise provided in this Agreement, the Deposit shall be non-refundable to the Purchaser but fully applicable to the Purchase Price.

(b)    At Closing, any increase or decrease in the Purchase Price that results from the closing adjustments described in Article 2 below (the "***Adjusted Closing Balance***") shall be paid to Seller by wire transfer to an account designated by Seller, or if applicable, to Purchaser by wire transfer to an account designated by Purchaser.

## ARTICLE 2 – CLOSING

2.1.    **Closing Date**.  The parties agree that the consummation of the transaction contemplated by this Agreement (the "**Closing**") shall take place as soon practicable following the entry of the Sale Order, if approved in the form submitted to the Bankruptcy Court, but in any event no later than thirty (30) days after the entry of the Sale Order, or at such other date as may be agreed upon by the parties hereto or their respective counsel.  The date and time at which the Closing actually occurs is hereinafter referred to as the "**Closing Date**."

2.2.    **Closing Place**.  The Closing shall occur via escrow through the services of the Title Company (as hereinafter defined), or at any other place as may be agreed upon by the parties hereto or their respective counsel.

2.3.    **Apportionments**.  At the Closing, the following items shall be apportioned for the Property as of 11:59 p.m. EST, on the day preceding the Closing Date:

(I)    Real estate taxes including, without limitation, county, school and town taxes;

      (2)      Water and sewer charges; and

      (3)      Fuel, if any.

At Closing, the parties shall execute a closing statement setting forth all adjustments and the basis for same (the "***Closing Statement***").  Except as expressly set forth to the contrary herein, all apportionments shall be deemed final and conclusive as of the date of Closing.

2.4.    **Seller's Deliveries**.  At the Closing, Seller shall deliver to Purchaser each of the following:

      (a)      The Sale Order;

      (b)      A bargain and sale deed with covenants against grantor's acts (the "***Deed***"), in recordable form, duly executed by Seller, to convey to Purchaser title to the Property, subject only to the Permitted Encumbrances in the form attached hereto as **Exhibit C**;

      (c)      A duly executed affidavit of title in the form attached hereto as **Exhibit D**;

      (d)      An affidavit sworn to by Seller, in the form attached hereto as **Exhibit E**, stating under penalty of perjury that Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code and stating Seller's United States taxpayer identification number;

      (e)      Any required transfer tax returns, forms or documents (collectively, "***Transfer Tax Return***") executed by Seller;

      (f)      A duly executed certification of Seller that all representations and warranties of Seller included herein are true and correct as of the day of Closing;

      (g)      The Closing Statement; and

      (h)      Such other documents, as may reasonably be requested by the Title Company to consummate the transactions contemplated by this Agreement.

2.5.    **Purchaser's Deliveries**.  At the Closing, Purchaser shall deliver to Seller each of the following:

      (a)      The Adjusted Closing Balance;

      (b)      The Transfer Tax Return executed by Purchaser (if required);

      (c)      A resolution of the Purchaser authorizing the transaction contemplated herein and attaching certified true copies of the Purchaser's organizational documents;

      (d)      The Closing Statement;

      (e)      A duly executed certification of Purchaser that all representations and warranties of Purchaser included herein are true and correct as of the day of Closing; and

(f)      Such other documents, as may reasonably be requested by the Title Company to consummate the transactions contemplated by this Agreement.

2.6.    **Realty Transfer Fee and Other Fees and Taxes**.  The realty transfer fee, if any, in connection with the transfer of the Property shall be paid by Seller.  Any mansion tax of any kind whatsoever (to the extent applicable) shall be paid by Purchaser.  All other governmental fees and taxes, if any, which are not otherwise addressed herein shall be paid by Purchaser.  All search fees of Purchaser's title insurer, recording fees and title insurance premiums with respect to the transaction hereunder shall be paid by Purchaser.

2.7.    **Assessments**.  If, at Closing, the Property or any part thereof shall have been affected by a governmental assessment or assessments, which are or may become payable in annual installments, of which the first installment is then a charge or lien, then for the purposes of this Agreement, all the unpaid installments of any such assessment due and payable in calendar years prior to the year in which the Closing occurs shall be paid by the Seller and all installments becoming due and payable after the delivery of the Deed shall be assumed and paid by the Purchaser.  However, if such an assessment or assessments shall be due in one lump sum payment, then to the extent such assessment(s) is for improvements in place as of the Effective Date, then such assessment(s) shall be paid by the Seller but if such assessment(s) is for improvements to be made subsequent to the Effective Date, then the same shall be paid by the Purchaser.

### ARTICLE 3 - TITLE AND CONDITION OF PROPERTY

3.1.    **Title; Permitted Encumbrances**.  At Closing, Seller shall deliver to Purchaser marketable title  to the Property subject only to the Permitted Encumbrances.  All covenants, conditions, limitations, restrictions, rights, rights of way, encumbrances, encroachments, reservations, easements, agreements and other matters of fact or record or as shown on any survey obtained by Purchaser as of the Effective Date, together with those items identified on **Exhibit B,** shall be deemed "**Permitted Encumbrances**".

(a)      If subsequent to the Effective Date of this Agreement, Purchaser becomes aware of any title exception not already constituting a Permitted Encumbrance (a "*Subsequent Encumbrance*"), then Purchaser may object thereto by notice to Seller, but only if Purchaser does so within five (5) days after the date that Purchaser discovers same, but not later than the Closing Date.  If Purchaser fails to timely so object to a Subsequent Encumbrance, same shall be deemed a Permitted Encumbrance.

(b)      Any objection to the Title Commitment given pursuant to the preceding **Subsection 3.1(a)** shall be referred to as a "*Title Objection*".  Within fifteen (15) days after receipt of a Title Objection, Seller shall notify Purchaser whether Seller intends to attempt to cure same (although Seller may thereafter notify Purchaser that Seller will not cure the Title Objection); Seller's failure to so notify Purchaser shall be deemed an election not to attempt to cure.  If Seller so elects to attempt to cure, Seller may at any time or times adjourn the Closing to a date not more than a cumulative total of thirty (30) days after the then scheduled Closing Date.  If Seller cures the Title Objections on or before the Closing Date (as same may have been adjourned), then the Closing will occur on the Closing Date in accordance with the provisions of this Agreement without any reduction in or abatement of the Purchase Price.  Seller shall be

4

deemed to have cured a Title Objection if Seller obtains the commitment of the Title Company to insure or endorse over such Title Objection at no cost to Purchaser. Notwithstanding anything contained herein to the contrary, if the Property shall be subject to any liens or encumbrances in a fixed or ascertainable amount including, without limitation, any mortgages, deeds of trust and the like, Seller shall pay same at or prior to Closing.

(c)    If at any time Seller elects (or is deemed to have elected) not to cure a Title Objection, or if Seller elects to attempt to cure a Title Objection but fails to do so prior to Closing, then Purchaser's sole right and remedy shall be to elect, within five (5) days after: (i) the receipt of Seller's election or (ii) the date Seller is deemed to have elected not to cure a Title Objection (but in any event prior to the Closing Date), as applicable, to either: (x) terminate this Agreement and the Deposit shall be returned to Purchaser; or (y) proceed to Closing in accordance with this Agreement subject to such Title Objection without reduction in or abatement of the Purchase Price. If Purchaser fails to timely elect, then Purchaser shall be deemed to have elected to proceed to Closing in accordance with this Agreement subject to such Title Objection without reduction in or abatement of the Purchase Price. If Purchaser elects (or is deemed to have elected) to proceed to Closing in accordance with this Agreement such Title Objection shall be deemed a Permitted Encumbrance.

3.2.    **Condition of Property**.

(a)    PURCHASER REPRESENTS, WARRANTS AND ACKNOWLEDGES TO AND AGREES WITH SELLER THAT PURCHASER IS PURCHASING THE PROPERTY IN "AS-IS" CONDITION "WITH ALL FAULTS" (**INCLUDING, WITHOUT LIMITATION, THE ENVIRONMENTAL CONDITION OF THE PROPERTY**) AND SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATION OR GUARANTEES, EITHER EXPRESS OR IMPLIED, OF ANY KIND, NATURE, OR TYPE WHATSOEVER FROM OR ON BEHALF OF THE SELLER. PURCHASER ACKNOWLEDGES THAT PURCHASER HAS NOT RELIED, AND IS NOT RELYING, UPON ANY INFORMATION, DOCUMENT, SALES BROCHURES OR OTHER LITERATURE, MAPS OR SKETCHES, PROJECTION, PROFORMA, STATEMENT, REPRESENTATION, GUARANTEE OR WARRANTY (WHETHER EXPRESS OR IMPLIED, OR ORAL OR WRITTEN, OR MATERIAL OR IMMATERIAL) THAT MAY HAVE BEEN GIVEN BY OR MADE BY OR ON BEHALF OF THE SELLER. PURCHASER ACKNOWLEDGES THAT PURCHASER IS TAKING ANY IMPROVEMENTS ON THE PROPERTY IN THEIR "AS-IS" "WHERE-IS" CONDITION.

(b)    Purchaser hereby acknowledges that it shall not be entitled to, and shall not, rely on the Seller Entities (as defined herein) as to (i) the quality, nature, adequacy or physical condition of the Property; (ii) the zoning classification, and use or other legal status of the Property; (iii) the Property's, or its operations' compliance with any applicable codes, laws, certificates of occupancy, regulations, statutes, ordinances, covenants, setback requirements, conditions or restrictions of any governmental or quasi-governmental entity or of any other person or entity; (iv) the quality of any labor or materials relating in any way to the Property; (v) the existence of any violations affecting the Property; or (vi) the condition of title to the Property or the nature, status and extent of any right of way, lease, right of redemption, possession, lien,

5

encumbrance, license, reservations, covenant, condition, restriction or any other matter affecting title to the Property.

(c)    Purchaser acknowledges to and agrees with Seller that with respect to the Property, Seller has not, does not, and will not make any warranties or representations, express or implied, or arising by operation of law, including, but in no way limited to, any warranty of condition, merchantability, habitability or fitness for a particular use, or with respect to the value, profitability or marketability of the Property.

(d)    Purchaser acknowledges that the Seller Entities (as defined herein) have not, do not and will not make any representation or warranty with regard to compliance with any environmental protection, pollution or land use laws, rules, regulations, orders or requirements including but not limited to, those pertaining to the handling, generating, treating, storing or disposing of any hazardous waste, material or substance. Without limiting the foregoing, the Seller Entities (as defined herein) do not make and have not made and specifically disclaim any representation or warranty regarding the presence or absence of any Hazardous Substance, as hereinafter defined, at, on, under, about, or emanating from the Property or the compliance or non-compliance of the Property with the following statutes, and, as to each, their implementing rules or regulations: the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendment and Reauthorization Act, 42 U.S.C. § 9601 et seq.; the Resource Conservation Recovery Act, 42 U.S.C. § 6401 et seq.; the Federal Water Pollution Control Act, 33 U.S.C. §1251 et seq.; the Federal Insecticide, Fungicide and Rodenticide Act, as amended by the Federal Environmental Pesticides Control Act, 1972, 7 U.S.C. § 136 et seq.; the Clean Air Act, 42 U.S.C. § 9201 et seq.; the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq. (*"TSCA"*); the New Jersey Industrial Site Recovery Act, N.J.S.A. 13:1K-6 et seq. (*"ISRA"*); the New Jersey Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq.; the New Jersey Air Pollution Control Act, N.J.S.A. 26:2C-1 et seq.; the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq.; the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq.; federal, state, or local so-called "Superfund" or "Superlien Statute," or any other statute, law, ordinance, code, rule, regulation, order or decrees regulating, relating to or imposing liability or standards of conduct concerning any hazardous substance (collectively, the "*Environmental Laws*"). The disclaimer set forth herein shall not be affected or limited in any way by any investigation conducted by the Seller Entities (as defined herein), or delivery by Seller to Purchaser of copies of any environmental study or report prepared by any environmental testing firm on behalf or at the direction of Seller, Purchaser or any other party. Seller has not conducted any independent investigation or verification of the contents of any such study or report, and makes no representation or warranty with respect to the accuracy or completeness of the information contained therein. For purposes of this Agreement, "*Hazardous Substance*" shall mean and include (a) any radioactive material, including any source, special nuclear or by-product material as defined in 42 U.S.C. § 2011 et seq.; (b) any asbestos; (c) any pollutant, dangerous substance, toxic substance, toxic pollutant, toxic chemical, hazardous waste, hazardous material, hazardous substance, imminently hazardous substance, extremely hazardous substance, right-to-know hazardous substance, special health hazardous substance, or any similar term defined now or in the future in any Environmental Law; and (d) any polychlorinated biphenyls (*"PCBs"*). Hazardous Substances shall also include petroleum and petroleum-derived products, radon, lead or lead-containing materials, and urea formaldehyde foam insulation. Purchaser further acknowledges that neither Seller, nor any broker(s), nor any

6

agent(s) or representative(s) of Seller has provided any representation or warranty with respect to the existence of Hazardous Substances on the Property.

(e)     Purchaser has been given an adequate opportunity to make such legal, factual and other inquiries and investigation as Purchaser deems necessary, desirable or appropriate with respect to the Property.

(f)     Such inquiries and investigations of Purchaser have included, but were not limited to, the physical components of all portions of the Property, the existence of any wood destroying organisms on the Property, such state of facts as an accurate survey and inspection would show, the present and future zoning ordinances, resolutions and regulations of the city, county and state where the Property is located and the value and marketability of the Property.

(g)     Seller does not make and has not made and specifically disclaims any representation or warranty regarding the compliance or non-compliance of the Property with the Americans with Disabilities Act, or any other statute, law, ordinance, code, rule, requisition, order or decree regulating, relating to or imposing liability or standards of conduct concerning access and accommodation for disabled persons.

(h)     Without in any way limiting the generality of the preceding subparagraphs (a) through (g), Purchaser specifically waives, releases and discharges any claim it has, might have had or may have against the Seller Entities (as defined herein) (and their respective predecessors in title or interest) with respect to the condition of the Property (including, without limitation, the environmental condition of the Property and any and all Hazardous Substances on, under or emanating from the Property), either patent or latent, its ability or inability to obtain or maintain either temporary or final certificates of occupancy or other licenses for the use or operation of the Property, and/or certificates of compliance for the Property, violations affecting the Property, the actual or potential income or profits to be derived from the Property, the real estate taxes or assessments now or hereafter payable thereon, the compliance with any environmental protection, pollution or land use laws, rules, regulations or requirements, and any other state of facts which exist with respect to the Property.

## ARTICLE 4 – BANKRUPTCY COURT APPROVAL

4.1.   **Court Approval**.

The obligations of Seller and Purchaser under this Agreement are expressly conditioned upon entry of an order (and its becoming final and nonappealable) by the Bankruptcy Court approving or authorizing this Agreement or approving or authorizing the Seller to execute, deliver and perform this Agreement and containing the terms described below (the "Sale Order").

4.2.   **Higher and Better Offers**.

This Agreement is conditioned upon Seller not receiving, after notice and hearing, a higher or better offer which Seller is prepared to accept. Seller agrees that no offer shall be deemed higher or better unless it provides for a Purchase Price greater than ONE MILLION FIFTY THOUSAND AND 00/100 ($1,050,000.00) DOLLARS and has a closing date which is the same or similar as is provided in this Agreement. If such an offer

is accepted by Seller and approved or authorized by the Bankruptcy Court, and this Agreement has not previously been approved or authorized by the Bankruptcy Court, (a) this Agreement shall be null and void with respect to the named Purchaser referred to in the preamble of this Agreement and any assignee of the same, the Deposit shall be refunded to Purchaser, and (b) neither party shall have any further rights or obligations hereunder, except all rights or obligations under this Agreement which expressly survive Closing or other termination of this Agreement.

4.3.    **Assignment of BASF Settlement**.

Seller shall transfer and assign the BASF Settlement to Purchaser, and Purchaser shall take the BASF Settlement by way of assignment, as of the Closing Date pursuant to section 365 of the Bankruptcy Code and the Sale Order.

4.4.    **Sale Order**.

The Sale Order shall provide that the sale shall be free and clear of all liens, claims and encumbrances affecting the Property, other than the Permitted Encumbrances as herein defined, pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code. The Sale Order shall provide that, as of the Closing, Seller shall assign to Purchaser the BASF Settlement and Purchaser shall assume the obligations of Seller under the BASF Settlement.

## ARTICLE 5 - NO POST-CLOSING OBLIGATIONS

5.1.    **Certificate of Occupancy.**  In the event one of more certificates of occupancy, or other inspection certificates, smoke detector certification, or other governmental approvals are required by any federal, state, county, or local governmental authority or agency, before the Property may be transferred to Purchaser, Purchaser, at Purchaser's sole expense, shall have the obligation to secure such certificates or approvals, and Purchaser shall be responsible for all costs incidental thereto.

5.2.    **No Post-Closing Obligations.**  With respect to the Property, Purchaser acknowledges that Seller shall have no obligation after Closing to perform work to satisfy any requirements of any covenants running with land, or any zoning or other governmental laws, ordinances or requirements, including, without limitation, compliance with Environmental Laws, which shall be an obligation of Purchaser pursuant to Article 7 of this Agreement, or to cure any violations or to perform any other work. This **Section 5.2** shall survive the Closing.

## ARTICLE 6 - CASUALTY AND CONDEMNATION

6.1.    **Casualty**.  The risk of loss or damage to the Property, by fire or otherwise, beyond ordinary wear and tear, shall be upon Seller until the Closing, provided however, that, since the Property is vacant and unimproved, in the event of a casualty, Purchaser shall accept the Property in its then as is condition at the Closing (which shall not be delayed as a result of the casualty) and Seller shall, at the Closing, assign to Purchaser its rights under all insurance proceeds as a result of such casualty and shall pay to Purchaser all insurance proceeds received by Seller with respect to such casualty.

6.2.    **Condemnation.**

(a)    In the event that a permanent public condemnation, eminent domain or other taking proceeding shall be completed, commenced or threatened against the entire Property, or a material portion of the Property, prior to Closing, such that the Property cannot, in Seller's or Purchaser's reasonable judgment be used for its intended purpose, either party may terminate this Agreement by giving a notice of termination to the non-terminating party within ten (10) days after delivery of a condemnation notice.

(b)    In the event of a permanent public condemnation, eminent domain or other taking proceeding of a portion of the Property prior to Closing, which is not described in **Section 6.2(a)**, Purchaser shall complete the sale without any adjustment to the Purchase Price or other compensation for such condemnation except that any proceeds received by the Seller before the Closing on account thereof shall be paid over to Purchaser at Closing as a Closing adjustment, and Seller shall transfer and assign to Purchaser at Closing all of Seller's rights and interests in and to such award and proceeds and any proceeds received by the Seller after Closing on account thereof shall be paid over to Purchaser as a post-closing adjustment.

(c)    Notwithstanding anything in this Agreement to the contrary, unless either Seller or Purchaser has elected to terminate this Agreement in the event of any condemnation of all or a material portion of the Property, the Closing shall be extended for a period of time necessary to permit the procedures set forth in this **Section 6.2** to apply.

## ARTICLE 7 – ENVIRONMENTAL

7.1.    **Purchaser's Environmental Examination and Remediation.**

(a)    Seller has made available to Purchaser copies of environmental documents relating to the Arsynco ISRA Case and the PCB Remediation Approval (as each is defined herein), which are identified on **Exhibit F**. The documents identified in this paragraph, collectively, are referred to hereinafter as the "*Environmental Reports*." All information obtained by Purchaser or its representatives relating to the Property or the transactions contemplated hereby, including, without limitation, the Environmental Reports, shall be treated as confidential information. Purchaser shall not disclose any information obtained by Purchaser, including, without limitation, the results of environmental inspections or analysis, to any party, including Seller, without obtaining Seller's prior written consent, except that Purchaser may disclose such information to its consultants, attorneys and prospective lenders engaged in the review of same and may disclose the existence of this Agreement to prospective purchasers and/or tenants; provided such consultants, attorneys, and prospective lenders agree to the confidentiality provisions herein.

(b)    Purchaser acknowledges and agrees that it has been given an adequate opportunity to make such legal, factual and other inquiries and investigation as it deems necessary, desirable or appropriate with respect to the environmental condition of the Property and the remediation being performed and to be performed thereon, including, without limitation, through review of the Environmental Reports and discussions with the Seller Entities (as defined herein) and their agents.

(c)    NOTWITHSTANDING THE FOREGOING, SELLER MAKES NO REPRESENTATION OR WARRANTY AS TO THE TRUTH, ACCURACY OR COMPLETENESS OF ANY DELIVERIES, MATERIALS, DATA OR INFORMATION (INCLUDING, WITHOUT LIMITATION, ANY ENVIRONMENTAL REPORTS) DELIVERED BY SELLER OR ITS AGENTS TO PURCHASER IN CONNECTION WITH THE TRANSACTION. PURCHASER ACKNOWLEDGES AND AGREES THAT ALL DELIVERIES, MATERIALS, DATA AND INFORMATION DELIVERED BY SELLER OR ITS AGENTS TO PURCHASER IN CONNECTION WITH THE TRANSACTION ARE PROVIDED TO PURCHASER AS A CONVENIENCE ONLY AND THAT ANY RELIANCE ON OR USE OF SUCH DELIVERIES, MATERIALS, DATA OR INFORMATION BY PURCHASER SHALL BE AT THE SOLE RISK OF PURCHASER. NEITHER SELLER, NOR ITS AFFILIATES OR AGENTS, NOR ANY OF THE SELLER ENTITIES (AS DEFINED HEREIN) SHALL HAVE ANY LIABILITY TO PURCHASER.

(d)    After the Closing, Purchaser shall be responsible at its sole cost and expense to investigate and/or remediate Hazardous Substances that are present, at, on, under or migrating from the Property, to the extent such investigation and/or remediation is required by any provision of Environmental Law, the New Jersey Department of Environmental Protection ("*NJDEP*"), the U.S. Environmental Protection Agency ("*EPA*"), or any other governmental agency, and/or a licensed site remediation professional ("*LSRP*"), including, without limitation, completing and concluding the Arsynco ISRA Case, as defined herein, and complying with the PCB Remediation Approval, as defined herein, provided that Purchaser shall not be responsible to investigate and/or remediate Hazardous Substances with respect to the alleged contamination of the Berry's Creek area in Bergen County, New Jersey ("*Berry's Creek*"), except to the extent that Purchaser discharged such Hazardous Substances (collectively, "*Purchaser's Remediation*"). Purchaser shall promptly and diligently take all actions necessary to complete Purchaser's Remediation, to obtain a Site-Wide Response Action Outcome ("*RAO*"), to obtain any required Remedial Action Permits ("*RAPs*") associated therewith, and to comply with the PCB Remediation Approval, as defined herein.

(e)    Consistent with the foregoing, as soon as practicable following the Closing, and in no event beyond an applicable time-frame specified in any Environmental Law, in conducting Purchaser's Remediation, Purchaser shall:

(1)    Retain an LSRP acceptable to Seller;

(2)    Take all required investigatory and remedial actions;

(3)    Prepare, record, and comply with any required institutional controls;

(4)    Plan, construct, and maintain any required engineering controls;

(5)    Prepare, apply for, and comply with any and all required RAPs;

(6)    Prepare and issue any and all required Response Action Outcomes;

(7)    Establish and maintain any and all required Remediation Funding Sources and Financial Assurances;

10

(8)    Complete any and all required Biennial Certifications;

(9)    Pay NJDEP filing and annual fees; and

(10)    Take all other actions necessary to comply with Environmental Laws.

(f)    In no event shall Purchaser name Seller as a permittee or co-permittee on any RAP, unless required by the NJDEP or Environmental Laws. Purchaser shall identify itself as the lead permittee on any RAPs established as part of Purchaser's Remediation.

(g)    Purchaser shall be deemed to be the "Generator," as that term is defined in the Solid Waste Disposal Act as amended by the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., for any contaminated materials or samples taken by Purchaser to be disposed of during the course of Purchaser's Remediation.  In complying with the preceding sentence, Purchaser shall not use the generator identification number currently assigned to Arsynco, which is identified on **Exhibit G**.

(h)    If NJDEP, EPA, or another government agency informs Purchaser that it is not in compliance with any requirement of Purchaser's Remediation, Purchaser has been unable to reverse said determination through an appeals process or cannot reverse said determination, and Purchaser has been unable to cure said determination within thirty (30) days after said determination becomes final (an **"*Environmental Default Event*"**), Seller may elect, without prejudice to any other right or remedy, to undertake performance of Purchaser's Remediation or any portion thereof.  Purchaser shall grant reasonable access to the Property to Seller undertaking such performance and their employees and agents, including environmental consultants and contractors.

7.2.    **ISRA Compliance and Transfer of Obligations to Purchaser**

(a)    Purchaser acknowledges that transfer of the Property is subject to compliance with the requirements of ISRA.  Accordingly, within five (5) days of the Effective Date of this Agreement, Seller shall prepare and file a General Information Notice ("*GIN*") with the NJDEP with respect to this transaction.  Seller shall execute the GIN where appropriate.

(b)    Purchaser further acknowledges that Seller currently is investigating and remediating the Property under ISRA Case Number E93024 (**"*Arsynco ISRA Case*"**).  As a result, no later than fourteen (14) days after the entry of the Sale Order by the Bankruptcy Court, Purchaser shall prepare and provide to Seller:

(1)    an ISRA "Remediation Certification Form," attached hereto as **Exhibit H**, through which Purchaser shall assume responsibility before the NJDEP for compliance with ISRA;

(2)    a "Remediation Cost Review and RFS/FA Form," attached hereto as **Exhibit I**, through which Purchaser shall establish a Remediation Funding Source(s) acceptable to NJDEP (collectively, all forms referred to in **Sections 7.2(b)(1)-(2)** shall be the "*Initial Environmental Forms*").

(c)      Upon Seller's approval of the Initial Environmental Forms, no later than twenty-one (21) days after the entry of the Sale Order by the Bankruptcy Court, Seller and Purchaser shall execute the Initial Environmental Forms where appropriate.

(d)      Upon Closing, Purchaser shall retain its LSRP and file the fully executed Initial Environmental Forms with the NJDEP in a form acceptable to Seller.  Purchaser shall pay all fees associated with the submission of the Initial Environmental Forms, including, without limitation, the Remediation Funding Source surcharge.

(e)      Purchaser acknowledges and agrees that, from and following Closing, it will be responsible, at its sole cost and expense, for compliance with all applicable requirements of ISRA and all other applicable NJDEP regulations and guidance arising therefrom, including complying with all RAPs issued thereunder, and Purchaser agrees to diligently and expeditiously carry out those compliance obligations and requirements under the supervision of its LSRP.

(f)      Purchaser shall conduct all work in a safe and reasonable manner, in conformity with good professional practice and in compliance with all applicable laws.

7.3.    **PCB Remediation and Transfer of Obligations to Purchaser**

(a)      Purchaser acknowledges that Seller currently is investigating and remediating PCBs at the Property in accordance with the EPA Approval for Risk-Based Clean-up/Disposal of Polychlorinated Biphenyl Remediation Waste dated February 12, 2009, the documents submitted by Seller to EPA and incorporated by reference therein, and documents issued by EPA, Purchaser, or any other person after the Effective Date that purport to modify same (**"PCB Remediation Approval"**).

(b)      Purchaser further acknowledges and agrees that implementation of the PCB Remediation Approval may require the use of various institutional and engineering controls including, without limitation, recording of a Deed Notice and/or other institutional controls, (collectively, the **PCB Soil Institutional Controls**"), as well as construction of a cap or other engineering control (the "**PCB Soil Engineering Controls**"), all as described in the PCB Remediation Approval.   The PCB Soil Engineering Controls include the construction, maintenance, and monitoring, including related groundwater monitoring, of the Consolidated Material TSCA Disposal Area and the Former On-Site Pond TSCA Disposal Area, as each is defined in the PCB Remediation Approval.

(c)      Purchaser acknowledges and agrees that, from and following Closing, it will be responsible, at its sole cost and expense, for compliance with the PCB Remediation Approval and all other applicable EPA regulations and guidance arising from TSCA, including complying with and maintaining all PCB Soil Institutional Controls and PCB Soil Engineering Controls established thereunder, and Purchaser agrees to diligently and expeditiously carry out those compliance obligations and requirements.

(d)      Promptly following the entry of the Sale Order by the Bankruptcy Court, Purchaser shall request, in writing with a copy to Seller, that EPA Region 2 reissue the PCB Remediation Approval to Purchaser and transfer all responsibility to comply with the PCB

12

Remediation Approval to Purchaser in accordance with paragraph 6 of the PCB Remediation Approval. Seller shall assist in the transfer of the PCB Remediation Approval to the Purchaser.

(e)     Promptly following Closing or upon receipt of the reissued PCB Remediation Approval from EPA Region 2, whichever occurs later, but in any event no later than thirty (30) days after the date of the reissued PCB Remediation Approval, Purchaser shall provide to EPA Region 2 written notification of its acceptance of and intention to comply with the terms and conditions of the reissued PCB Remediation Approval, in accordance with paragraph 6 of the PCB Remediation Approval. Purchaser simultaneously shall provide Seller with a copy of the written notification.   Purchaser acknowledges that Seller will be irreparably harmed by Purchaser's failure to comply with this **Section 7.3(e)** and that money damages cannot adequately compensate Seller for this harm.  Seller shall be entitled to specific performance and injunctive relief to remedy non-compliance with this **Section 7.3(e)** of this Agreement.

(f)     Upon Closing, Purchaser shall establish a financial assurance that satisfies the requirements of 40 C.F.R. § 761.65(g) and paragraph 3(l) of the PCB Remediation Approval in an amount equal to the then-current amount of the financial assurance established by Seller under the PCB Remediation Approval ("***TSCA Financial Assurance Amount***").

(g)     Purchaser shall conduct all work in a safe and reasonable manner, in conformity with good professional practice and in compliance with all applicable laws.

7.4.   **Environmental Indemnity and Release**

(a)     From and after Closing, Purchaser shall protect, defend, indemnify, and hold harmless Seller and any past, present, or future officers, directors, affiliates, employees, contractors or agents thereof, which shall include, without limitation, Michael DiBello and Steven Rogers, any past, present, or future officers, directors, employees, contractors or agents of parents, subsidiaries, or affiliates of Seller, and any person who provided information to Purchaser on behalf of Seller (collectively, the "***Seller Entities***") from and against any and all loss, liability, cost, damage, fine, penalty and expense (including, without limitation, reasonable attorneys' fees)  ("***Loss***") incurred by any of the Seller Entities that relate to and/or arise out of the following:

(1)     the presence of Hazardous Substances at, on, under, or emanating from the Property, including any natural resource damage claims, except that the indemnity provided by this **Section 7.4(a)(1)** shall not include claims arising from investigation and/or remediation of Hazardous Substances with respect to Berry's Creek, except to the extent that Purchaser discharged such Hazardous Substances to Berry's Creek;

(2)     the failure of Purchaser to comply with Environmental Laws with respect to the Property or to perform Purchaser's Remediation; and

(3)     the breach by Purchaser of any of its representations or obligations under this Agreement;

The indemnity provided by this **Section 7.4(a)** shall survive in perpetuity.

13

(b)     Purchaser specifically waives, releases and discharges any claim it has, might have had or may have against the Seller Entities with respect to: (i) the presence of Hazardous Substances at, on, under, or emanating from the Property; (ii) any acts or omissions of the Seller Entities involving Hazardous Substances at, on, under or emanating from the Property; and (iii) the failure of the Seller Entities to comply with Environmental Laws with respect to the Property or to conduct any investigation or remediation required thereby, including all ISRA requirements, provided that Purchaser does not waive, release or discharge claims relating to and/or arising out of the investigation and/or remediation of Hazardous Substances with respect to Berry's Creek, except to the extent that Purchaser discharged such Hazardous Substances to Berry's Creek.

7.5.   **Survival**

(a)     This **Article 7** shall survive Closing.

## ARTICLE 8- REPRESENTATIONS AND WARRANTIES

8.1.   **Warranties and Representations of Seller**.  Seller represents and warrants that:

(a)     Seller has full power, capacity and authority to execute and deliver this Agreement, and upon approval of the Bankruptcy Court, to consummate the transactions contemplated in this Agreement.

(b)     This Agreement is the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, subject only to bankruptcy and creditor's rights laws, matters affecting creditors of Seller generally and general equitable principles (whether asserted in an action at law or equity), and the Bankruptcy Case.

(c)     The execution, delivery and performance of this Agreement by Seller in accordance with its terms, will not violate, conflict with or result in the breach of any agreement or any law, regulation, contract, agreement, commitment, order, judgment or decree to which Purchaser is a party or by which it is or may be bound, subject to the approval of the Bankruptcy Court in the Bankruptcy Case.

(d)     Except for the Bankruptcy Case, Seller has received no written notice of any pending or threatened actions or proceedings before any court or administrative agency which will materially adversely affect the ability of Seller to perform Seller's obligations under this Agreement.

(e)     Seller has received no written notice of any pending condemnation or similar proceeding affecting the Property or any portion thereof.

(f)     Seller is not a "foreign person" as such term is defined under Section 1445(f)(3) of the Internal Revenue Code.

8.2.   **Covenants of Seller**.  Seller covenants and agrees that until the Closing or sooner termination of this Agreement:

14

(a)    Seller will not voluntarily further encumber the Property in any manner whatsoever, except that Seller may record a deed notice or deed notice(s) encumbering the Property in connection with the Arsynco ISRA Case and/or the PCB Remediation Approval before the Closing and, upon such recording, same shall be deemed to be Permitted Encumbrances hereunder; and

(b)    Seller will not enter into any new contracts or agreements relating to the operation or maintenance of the Property, except for such contracts and agreements which, by their terms, are terminable by the property owner upon no more than 30 days' notice.

8.3.    **Survival**.  The representations and warranties made by Seller in **Section 8.1** are true and correct as of the Effective Date and shall be true and correct and deemed repeated as of Closing, but shall not survive thereafter.  No claim asserted after Closing for a breach of any representation or warranty of Seller shall be actionable or payable if the breach in question results from or is based on a condition, state of facts or other matter which was known to Purchaser prior to Closing.

8.4.    **Warranties and Representations of Purchaser**.  Purchaser warrants and represents that:

(a)    This Agreement is the legal, valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, subject only to bankruptcy and creditor's rights laws, matters affecting creditors of Purchaser generally and general equitable principles (whether asserted in an action at law or equity).

(b)    The execution, delivery and performance of this Agreement by Purchaser in accordance with its terms, will not violate, conflict with or result in the breach of any agreement or any law, regulation, contract, agreement, commitment, order, judgment or decree to which Purchaser is a party or by which it is or may be bound.

(c)    Purchaser has sufficient assets to consummate the transaction contemplated herein.

(d)    Purchaser is familiar with the source of funds for the Purchase Price and represents that all such funds are derived from legitimate business activities within the United States of America and/or from loans from a banking or financial institution chartered or organized within the United States of America.

(e)    Purchaser is not subject to sanctions of the United States government or in violation of any federal, state, municipal or local laws, statues codes, ordinances, orders, decrees, rules or regulations ("*Laws*") relating to terrorism or money laundering, including, without limitation, Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001 (the "*Executive Order*") and the Uniting and Strengthening of America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-56, the "*Patriot Act*").  Purchaser is not a "Prohibited Person", which term is defined as follows: (i) a person or entity that is listed in the Annex to, or is otherwise subject to the provisions of, the Executive Order; (ii) a person or entity owned or controlled by, or acting for or on behalf of, any person or entity that is listed in the Annex to, or is otherwise subject to the provisions of, the

15

Executive Order; (iii) a person or entity that is prohibited from dealing or otherwise engaging in any transaction by any terrorism or anti-money laundering law, including the Executive Order and the Patriot Act; (iv) a person or entity who commits, threatens or conspires to commit or supports "terrorism" as defined in the Executive Order; or (v) a person or entity that is named as a "specially designated national and blocked person" on the most current list published by the U.S. Treasury Department Office of Foreign Asset Control at its official website, http://www.treas.gov/ofac/tllsdn.pdf or any replacement website or other replacement official publication of such list.

(f)      Purchaser does not nor will Purchaser (i) conduct any business or engage in making or receiving any contribution of funds, goods or services to or for the benefit of any Prohibited Person, (ii) deal in, or otherwise engage in, any transaction relating to any property or interest in property blocked pursuant to the Executive Order, or (iii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in the Executive Order or the Patriot Act.

(g)      Purchaser shall deliver to Seller any certification or other evidence requested from time to time by Seller, in its reasonable discretion and in form reasonably acceptable to Seller, confirming Purchaser's compliance with the provisions of Subparagraphs (d), (e) and (f) of this **Section 8.4**.

8.5.      **Survival**.  The representations made by Purchaser in **Sections 8.4(a), (b) and (c)** are true and correct as of the Effective Date and shall be true and correct and deemed repeated as of Closing, but shall not survive thereafter.  The representations made by Purchaser in **Sections 8.4(d), (e) and (f)** are true and correct as of the Effective Date and shall be true and correct and deemed repeated as of Closing, and shall survive Closing and the delivery of the Deed to Purchaser.

## ARTICLE 9 - DEFAULT

9.1.      **Default by Purchaser**.  The parties agree that if Purchaser defaults in the performance of the material terms of this Agreement prior to Closing which default remains uncured for a period of fifteen (15) days after written notice from Seller, Seller may, at its option, as Seller's sole and exclusive remedies at law or in equity: (i) waive all claims on account of such default and proceed to Closing or (ii) retain the Deposit as consideration to Seller for acceptance of this Agreement and as Seller's and Purchaser's good faith estimate of the damages that may be sustained by Seller as a result of Purchaser's breach and as liquidated damages and not as a penalty.  Seller and Purchaser agree that it would be impractical and extremely difficult to fix the actual damages suffered by Seller as a result Purchaser's default, and further that under the circumstances existing as of the date hereof, the liquidated damages provided by the Deposit represent a reasonable estimate of the damages which Seller would incur as a result of such default. This shall be Seller's sole and exclusive remedy in the event of default hereunder by Purchaser, and Seller hereby waives and releases any right to (and hereby covenants that it shall not) sue Purchaser: (a) for specific performance of this Agreement, or (b) any damages of any kind whatsoever.   Notwithstanding the foregoing, if Purchaser defaults under any of the surviving obligations under this Agreement after the Closing, Seller shall also be entitled to all

rights and remedies afforded to Seller under this Agreement (or any documents executed in connection herewith) at law or in equity, including without limitation, specific performance.

9.2.    **Default by Seller**.  In the event that Seller materially breaches or defaults under this Agreement prior to Closing and such material breach or default continues for fifteen (15) days after written notice from Purchaser to Seller specifying such material breach or default, Purchaser shall, as its sole and exclusive remedy, have the right either (a) to seek specific performance of this Agreement, or, in the alternative, (b) to terminate this Agreement and receive the return of the Deposit.  The parties agree that no damages of any kind whatsoever (including, without limitation, special or consequential damages), shall be awarded as a result of Seller's breach.

## ARTICLE 10 - ESCROW AGENT

10.1.    **Deposit in Escrow**.  The Deposit shall be held by the Escrow Agent, in trust and on the terms hereinafter set forth.

10.2.    **Deliveries by Escrow Agent**.  Escrow Agent shall not make any disbursements except at Closing, when the entire Deposit shall be paid to Seller, unless instructed by written instructions signed by either Seller or Purchaser directing Escrow Agent to disburse funds otherwise, which instructions certify that they have been served upon the other party and the date of such service. In such case, Escrow Agent shall disburse the funds as requested by such written instructions if no written objection to such disbursement is delivered to Escrow Agent within ten (10) business days after Escrow Agent receives such disbursement instructions.  Purchaser and Seller may deliver joint instructions to Escrow Agent or may deliver separate instructions directing identical actions by the Escrow Agent, in which case Escrow Agent shall immediately disburse the funds as set forth in the joint or identical requests.  In the event both parties have not signed the instructions or separate instructions are not identical, Escrow Agent shall not follow any disbursement instructions so given without a certification of notice and waiting period as set forth above.

10.3.    **Disputes**.  In the event of a dispute that results in litigation between Seller and Purchaser, the Escrow Agent shall deliver the monies held in the escrow to the Clerk of the Court in which such litigation is pending, or in the event of a dispute not then resulting in litigation, the Escrow Agent shall take such affirmative steps as the Escrow Agent may, at the Escrow Agent's option, elect in order to terminate the Escrow Agent's duties, including, but not limited to, depositing the monies held in the escrow in any court which the Escrow Agent shall select in New Jersey or New York, and an action for interpleader, the costs thereof to be borne by whichever of Seller or Purchaser is the losing party.

10.4.    **Release and Indemnity**.

(a)      It is agreed that the duties of the Escrow Agent are only as herein specifically provided and are purely ministerial in nature, and that the Escrow Agent shall incur no liability whatsoever except for willful misconduct or gross negligence, as long as the Escrow Agent has acted in good faith.  The Seller and Purchaser each release the Escrow Agent from any act done

17

or omitted to be done by the Escrow Agent in good faith in the performance of its duties hereunder.

(b)    Seller and Purchaser shall jointly and severally hold Escrow Agent harmless from and against any loss, damage, liability or expense incurred by Escrow Agent not caused by its willful misconduct or gross negligence, arising out of or in connection with its entering into this Agreement and the carrying out of its duties hereunder, including the reasonable costs and expenses of defending itself against any claim of liability or participating in any legal proceeding. Escrow Agent may consult with counsel of its choice, and shall have full and complete authorization and protection for any action taken or suffered by it hereunder in good faith and in accordance with the opinion of such counsel.

10.5.  **Escrow Agent Only; Resignation**.

(a)    The Escrow Agent is acting as escrow agent only with respect to the monies to be deposited in the escrow. Upon making delivery of such monies in the manner herein provided, the Escrow Agent shall have no further liability hereunder.

(b)    Escrow Agent may resign at will and be discharged from its duties or obligations hereunder by giving notice in writing of such resignation specifying a date when such resignation shall take effect; provided, however, that (i) prior to such resignation a substitute escrow agent is approved in writing by Seller and Purchaser, which approval shall not be unreasonably withheld or delayed, or (ii) Escrow Agent shall deposit the Deposit with a court of competent jurisdiction in New Jersey. After such resignation, Escrow Agent shall have no further duties or liability hereunder. Escrow Agent has no liability in the event of failure, insolvency, or inability of the depositary to pay said funds upon demand for withdrawal.

(c)    Seller and Purchaser acknowledge that the Escrow Agent is Seller's counsel and Seller and Purchaser acknowledge and agree that the Escrow Agent may continue to represent Seller in connection with this Agreement and the transaction contemplated hereby and in connection with any dispute or litigation arising out of or related to this Agreement or the transactions contemplated hereby.

10.6.  **Execution of Agreement**. The Escrow Agent has executed this Agreement solely in order to confirm that the Escrow Agent is holding and will hold the Deposit in escrow pursuant to the provisions hereof.

## ARTICLE 11 - CONTINGENCIES

11.1.  **Conditions Precedent to Obligation of Purchaser.**

The obligation of Purchaser to consummate the transaction hereunder shall be subject to the fulfillment on or before the Closing Date of all of the following conditions, any or all of which may be waived by Purchaser in its sole discretion (unless otherwise indicated):

    (a)    all of the representations and warranties of Seller contained in this Agreement shall have been true and correct in all material respects as of the Effective Date and shall be true and correct in all material respects as of the Closing Date;

    (b)    Seller shall have performed and observed, in all material respects, all covenants and agreements of this Agreement to be performed and observed by Seller as of the Closing Date;

    (c)    the Property shall be free and clear of any and all tenancies and occupants;

    (d)    (i) BASF Corporation shall have consented to the transfer of the Property to Purchaser, or (ii) the Bankruptcy Court shall have determined that the consent of BASF Corporation to the transfer of the Property to Purchaser is not required;

    (e)    Seller shall have delivered to Purchaser an agreement from BASF Corporation in form and substance reasonably approved by Purchaser whereby BASF Corporation acknowledges and agrees that the BASF Settlement is a valid and binding agreement between the parties thereto and enforceable in accordance with its terms, that the BASF Settlement has not terminated and is and will be in full force and effect as of the Closing Date, that all of Seller's material defaults under the BASF Settlement, if any, have been cured or waived by BASF as of the Closing Date, and that the BASF Settlement will not terminate pursuant to Section 7.1(iv) thereof due to the transfer and conveyance of the Property by Seller to Purchaser; and

    (f)    entry of a Sale Order by the Bankruptcy Court approving this Agreement, and the transactions contemplated thereby, which is not a waivable condition.

For the avoidance of doubt, the obligation of Purchaser to consummate the transaction hereunder is not subject to a contingency for Purchaser's due diligence. Subject to each and all of the other terms and provisions of this Agreement (including applicable notice and cure provisions), and without limiting any other right or remedy to which the Purchaser may be entitled elsewhere under this Agreement, in the event that any condition contained in this **Section 11.1** is not satisfied or waived on or prior to the Closing Date (as the same may be extended pursuant to the express provisions of this Agreement), then, unless Seller is in default of its obligations under this Agreement (in which event Purchaser shall have the rights and remedies provided in **Section 9.2** of this Agreement), Purchaser shall have the right to terminate this Agreement, whereupon, and notwithstanding any terms to the contrary in this Agreement, the Deposit shall be returned to Purchaser and neither party shall have any further liability or obligation to the other under this Agreement, except as otherwise specifically provided in this Agreement. The Closing of the transactions contemplated by this Agreement shall be deemed to waive, as conditions to Closing, any remaining unsatisfied conditions set forth herein.

11.2.  **Conditions Precedent to Obligation of Seller.**

The obligation of Seller to consummate the transaction hereunder shall be subject to the fulfillment on or before the Closing Date of all of the following conditions, any or all of which may be waived by Seller in its sole discretion:

(a)     All of the representations and warranties of Purchaser contained in this Agreement shall have been true and correct in all material respects as of the Effective Date and shall be true and correct as of the Closing Date;

(b)     Purchaser shall have performed and observed, in all material respects, all covenants and agreements of this Agreement to be performed and observed by Purchaser as of the Closing Date;

(c)     (i) BASF Corporation shall have consented to the transfer of the Property to Purchaser, or (ii) the Bankruptcy Court shall have determined that the consent of BASF Corporation to the transfer of the Property to Purchaser is not required; and

(d)     entry of a Sale Order by the Bankruptcy Court approving this Agreement, and the transactions contemplated thereby, which is not a waivable condition.

Subject to each and all of the other terms and provisions of this Agreement (including applicable notice and cure provisions), and without limiting any other right or remedy to which Seller may be entitled elsewhere under this Agreement, in the event that any condition contained in this **Section 11.3** is not satisfied or waived on or prior to the Closing Date (as the same may be extended pursuant to the express provisions of this Agreement), then, unless Purchaser is in default of its obligations under this Agreement (in which event Seller shall have the rights and remedies provided in **Section 9.1** of this Agreement), Seller shall have the right to terminate this Agreement, whereupon the Deposit shall be paid to Purchaser, and neither party shall have any further liability or obligation to the other under this Agreement, except as otherwise specifically provided in this Agreement.  The Closing of the transactions contemplated by this Agreement shall be deemed to waive, as conditions to Closing, any remaining unsatisfied conditions set forth herein.

## ARTICLE 12 – LIMITATION ON LIABILITY

12.1.  **Limitation on Liability**.

(a)     In no event shall any party hereto be liable to the other party for consequential, punitive or other special damages (but the foregoing shall not be construed to limit or affect Seller's right to receive the Deposit as liquidated damages in accordance with the terms hereof).

(b)     Notwithstanding any provision to the contrary contained in this Agreement or any documents executed by Seller pursuant hereto or in connection herewith the following shall apply:

(I)     Purchaser shall not assert any claim post-Closing against Seller whatsoever (including as otherwise allowed hereunder) or under any documents executed pursuant hereto in connection herewith unless the liability for such claim (together with all other claims of Purchaser hereunder or under any documents executed pursuant hereto or in connection herewith) exceeds $50,000.00 and then in such case only to the extent such claim exceeds $50,000.00;

(2)    the maximum aggregate liability of Seller, and the maximum aggregate amount which may be awarded to and collected by Purchaser, under this Agreement (including with respect to any indemnification and the breach of any representations and warranties contained herein) and any and all documents executed pursuant hereto or in connection herewith for which a claim is timely made by Purchaser shall not exceed $200,000.00;

(3)    Purchaser shall not be permitted to make any claim or institute any action against Seller unless Purchaser shall have commenced a legal proceeding against Seller in the Bankruptcy Court prior to the expiration of the period commencing on the date of Closing and ending on the expiration of the sixth (6th) month following Closing (the "*Survival Period*") alleging that (1) Seller has breached the terms hereof, (2) Purchaser has suffered actual damages as a result and (3) Purchaser is permitted to recover such damages under the express terms of this Agreement.

(c)    Notwithstanding anything in this Agreement to the contrary, Seller's liability in respect of any and all (i) Seller's breaches of representations and warranties herein or in any document executed by Seller pursuant hereto or in connection herewith, (ii) Seller's breaches of any covenants hereunder or in any document executed by Seller pursuant hereto or in connection herewith and (iii) claims against Seller under any provision or indemnity given hereunder or in any document executed by Seller pursuant hereto or in connection herewith shall, in each case, be limited as set forth in this Article 12.  Notwithstanding anything to the contrary in this Agreement or in any document executed by Seller pursuant hereto or in connection herewith, Purchaser shall not make any claim against Seller after the expiration of the Survival Period (for the purposes of the foregoing, Purchaser shall be required to commence a legal proceeding against Seller during the Survival Period in order to be deemed to have made a claim against Seller prior to the expiration of the Survival Period). Purchaser further acknowledges and agrees that, notwithstanding anything to the contrary in this Agreement, no claim for a breach of a representation or warranty shall be actionable, payable or give rise to any right, claim or defense on the part of Purchaser if the subject matter of, or facts underlying, such breach is/are based on a condition, state of facts or other matter with respect to which Purchaser has actual knowledge as of the date of this Agreement or the Closing Date and Closing has occurred.

(d)    None of the  Seller Entities (as defined herein) shall be liable, accountable, or subject to any suit, action, proceeding or claim of any of the costs, expenses, or liability arising directly or indirectly, out of the Seller's failure or refusal to satisfy its obligations hereunder or out of the transactions contemplated by this Agreement.  Purchaser agrees to look solely to the Seller's interest in the Property for the satisfaction of Purchaser's remedies for any breach of any of Seller's covenants or obligations as set forth in this Agreement, and no other asset of Seller or of any of the Seller Entities shall be subject to levy, execution or other procedure.

(e)    The provisions of this Article 12 shall survive the Closing.

### ARTICLE 13 – MISCELLANEOUS

13.1.  **Entire Agreement; Merger; Amendments**.  This Agreement, including all exhibits, schedules and documents attached hereto, contains the entire understanding of the parties hereto with respect to the subject matter hereof, and no prior or other writing or oral agreement or

undertaking pertaining to any such matter shall be effective for any purpose. All understandings and agreements heretofore had between the parties hereto are merged in this Agreement, which alone completely expresses their agreement, and this Agreement is entered into after full investigation, neither party relying upon any statement or representation made by the other not embodied in this Agreement. This Agreement may not be changed, modified, amended, nor any provision hereof waived, except in writing by the party to be charged thereby.

13.2. **Broker**. Purchaser and Seller represent and warrant to each other that neither has dealt with any broker in connection with this sale, except for Craig Sheinker of Quantum Realty Services, Inc. (the "*Broker*"). Subject to Seller and Broker entering into a binding commission agreement and approval of same by the Bankruptcy Court, Seller shall be responsible for any commissions due to Broker pursuant to a separate agreement between Seller and Broker. Seller and Purchaser each agree to hold the other harmless and to indemnify the other against any claims of or liabilities to any broker based on dealings or alleged dealings with the indemnifying party. The obligations of Purchaser and Seller under this **Section 13.2** shall survive whether or not the Closing hereunder takes place and notwithstanding any release of either party pursuant to any other provisions of this Agreement.

13.3. **Notices**. Any notice pursuant to this Agreement shall be given in writing by (a) personal delivery, (b) reputable overnight delivery service with proof of delivery, or (c) electronic mail by pdf, sent to the intended addressee at the address set forth below, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given upon receipt or refusal to accept delivery, or, in the case of electronic mail by pdf, as of the date of the transmission provided that an original of such electronic mail is also sent to the intended addressee by means described in clauses (a), or (b) above. Unless changed in accordance with the preceding sentence, the addresses for notices given pursuant to this Agreement shall be as follows:

    (a)    If to Seller, at the address in the preamble:

        Attn: Steven Rogers, Esq.
        Email: srogers@triharborholdings.com

        with a copy to:

        Riker Danzig Scherer Hyland & Perretti LLP
        Headquarters Plaza
        One Speedwell Avenue
        Morristown, New Jersey 07962-1981
        Attn: Dennis J. Krumholz, Esq.
        Email: dkrumholz@riker.com
        Nicholas Racioppi, Jr., Esq.
        Email: nracioppi@riker.com

(b)    If to Purchaser, at the address in the preamble:

Attn: Sobhi Turkieh
Email: samk@valueindustry.com

with a copy to:

MM Zalta, PLLC
999 Central Avenue, Suite 307
Woodmere, New York 11598
Attn: Mousa Zalta, Esq.
Email: zalta@mmzalta.com

The parties acknowledge and agree that the respective attorneys of the parties shall be authorized to receive and send notices on behalf of their clients.

13.4.    **Governing Law; Submission to Jurisdiction.**.

(a)    This Agreement shall be governed by and construed under the laws of the State of New Jersey, without regard to conflicts of law principles.  Any legal suit, action or proceeding arising out of or based upon this agreement, the other transaction documents or the transactions contemplated hereby or thereby shall be instituted in the Bankruptcy Court (or, if such court declines jurisdiction, the United States District Court for the District of New Jersey or the courts of the State of New Jersey), and each party irrevocably submits to the exclusive jurisdiction of such courts and any appellate court with jurisdiction over appeals taken therefrom in any such suit, action or proceeding. Service of process, summons, notice or other document by mail to such party's address set forth herein shall be effective service of process for any suit, action or other proceeding brought in any such court. The parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or any proceeding in such courts and irrevocably waive and agree not to plead or claim in any such court that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

13.5.    **Interpretation**.  The parties hereto agree that the terms, covenants and language of this Agreement were the result of negotiations between the parties and, as a result, there shall be no presumption that ambiguities in this Agreement, if any, shall be resolved against either party. The parties hereto further agree that any controversy over the construction of this Agreement shall be decided neutrally, and without regard to events of authorship or negotiation and shall be construed reasonably to carry out its intent.  If any provision hereof shall be declared invalid by a court or in any administrative proceedings, then the provisions of this Agreement shall be construed in such manner so as to preserve the validity hereof and the substance of the transaction herein contemplated to the extent possible.  The article, paragraph and/or section headings and the arrangement of this Agreement is for the convenience of the parties hereto and do not in any way affect, limit, amplify or modify the terms and provisions hereof.

13.6.    **Counterparts**.  This Agreement may be executed in several counterparts, which shall constitute one and the same instrument.  Facsimile or PDF signatures to this Agreement shall

have the same force and effect as "ink" signatures and no "ink" copy of any facsimile or PDF signature is required to bind the party signing by facsimile or PDF to this Agreement.

13.7.   **Successors and Assigns**.  This Agreement may not be assigned by Purchaser without the prior written consent of Seller.  Purchaser may, without the consent of the Seller and without penalty of any kind, assign this Agreement to an entity owned or controlled by, or under common control with, Purchaser, as the case may be, with the financial ability to fulfill all obligations of Purchaser hereunder provided that Purchaser shall be and remain jointly and severally liable with any such designee for payment of the Purchase Price.  Subject to the remainder of this **Section 13.7**, this Agreement shall be binding upon and inure to the benefit of Purchaser and Seller and their respective legal representatives, successors-in-interest and permitted assigns.  Any transfer, directly or indirectly, of any stock, partnership interest, membership interest or other ownership interest in Purchaser shall constitute an assignment of this Agreement.  The provisions of this **Section 13.7** shall survive the Closing or any termination of this Agreement.

13.8.   **Further Assurances**.  Seller and Purchaser each agree to execute any and all documents reasonably necessary to effectuate the purposes of this Agreement.

13.9.   **No Recording**.  Neither this Agreement nor any memorandum hereof may be recorded without the express written consent of both parties.  In the event that either party records this Agreement or any memorandum hereof without first obtaining such consent, such party shall be in material breach of this Agreement and the non-breaching party shall be entitled to pursue any and all of its remedies pursuant to this Agreement or as otherwise provided by law

13.10.   **Termination**.  Notwithstanding anything to the contrary herein, upon termination of this Agreement neither party shall have any further rights or obligations, except those rights and obligations arising under any sections of this Agreement which expressly survive termination of this Agreement.

13.11.  **Confidentiality**.  The parties hereto agree that all materials obtained or information learned by Purchaser in connection with the transaction contemplated hereby will be used solely for Purchaser and Purchaser's agents in evaluating the transaction and the Property and all such information and materials will be kept confidential and shall not be disclosed to any other persons or entities other than as may be required to properly record the deed or the mortgage, provided that Seller may provide this Agreement to the Bankruptcy Court for the purpose of obtaining approval for the transaction contemplated herein.  Furthermore, such information and materials shall not be used for any other purposes and any information and materials provided by Seller to Purchaser, including without limitation, any reports furnished to Purchaser, shall be promptly returned to Seller and any electronic versions promptly deleted if the Closing does not occur.  The provisions of this **Section 13.11** shall survive the Closing or termination of this Agreement.

13.12.  **No Waiver.**  The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as thereafter waiving any such

terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

13.13. **Waiver of Right to Jury Trial**. EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY, VOLUNTARILY, KNOWINGLY AND IRREVOCABLY WAIVES ANY CONSTITUTIONAL OR OTHER RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN THE EVENT OF LITIGATION CONCERNING ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING UNDER THIS AGREEMENT, THE PARTIES PERFORMANCE HEREUNDER OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO ANY INSTRUMENT, DOCUMENT OR AGREEMENT RELATED IN ANY WAY WHATSOEVER TO THE SUBJECT MATTER OF THIS AGREEMENT; AND IN EACH CASE, WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN TORT OR CONTRACT OR OTHERWISE.    ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR COPY OF THIS **SECTION 13.13** WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.  EACH PARTY REPRESENTS THAT IT HAS CONSULTED WITH COUNSEL SPECIFICALLY WITH REFERENCE TO THIS CLAUSE.

13.14. **Attorney's Fees**.  Notwithstanding anything contained in this Agreement to the contrary, in any action or proceeding between the parties to enforce or interpret any of the terms or provisions of this Agreement, the prevailing party in the action or proceeding shall be entitled to recover from the non-prevailing party, in addition to damages, injunctive relief or other relief, its reasonable costs and expenses, including, without limitation, costs and reasonable attorneys' fees, both at trial and on appeal.

13.15. **Section 1031 Exchange.**  Both Purchaser and Seller hereby acknowledge that each party to this Agreement may effect an I.R.C. Section 1031 tax deferred exchange with respect to this transaction.    Both Purchaser and Seller agree to cooperate with each other in a manner reasonably necessary to successfully complete any tax deferred exchange, but each party shall be responsible for its own costs only in connection with any such tax deferred exchange.

*[Signature page follow]*

25

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

WITNESS:                                  SELLER:

                                          **ARSYNCO, INC.,**
                                          a  New Jersey corporation,

                                          By: _____
Name: _Robert L. Robert_                  Name:  Steven S. Rogers
                                          Title:   President


WITNESS:                                  PURCHASER:

                                          **511 THIRTEENTH STREET LLC,**
                                          a  New Jersey limited liability company,


_____                  By: _____
Name:                                     Name:
                                          Title:


For the sole purpose of consenting to Article 10:


RIKER DANZIG SCHERER HYLAND & PERRETTI LLP


By: _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

WITNESS:

SELLER:

**ARSYNCO, INC.,**
a New Jersey corporation,

By: _____
Name: _____
Name:
Title:

WITNESS:

PURCHASER:

**511 THIRTEENTH STREET LLC,**
a New Jersey limited liability company,

By: _Sold. Turl_
Name: _____
Name:
Title:  _presidt_

For the sole purpose of consenting to Article 10:

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP

By: _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

WITNESS:                          SELLER:

                                  **ARSYNCO, INC.,**
                                  a New Jersey corporation,

_____       By: _____
Name:                             Name:
                                  Title:


WITNESS:                          PURCHASER:

                                  **511 THIRTEENTH STREET LLC,**
                                  a New Jersey limited liability company,

_____       By: _____
Name:                             Name:
                                  Title:


For the sole purpose of consenting to Article 10:

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP

By: _Dennis J. Krulwig_____
Name: Dennis J. Krunatuck
Title: Partner

26

## EXHIBIT A

### LEGAL DESCRIPTION

Block 91, Lot 1 on the Official Tax Map of the Borough of Carlstadt, County of Bergen, State of New Jersey

## EXHIBIT B

## PERMITTED ENCUMBRANCES

1.      Real estate taxes and installments of assessments not yet due and payable, subject, however, to prorations and adjustments in accordance with the Agreement.

2.      Any Deed Notice and/or institutional control established by Seller pursuant to the Arsynco ISRA Case or the PCB Remediation Approval.

3.      Under and subject to any subsurface conditions not shown of record.

4.      Any and all covenants, conditions, limitations, restrictions, rights, rights of way, encumbrances, encroachments, reservations, easements, agreements and other matters of fact or record or as shown on any survey obtained by Purchaser.

## EXHIBIT C

### FORM OF DEED

Prepared By: _____

### DEED

This Deed is made on this _____ day of _____, 2014

**BETWEEN**

[_____], a [_____], whose address is [_____], referred to as Grantor,

**AND**

[_____], whose address is [_____], referred to as Grantee.

**TRANSFER OF OWNERSHIP.** The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of [_____] Dollars ($[_____].00). The Grantor acknowledges receipt of this money.

**TAX MAP REFERENCE.** (N.J.S.A. 46:15-2.1) Block Number [_____], Lot [_____].

**PROPERTY.** The property conveyed consists of any and all of Grantor's interest in and to the land, buildings and structures located in the [_____] of [_____], County of [_____] and State of New Jersey. The legal description of the property is described in Schedule A attached hereto and made a part hereof.

Subject to restrictions, easements, covenants, agreements of record or municipal zoning ordinances, if any, and such state of facts as an accurate survey might disclose.

BEING the same premises conveyed to Grantor by Deed from [_____], dated [_____] and recorded on [_____], in the [_____] County Clerk's Office in Deed Book [_____], Page [_____].

**PROMISES BY GRANTOR.** The Grantor promises that the Grantor has done no act to encumber the Property, other than as set forth herein. This promise is called a "covenant as to Grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against Grantor).

*[Signature page follows]*

29

**IN WITNESS WHEREOF**, Grantor has signed this Deed the day and year first above written.

WITNESS:                              GRANTOR:

                                      [_____],
                                      a [_____]


_____              By: _____
Name:                                 Name:
                                      Title:


### ACKNOWLEDGMENT

**STATE OF [_____], COUNTY OF_____ SS.:**

    I certify that on _____, 201_, _____, personally came before me and this person acknowledged under oath, to my satisfaction, that:

    (a) this person signed, sealed and delivered the attached document as [_____] of [_____], a [_____], which is the limited liability company named in this document;

    (b) this Deed was signed and delivered by the limited liability company as its voluntary act and deed by virtue of authority from its members.

    (c) made this deed for $_____ as the full and actual consideration paid or to be paid for the transfer of title.


_____


***RECORD & RETURN TO:***

[_____]


30

## EXHIBIT D

## FORM OF SELLER'S AFFIDAVIT OF TITLE

### Affidavit of Title

STATE OF _____ )
                          ) SS.:
COUNTY OF _____ )

[_____] says under oath:

1. **Member.** I am the [_____] of [_____], a [_____], (hereinafter the "Company", "it" or "its"). I am fully familiar with the business of the Company. I am a citizen of the United States and at least 18 years old.

2. **Representations.** The statements contained in this affidavit are true to the best of my knowledge, information and belief.

3. **The Company.** This action, and the making of this affidavit of title, have been duly authorized by a proper resolution of the Company. The Company is legally authorized to transact business in New Jersey. Its charter, franchise and corporate powers have never been suspended or revoked. It is not restrained from doing business nor has any legal action been taken for that purpose.

4. **Authority.** The sale of "this property" (as defined below) and the making of this affidavit have been duly authorized by a proper resolution of the Company.

**Approval by Shareholders. (check one only)**

> [X]    Shareholder approval is not required.
>
> [  ]    This is a sale of all or substantially all of the assets of the corporation. The sale is not made in the regular course of the business of the corporation. A copy of the authorization and approval of the shareholders is attached

5. **Ownership and Possession**. The Company is the only owner of the property designated as Tax Lot [__] in Block [____], in the [_____] of [_____], County of [_____], State of New Jersey, hereinafter called "this property". It is in sole possession of this property. This property is to be transferred by the Company to [_____] ("Grantee"). There are no tenants or other occupants of this property. The Company has owned this property since [_____]. Since then no one has questioned its ownership or right to possession.

6. **Improvements.** The Company is not aware that anyone has filed or intends to file a mechanic's lien or building contract relating to this property, or if so, it has bonded over same to the reasonable satisfaction of Grantee. All charges for municipal improvements such as sewers, sidewalks, curbs

or similar improvements benefiting this property have been paid by Company, but only to the extent the Agreement of Sale requires Company to pay for same.

7. **Liens or Encumbrances.** The Company has not allowed any interests (legal rights) to be created which affect the ownership or use of this property. No other persons have legal rights in this property. There are no pending lawsuits or judgments against the Company or other legal obligations which may be enforced against this property except for that certain bankruptcy (Case No. 19-13454) (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). The Bankruptcy Court has approved the sale of this property by the Company to the Grantee by Sale Order dated [_____], a copy of which is annexed hereto as Exhibit A. Except for the Bankruptcy Case, no bankruptcy or insolvency proceedings have been started by or against it, nor has it ever been declared bankrupt. The Company does not owe any disability, unemployment, corporate franchise, social security or alcoholic beverage taxes.

8. **Exceptions and Additions.** The following is a complete list of exceptions and additions to the above statements:

> (a)    Subject to all easements, restrictions, covenants and agreements and other matters of record, and such state of facts as an accurate survey would reveal, including, without limitation, the Permitted Encumbrances as set forth in the Agreement of Sale between Company and Grantee.

> (b)    Subject to the exceptions set forth in the title commitment no. [_____], dated [_____], as amended, issued by [_____], agent for [_____].

9. **Reliance.** The Company makes this affidavit in order to induce the title insurer to insure title. It is aware that the title insurer is relying on the truthfulness of the statements made in this affidavit.

[_____]

By: _____
Name:
Title:

Signed and sworn to before me this ____ day of _____, 201__.

_____
Notary Public

32

## EXHIBIT E

### SELLER'S FIRPTA AFFIDAVIT

### FIRPTA AFFIDAVIT

Dated:  As of [_____], 201_.

        Section 1445 of the Internal Revenue Code provides that a transferee of a United States real property interest must withhold tax if the transferor is a foreign person.  To inform the transferee that withholding of tax is not required upon the disposition of a United States real property interest by [_____], a [_____], the undersigned hereby certifies the following on behalf of [_____]:

        (a)    [_____] is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations); and

        (b)    [_____]'s U.S. employer tax identification number is [_____]; and

        (c)    [_____]'s address is [_____], Attention: [_____].

        [_____] understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

The undersigned authorized signatory of [_____] declares that he has examined this certification and to the best of his knowledge and belief it is true, correct and complete, and he further declares that he has authority to sign this document on behalf of [_____].

*[Signature page follows]*

33

[_____],

a [_____]

By:_____

Name:

Title:


*[Signatures end]*

## EXHIBIT F

### ENVIRONMENTAL DOCUMENTS

See attached.

DOCUMENTS FOR ARSYNCO ENVIRONMENTAL REMEDIATION PROGRAM

EXHIBIT F TO PURCHASE AND SALE AGREEMENT BETWEEN ARSYNCO, INC. AND 511 THIRTEENTH STREET LLC DATED JULY 31, 2019

| Date | Document Description | Agency or Subject |
|---|---|---|
| 10/15/1998 | Application for Risk Based Disposal Approval (to EPA) | EPA |
| 10/12/1999 | Addendum to Risk Based Disposal Approval Application | EPA |
| 10/20/2000 | Human Health Risk Assessment for PCBs | EPA |
| 4/12/2004 | General Prelim Cap Specs to EPA | EPA |
| 10/4/2004 | Cap Specification Summary to EPA | EPA |
| 2/25/2005 | Letter to EPA re: Former Pond TSCA Disposal Area | EPA |
| 2/12/2009 | TSCA Risk Based Disposal Approval from EPA | EPA |
| 8/13/2009 | Letter from Arsynco to EPA assuring site access to EPA per Part 8 of TSCA Approval | EPA |
| 6/10/2015 | Letter to EPA re: Proposed Location of Consolidated Material TSCA Disposal Area | EPA |
| 8/5/2015 | Engineering & Monitoring Plan (Plan cover page dated July 2015) | EPA |
| 9/17/2015 | Email to EPA providing additional information on TSCA Cap | EPA |
| 9/30/2015 | E&M Plan Approval letter from EPA. | EPA |
| 9/30/2015 | Email from EPA approving location of TSCA Cap area | EPA |
| 1/12/2016 | Request for Minor Modification to Risk Based Disposal Approval (TSDF) | EPA |
| 3/16/2016 | Letter from EPA approving Jan. 2016 Minor Modification request for TSDF | EPA |
| 6/22/2016 | Request for Minor Modification to Risk Based Disposal Approval (Asphalt cap to flexible cap) | EPA |
| 7/22/2016 | Letter from EPA approving June 2016 Minor Modification request (asphalt cap to flexible cap) | EPA |
| 6/14/2018 | Email from JMC to EPA re: Update on Remediation of Site | EPA |
| 12/20/2018 | Letter to EPA requesting minor modification to TSCA Approval to allow PCB signs only on fencing surrounding TSCA Disposal Areas | EPA |
| 2/1/2019 | Letter from EPA approving minor modification request submitted 12/20/2018 (PCB signage) | EPA |
| 7/6/2014 | Figure C2 - Ditch Regrading Plan and Profile (last revised Aug. 27, 2018) | Misc. |
| 7/6/2014 | Figure C1 - Grading and Storm Drainage Plan (last revised Aug. 27, 2018) | Misc. |
| 12/31/2003 | RIR Addendum & Proposed RAW (No Appendices) | NJDEP |
| 5/25/2006 | Response Letter from NJDEP re: Dec. 2003 RIR/RAW | NJDEP |
| 6/8/2006 | Letter from NJDEP clarifying statements in NJDEP's May 2006 letter | NJDEP |
| 2/23/2012 | Initial Receptor Evaluation Submission to NJDEP | NJDEP |
| 2/7/2013 | RIR Addendum (GW) & RAW for Deep GW | NJDEP |
| 8/22/2013 | Response Letter from NJDEP re: Feb 2013 RIRA/RAW | NJDEP |
| 8/22/2013 | Email from JMC to NJDEP re: 1999 SCC vs. 2008 SRS | NJDEP |
| 9/3/2013 | Response Letter from NJDEP re: Aug. 2013 Email from JMC | NJDEP |
| 12/2/2014 | RIR Addendum (GW) & Proposed RRM for Deep GW (Report Cover Page Dated Nov 2014) | NJDEP |
| 5/29/2015 | Response Letter from NJDEP re: Nov. 2014 RIRA/RRM for Deep GW | NJDEP |
| 11/17/2015 | O&M Plan for AS/SVE Treatment System (Sections 1 &2) (No Appendices) | NJDEP |
| 2/26/2016 | Response Letter from NJDEP re: Nov. 2015 O&M Plan for AS/SVE | NJDEP |
| 3/18/2016 | RAW Addendum (for change in general Tract 1 cap materials) | NJDEP |
| 4/12/2016 | Response Letter from NJDEP re: Mar. 2016 RAW Addendum approval | NJDEP |
| 5/5/2016 | RIR Addendum | NJDEP |
| 9/13/2016 | Email string between NJDEP and LSRP (9/2/16 to 9/13/16) re: proposal and approval for placing post-AS/SVE system soils into TSCA cap area | NJDEP |
| 5/4/2017 | Letter from NJDEP with comments to May 2016 RIR Addendum (RIRA) | NJDEP |
| 10/31/2017 | Permit-by-Rule Application to NJDEP for Enhanced Bioremediation Injection for shallow GW | NJDEP |
| 11/27/2017 | Permit-by-Rule Authorization letter from NJDEP | NJDEP |
| 3/21/2018 | Letter report to NJDEP re: On-Site Use of Site Soils Treated Via the AS/SVE System | NJDEP |
| 3/26/2018 | Email from LSRP to NJDEP in response to questions from NJDEP re: on-site reuse of site soils treated via AS/SVE system | NJDEP |
| 3/28/2018 | NJDEP Email to JMC re: approval of 75%/10x review for on-site use of site soils treated via AS/SVE system | NJDEP |
| 3/28/2018 | Letter from NJDEP approving GWSRS and on-site use of soils treated via AS/SVE system | NJDEP |

| Date | Description | Category |
|---|---|---|
| 4/5/2018 | Email from NJDEP attaching approval letter for March 2018 proposal for on-G site use of soils treated via AS/SVE system | NJDEP |
| 12/13/2018 | Email from NJDEP approving locations of IVW clusters for TSCA Disposal Areas & addressing possibility of expedited RAP for deep GW P&T | NJDEP |
| 11/19/2014 | Letter from NJDEP in Response to Multiple Permit App for Wetlands work | NJDEP - Permits |
| 12/3/2014 | Letter from NJDEP Confirming Withdrawal of Certain Permits for Wetlands work | NJDEP - Permits |
| 6/2/2015 | NJDEP Waterfront Development Permit IP In-water & HMC Water Quality Certificate | NJDEP - Permits |
| 6/11/2015 | NJDEP Flood Hazard Area IP Permit | NJDEP - Permits |
| 6/25/2015 | NJPDES Permit for Discharge to Surface Water (BGR General Remediation Cleanup) | NJDEP - Permits |
| 9/8/2015 | NJDEP Stormwater Discharge General Permit Authorization (5G3 - Construction Activity Stormwater GP) | NJDEP - Permits |
| 9/9/2015 | NJDEP Tidelands License | NJDEP - Permits |
| 9/18/2015 | NJDEP Treatment Work Approval | NJDEP - Permits |
| 11/19/2015 | NJDEP Letter Extending NJPDES Permit Authorization to 3/31/2017 | NJDEP - Permits |
| 2/24/2016 | NJDEP Letter Waiving Fisheries Time of Year Restriction for WFD Permit | NJDEP - Permits |
| 1/25/2017 | NJDEP Letter Extending NJPDES Permit Authorization to 3/31/2018 | NJDEP - Permits |
| 3/2/2017 | NJDEP Letter Waiving Fisheries Time of Year Restriction for WFD Permit | NJDEP - Permits |
| 2/7/2018 | NJDEP Letter Extending NJPDES Permit Authorization to 3/31/2019 | NJDEP - Permits |
| 2/13/2019 | Email from NJDEP Confirming termination of Tidelands License | NJDEP - Permits |
| 4/22/2015 | USACOE NWPR38 | USA COE - Permits |
| 7/15/2015 | GW Flow Map - "DD" GW Zone | GW (Deep) |
| 7/22/2015 | GW Flow Map - "D" GW Zone | GW (Deep) |
| 12/1/2018 | MW Location Map - "D" and "DD" wells | GW (Deep) |
| 1/1/2019 | Deep GW Sample Results Summary Tables (Thru Jan. 2019 Sampling event) DRAFT | GW (Deep) |
| 1/1/2019 | MW Sample Results Summary Tables (Thru Jan. 2019 Sampling event) DRAFT | GW (Deep) |
| 12/1/2018 | Graphs of TCE & cis-DCE in ungradient site wells MW-15 and MW-16 (Thru Dec. 2018) | GW (Deep) |
| 12/17/2018 | Graphs of TCE & cis-DCE in ungradient site wells MW-15 and MW-16 (Thru Dec. 2018) | GW (Deep) |
| 8/1/2013 | Shallow GW TWP Sample Data Summary Table - Pre AS/SVE Treatment Samples | GW (Shallow) |
| 4/1/2017 | Shallow GW Sample Data Summary Tables (for tracking in-situ AS/SVE progress 2014-2017) | GW (Shallow) |
| 7/27/2015 | GW Flow Map - Shallow GW Zone | GW (Shallow) |
| 12/12018 | Shallow GW Sample Results Summary Tables - NA indicator parameter sampling to track in-situ enhanced bio injection program | GW (Shallow) |
| 12/1/2018 | MW Location Map (Shallow wells) | GW (Shallow) |
| 6/1/2017 | Shallow GW TWP Sample Data Summary Tables - Pre in-situ enhanced bio Injection | GW (Shallow) |
| 6/1/2018 | Shallow GW Sample Results Summary Tables - NA indicator parameter sampling to track in-situ enhanced bio-injection program | GW (Shallow) |
| 1/1/2018 | Sample Location Map for PRB GW samples for enhanced bio injection | GW (Shallow) |
| 9/1/2018 | Shallow GW Sample Results Summary Tables - NA Indicator parameter sampling to track in-situ enhanced bio injection program | GW (Shallow) |
| 12/1/2018 | Shallow GW Sample Results Summary Tables - PBR Sampling for in-situ enhanced bio program tracking | GW (Shallow) |
| 1/1/2019 | Shallow GW Sample Results Summary Tables (Shallow GW Sampling Thru Jan. 2019 event) - DRAFT | GW (Shallow) |
| 1/1/2019 | Soil - AREA VIII Post-Ex Sample Results Summary Tables | Soil Data for RAR |
| 1/1/2019 | Soil - AREA VIII Drum Area Post-Ex Sample Results Summary Tables | Soil Data for RAR |
| 1/1/2019 | Soil - AREA VIII Benzene Compliance Option Evaluation (75% - 10x) | Soil Data for RAR |
| 5/20/2014 | Soil - Area III Bldg. 1 Area Hotspot Post-Excavation Sample Results Summary | Soil Data for RAR |
| 2/19/2018 | Soil - Area VIII Smoking Soil Area Post- Excavation Sample Results Summary Tables | Soil Data for RAR |
| 8/7/2017 | Soil - PCB Post-Excavation BASE Samples (Tract 1 Excavation Areas) | Soil Data for RAR |
| 10/18/2017 | Soil - PCB Post-Excavation BASE Samples (Tract 2 Excavation Areas) | Soil Data for RAR |
| 10/18/2017 | Soil - Tract 2 Post-Excavation sample Results Summary Tables (VOCs and Metals) | Soil Data for RAR |
| 6/4/2018 | Soil - VOC Hotspot Re-sample Data in VOC Plume where AS/SVE was implemented | Soil Data for RAR |
| 8/14/2018 | Soil - VOC Post-Remediation Confirmatory Soil Samples from AS/SVE Treated Areas | Soil Data for RAR |
| 1/1/2019 | Soil - All VOC Soil Post-Ex Sample Results Summary Tables | Soil Data for RAR |
| 1/1/2019 | Soil - Review of Compliance Options for VOC Post-Ex Sample Data (for MDL Exceedances only) | Soil Data for RAR |
| 1/16/2019 | Soil - Post-Ex Soil Sample Location Maps (Non-PCB Samples) | Soil Data for RAR |

## EXHIBIT G

### RCRA GENERATOR ID NUMBER

NJD044688935

## EXHIBIT H

### ISRA REMEDIATION CERTIFICATION FORM

See attached.



**New Jersey Department of Environmental Protection**
Site Remediation and Waste Management Program

## ISRA REMEDIATION CERTIFICATION

Date Stamp
(For Department use only)

**SECTION A.  SITE LOCATION**

Site Name (Operator subject to ISRA):

Street Address:

Municipality: _____    (*Township, Borough or City*)

County: _____    Zip Code:

Program Interest (PI) Number(s): _____    Case Tracking Number(s):

Municipal Block(s) and Lot(s):

| Block #: | Lot #: | Block #: | Lot #: |
|---|---|---|---|
| Block #: | Lot #: | Block #: | Lot #: |
| Block #: | Lot #: | Block #: | Lot #: |
| Block #: | Lot #: | Block #: | Lot #: |

**SECTION B.  SITE OPERATIONS AND OWNERSHIP**

**CURRENT OPERATOR(s)** (Subject to ISRA) – Attach additional sheets if multi-tenant facility

Corporate Name: _____    Telephone #:

Street Address:

City or Town: _____    State: _____    Zip Code:

Municipality: _____    County:

Tax Block and Lot Number(s):

State of Incorporation or Partnership information:

North American Industry Classification System (NAICS) Number:

**CURRENT PROPERTY OWNER**

Corporate or Individual Name: _____    Telephone #:

Street Address:

Municipality: _____    State: _____    Zip Code:

State of Incorporation or Part, if applicable:

Property Owner(s) type of Business Association and General Partner(s), as applicable:

Date(s) of ownership of the Site:

List all Site Property Owners and Operators since December 31, 1983 (Attach additional sheets if necessary.)

**Name (Identify EACH ENTITY as either Operator or Owner)**    **Dates of Ownership/Operation**

Have there been **ANY** previous filings and/or Oversight Documents executed for this Site? (Attach additional sheets if more than one industrial establishment is included in this application.)

Has this Industrial Establishment received a No Further Action Letter or a Final Remediation Document ? ....... ☐ Yes    ☐ No
If "Yes," please provide a copy.

## SECTION C.  ISRA TRIGGER AND PURCHASER INFORMATION

Describe **IN DETAIL** a) ISRA subject transaction for which this is requested,  b) **status of the operations** (continuing or ceasing) after the transaction and  c) identity of the property owner and operator upon completion of the transaction. (Attach additional sheets, if necessary.)

**Name of Purchaser or New Lessee**

Corporate or Individual Name: _____     Telephone #: _____

Contact Person: _____

Street Address: _____

Municipality: _____     State: _____     Zip Code: _____

State of incorporation, if applicable: _____

Type of Business Association and General Partner(s), if applicable: _____

## SECTION D.  COST ESTIMATE, REMEDIATION FUNDING SOURCE AND ONE PERCENT (1%) SURCHARGE

**See Instructions**: Submit the Remediation Cost Review and RFS/FA form  providing either: a detailed estimate of the cost of the remediation **prepared and certified** by a licensed site remediation professional if Preliminary Assessment/Site Investigation has been completed; or

If a Preliminary Assessment/Site Investigation has NOT been completed for the site, the surrogate remediation funding source in the amount of $100,000.00 or $250,000.00.  A cost estimate will be required within 30 calendar days of the completion of the PA/SI.

*Attach the original remediation funding source and one percent (1%) surcharge (if applicable) prepared and submitted in accordance with N.J.A.C. 7:26C-5 et seq.*

## SECTION E.  AUTHORIZATIONS/CERTIFICATIONS

**Owner *or* Operator Statutory Liability:**

I hereby certify that I am fully aware of the requirements of the Industrial Site Recovery Act (ISRA), N.J.S.A. 13:1K-6 et seq., as it pertains to the remediation of the industrial establishment subject to this remediation certification. Specifically, I am fully aware of the responsibilities of the owner or operator of the industrial establishment to remediate the site in accordance with N.J.S.A. 13:1K-6 et seq. and N.J.S.A. 58:10C et seq. and all associated implementing regulations.

I hereby certify that I acknowledge that the transaction and industrial establishment that are the subject of this remediation certification is a transfer of ownership or operations of an industrial establishment as defined by ISRA and N.J.A.C. 7:26B and I acknowledge that this remediation certification has been requested to allow the transaction referenced herein to proceed prior to completion of all ISRA compliance requirements. I further acknowledge that *(List owner or operator name certifying)* _____ is subject to penalties for violations of ISRA and N.J.A.C. 7:26B. I am fully aware of *(List owner or operator name certifying)* _____ responsibilities to allow the Department access to the subject industrial establishment and of the requirements to prepare and submit any documents relevant to the remediation of the subject industrial establishment as required by the Department.

I further acknowledge that the execution of a remediation certification shall not release *(List owner or operator name certifying)* _____ from any responsibilities *(List owner or operator name certifying)* _____ have pursuant to ISRA and this chapter.

Typed/Printed Name: _____    Date: _____

Title: _____

Signature: _____


I certify under penalty of law that I have personally examined and am familiar with the information submitted in this application and all attached documents, and that based on my inquiry of those individuals immediately responsible for obtaining the information, to the best of my knowledge the submitted information is true, accurate and complete.  I am aware that there are significant civil penalties for knowingly submitting false, inaccurate or incomplete information and that I am committing a crime of the fourth degree if I make a written false statement which I do not believe to be true.  I am also aware that if I knowingly direct or authorize the violation of N.J.S.A. 13:1K-6 et seq., I am personally liable for the penalties set forth at N.J.S.A. 13:1K-13.

Typed/Printed Name: _____    Date: _____

Title: _____

Signature: _____

## SECTION F. TRANSFEREE OR NEW LESSEE CERTIFICATION

I hereby certify that *[Person or Corporate Name]* _____ is the transferee and/or new lessee of the industrial establishment subject to this remediation certification. I have read this application and am aware of the requirements and conditions of ISRA and the remediation certification.

*[Person or Corporate Name]* _____ expressly agrees to allow the Department, seller, previous owner, previous operator, any other person subject to the remediation certification, and any of their respective agents or assignees the right to enter the industrial establishment after the ISRA-subject transaction has taken place and/or the lease has been executed for completion of the remediation of the industrial establishment. Additionally, I acknowledge and understand that if a remedial action is warranted at the subject industrial establishment, institutional controls and engineering controls as defined in ISRA, N.J.S.A. 58:10B-1 et seq., N.J.A.C. 7:26C, N.J.A.C. 7:26E and N.J.A.C. 7:26B may be necessary at the industrial establishment.

Typed/Printed Name: _____      Date: _____

Title: _____

Signature: _____

## SECTION G. PARTY(IES) AGREEING TO CONDUCT REMEDIATION

Corporate or Individual Name: _____      Telephone #: _____

Contact Person: _____

Street Address: _____

Municipality: _____      State: _____      Zip Code: _____

State of Incorporation or Partnership Information, as applicable: _____

I hereby certify that I am fully aware of the requirements of the Industrial Site Recovery Act (ISRA), N.J.S.A. 13:1K-6 et seq., as it pertains to the remediation of the industrial establishment subject to this remediation certification. Specifically, I am fully aware of the responsibilities to remediate the site in accordance with N.J.S.A. 13:1K-6 et seq. and N.J.S.A. 58:10C et seq. and all associated implementing regulations.

I hereby certify that I acknowledge that the transaction and industrial establishment that are the subject of this remediation certification is a transfer of ownership or operations of an industrial establishment as defined by ISRA and N.J.A.C. 7:26B and I acknowledge that this remediation certification has been requested to allow the transaction referenced herein to proceed prior to completion of all ISRA compliance requirements. I further acknowledge that *(List party agreeing to conduct remediation certifying)* _____ is subject to penalties for violations of ISRA and N.J.A.C. 7:26B in agreeing to conduct the remediation. I am fully aware of *(List party agreeing to conduct remediation)* _____ responsibilities to allow the Department access to the subject industrial establishment and of the requirements to prepare and submit any documents relevant to the remediation of the subject industrial establishment as required by the Department.

I further acknowledge that the execution of a remediation certification shall not release *(List owner or operator name certifying)* _____ from any responsibilities *(List owner or operator name certifying)* _____ have pursuant to ISRA and this chapter.

Typed/Printed Name: _____      Date: _____

Title: _____

Signature: _____

Completed forms should be sent to:

> Bureau of Case Assignment & Initial Notice
> Site Remediation Program
> NJ Department of Environmental Protection
> 401-05H
> PO Box 420
> Trenton, NJ 08625-0420

## SECTION H.  LICENSED SITE REMEDIATION PROFESSIONAL INFORMATION AND STATEMENT
### (IF COST ESTIMATE BEING PROVIDED)

LSRP ID Number: _____

First Name: _____    Last Name: _____

Phone Numbers: _____    Ext.: _____    Fax: _____

Mailing Address: _____

Municipality: _____    State: _____    Zip Code: _____

Email Address: _____

This statement shall be signed by the LSRP who is submitting this notification in accordance with N.J.S.A. 58:10C-14, and N.J.S.A. 58:10B-1.3b(1) and (2).

*(1) I certify, as a Licensed Site Remediation Professional authorized pursuant to N.J.S.A. 58:10C-1 et seq. to conduct business in New Jersey, that for the remediation described in this submission, and all attachments included in this submission, I personally: Managed, supervised, or performed the remediation conducted at this site that is described in this submission, and all attachments included in this submission; and/or periodically reviewed and evaluated the work performed by other persons that forms the basis for the information in this submission; and/or completed the work of another site remediation professional, licensed or not, after having: (1) reviewed all available documentation on which I relied; (2) conducted a site visit and observed the then-current conditions and verified the status of as much of the work as was reasonably observable; and (3)concluded, in the exercise of my independent professional judgment, that there was sufficient information upon which to complete any additional phase of remediation and prepare workplans and reports related thereto.*

*(2) I certify:*
- *That I have read this submission and all attachments to this submission;*
- *That in performing the professional services as the licensed site remediation professional for the entire site or each area of concern, I adhered to the professional conduct standards and requirements governing licensed site remediation professionals provided in N.J.S.A. 58:10C-16;*
- *That the remediation conducted at the entire site or each area of concern, that is described in this submission and all attachments to this submission, was conducted pursuant to and in compliance with the remediation requirements in N.J.S.A. 58:10C-14.c;*
- *That the remediation described in this submission, and all attachments to this submission, was conducted pursuant to and in compliance with the regulations of the Site Remediation Professional Licensing Board at N.J.A.C. 7:26I; and*
- *That the information contained in this submission and all attachments to this submission is true, accurate, and complete.*

*(3) I certify, when this submission includes a response action outcome, that the entire site or each area of concern has been remediated in compliance with all applicable statutes, rules, and regulations and is protective of public health and safety and the environment.*

*(4) I certify that no other person is authorized or able to use any password, encryption method, or electronic signature that the Board or the Department have provided to me.*

*(5) I certify that I understand and acknowledge that:*
- *If I knowingly make a false statement, representation, or certification in any document or information I submit to the Department I may be subject to civil and administrative enforcement pursuant to N.J.S.A. 58:10C-17.a.1(a)through (f) by the Board, including but not limited to license suspension, revocation, or denial of renewal; and*
- *If I purposely, knowingly, or recklessly make a false statement, representation, or certification in any application, form, record, document or other information submitted to the Department or required to be maintained pursuant to the Site Remediation Reform Act, I shall be guilty, upon conviction, of a crime of the third degree and shall, notwithstanding the provisions of subsection b. of N.J.S.2C:43-3, be subject to a fine of not less than $5,000 nor more than $75,000 per day of violation, or by imprisonment, or both.*

*(6) I certify that I have read this certification prior to signing, certifying, and making this submission.*

LSRP Signature: _____    Date: _____

LSRP Name: _____

Company Name: _____

## EXHIBIT I

## REMEDIATION COST REVIEW AND RFS/FA FORM

See attached.

**New Jersey Department of Environmental Protection**
Site Remediation and Waste Management Program

## REMEDIATION COST REVIEW AND RFS/FA FORM

☐ RFS  ☐ FA

Date Stamp
(For Department use only)

## SECTION A.  SITE NAME AND LOCATION

Site Name:

List All AKAs:

Street Address:

Municipality: _____ (Township Borough or City)

County: _____ Zip Code:

Program Interest (PI) or RFS Number(s):

Case Tracking Number(s):

## SECTION B.  PERSON RESPONSIBLE FOR CONDUCTING THE REMEDIATION

Full Legal Name Person Responsible for Conducting Remediation:

Representative First Name: _____ Representative Last Name:

Title:

Mailing Address:

Municipality: _____ State: _____ Zip Code:

Phone Number: _____ Ext: _____ Fax:

Email Address:

☐ I am also the person responsible for establishing and maintaining a Remediation Funding Source (RFS).

**Billing Contact**

☐ Same as Person Responsible for Conducting Remediation / Representative listed above.

Name of Organization:

Name of Billing Contact: _____ Title:

Mailing Address:

Municipality: _____ State: _____ Zip Code:

Phone Number: _____ Ext: _____ Fax:

Email Address:

## EXEMPTION CLAIM FOR RFS ONLY (not FA)

If claiming an exemption from the requirement to post Remediation Funding Source pursuant to N.J.A.C. 7:26C-5.2(b), please check the appropriate box below and do not complete sections C through H:

☐ Environmental Opportunity Zone
☐ Innovative remedial action technology
☐ Unrestricted or limited restricted use remedial action
☐ Government entity
☐ Remediation at primary or secondary residence
☐ Owner or operator of a licensed child care center
☐ Public, private or charter school

**NOTE:** All exemptions require additional supporting documentation to be attached.  Please refer to the form instructions.  If the exemption is only for a portion of the site, you must complete section C through H for the portion of the site that does not meet the exemption criteria.  **See instructions**.

## SECTION C.  PURPOSE OF SUBMISSION

Check all that apply

☐ Initial Remediation Funding Source pursuant to N.J.A.C. 7:26C-5.2(a) *(attach original RFS instrument and 1% surcharge payment, as applicable)*

☐ Initial Financial Assurance for a Remedial Action Permit pursuant to N.J.A.C. 7:26C-7 *(attach original FA instrument)*

☐ Initial Direct Oversight Remediation Trust Fund Agreement pursuant to N.J.A.C. 7:26C-14.2(b)5 *(attach original RTF instrument and 1% surcharge payment)*

☐ Initial Direct Oversight Remediation Cost Review pursuant to N.J.A.C. 7:26C-14.2(b)4

☐ Annual Remediation Cost Review pursuant to N.J.A.C. 7:26C-5.10 *(attach RFS instrument verification and valuation)*

☐ Biennial Cost Review pursuant to N.J.A.C. 7:26C-7.10 *(Remedial Action Permits)*

☐ Change in Remediation Funding Source or Financial Assurance Amount pursuant to N.J.A.C. 7:26C-5.11

☐ Change in Remediation Funding Source or Financial Assurance Mechanism pursuant to N.J.A. 7:26C-5.11(d)

☐ Remediation Funding Source Disbursement Notification pursuant to N.J.A.C. 7:26C-5.12(a)

☐ Remediation Funding Source Disbursement Request pursuant to N.J.A.C. 7:26C-5.12(b) – Direct Oversight only

☐ Remediation Funding Source/Financial Assurance Disbursement Request pursuant to N.J.A.C. 7:26C-5.13(d) – Department held RFS/FA

☐ Request Release of the Remediation Funding Source or Financial Assurance pursuant to N.J.A.C. 7:26C-5.11(e)

☐ Using a Remediation Funding Source as Financial Assurance

## SECTION D.  TYPE AND AMOUNT OF REMEDIATION FUNDING SOURCE OR FINANCIAL ASSURANCE POSTED

Initial or Existing Mechanism for ☐ RFS or ☐ FA

Check all that apply

☐ Letter of Credit
☐ Remediation Trust Fund
☐ Self Guarantee
☐ Line of Credit
☐ Environmental Insurance Policy
☐ Direct Oversight Remediation Trust Fund
☐ Fully Funded Trust *(Existing only pre-June 1993)*
☐ Performance Bond *(Existing only pre-June 1993)*
☐ Surety Bond *(Existing only pre-June1993)*

Replacement Mechanism for ☐ RFS or ☐ FA

Check all that apply

☐ Letter of Credit
☐ Remediation Trust Fund
☐ Self Guarantee
☐ Line of Credit
☐ Environmental Insurance Policy
☐ Direct Oversight Remediation Trust Fund

1. Expiration Date of Remediation Funding Source or Financial Assurance Posted:  ...................

2. Amount of Remediation Funding Source or Financial Assurance posted prior to any increase, reduction, or disbursement addressed in this submission:  ......................................

3. Do you want to disburse, reduce, or increase the amount of the Remediation Funding Source?............. ☐ Yes    ☐ No
   If "Yes," specify below:

   ☐ Disburse RFS    ☐ Reduce RFS    ☐ Increase RFS    by (amount):  _____

## SECTION E.  REMEDIATION COST ESTIMATION

1.  Indicate the method(s) used to calculate the remediation cost review/estimate: (*Check all that apply*)

☐ RACER® (*attach documentation for estimate*)
☐ Cost-Pro® (*attach documentation for estimate*)
☐ Surrogate Cost (*ISRA Remediation Certifications, see for instructions for further clarification*)
A Preliminary Assessment/Site Investigation has NOT been completed for the site, the surrogate remediation funding source has been established in the amount of $100,000 or $250,000.
☐ Calculated independently by LSRP/Consultant using (*attach documentation used to generate calculation*):
  ☐ Actual competitive bid(s)
  ☐ Internal company data
  ☐ Other commercially available software. Specify: _____
  ☐ Other. Specify: _____

2.  Estimated cost:
To complete remediation: _____

***or***

For Financial Assurance: _____

3.  Full legal name of person who prepared the cost estimate: _____

## SECTION F.  COST REVIEW FOR REMEDIATION FUNDING SOURCE OR FINANCIAL ASSURANCE

1.  **Remediation Funding Source – due annually**

a. Date of most recent prior cost estimate: ............................................................... _____

b. Total monies spent to date to remediate the site: ...................................................... _____
**Attach detailed summary of monies spent to remediate.**

c. Estimated remaining costs to complete the remediation: ........................................... _____
**Attach detailed estimate of remaining costs to complete remediation.**

d. Provide an explanation of any changes from most recent prior cost estimate.

2.  **Financial Assurance – due biennially**

a. Date of most recent prior cost estimate: ................................................................. _____
b. Current cost estimate to operate, maintain and monitor the engineering control: ....... _____
c. Provide an explanation of any changes from most recent prior cost estimate.

**SECTION G.  LSRP AUTHORIZED DISBURSEMENTS NOTIFICATION AND
REQUEST FOR NJDEP REDUCTION APPROVAL**

1. Date previous notification/request submitted: ................................................................. _____

2. For Remediation Trust Funds and Lines of Credit:

    a. Date the LSRP authorized disbursement (*Attach copy of authorization*): ................... _____

    b. Total amount of the authorized disbursement: ............................................................ _____

    c. Date the holder of the RFS mechanism disbursed the funds: .................................... _____

    d. Amount of RFS remaining after disbursement.............................................................. _____

3. For NJDEP authorized reductions:

    a. Amount of funds you are requesting the NJDEP authorize for reduction: .................. _____

    b. Provide RFS account information (e.g., bank name, account number, etc.):

---

**SECTION H.  REQUEST FOR NJDEP AUTHORIZED DISBURSEMENTS**

**ONLY for sites subject to Direct Oversight pursuant to N.J.A.C. 7:26C-14 and disbursement requests in accordance
with N.J.A.C. 7:26C-5.13**

1. Total amount of requested disbursement ........................................................................... _____

2. Provide the name, address, telephone number, email and tax identification number of all parties to receive payment from
this disbursement and amount of each payment.

3. Attach a description of remediation costs incurred or to be incurred and the specific remediation that has or will be
completed under this request including the following documentation:

    a.) For remediation costs that have been incurred, include a Remediation Report documenting the completion of the
remediation activities; or

    b.) For remediation costs to be incurred, include a proposed scope of work of the remediation activities to be completed.

4. Attach an estimate of all remaining costs to complete the remediation.

## SECTION I.  LICENSED SITE REMEDIATION PROFESSIONAL INFORMATION AND STATEMENT

LSRP ID Number: _____

First Name: _____    Last Name: _____

Phone Numbers: _____    Ext.: _____    Fax: _____

Mailing Address: _____

Municipality: _____    State: _____    Zip Code: _____

Email Address: _____

This statement shall be signed by the LSRP who is submitting this notification in accordance with N.J.S.A. 58:10C-14, and N.J.S.A. 58:10B-1.3b(1) and (2).

(1) I certify, as a Licensed Site Remediation Professional authorized pursuant to N.J.S.A. 58:10C-1 et seq. to conduct business in New Jersey, that for the remediation described in this submission, and all attachments included in this submission, I personally: Managed, supervised, or performed the remediation conducted at this site that is described in this submission, and all attachments included in this submission; and/or periodically reviewed and evaluated the work performed by other persons that forms the basis for the information in this submission; and/or completed the work of another site remediation professional, licensed or not, after having: (1) reviewed all available documentation on which I relied; (2) conducted a site visit and observed the then-current conditions and verified the status of as much of the work as was reasonably observable; and (3)concluded, in the exercise of my independent professional judgment, that there was sufficient information upon which to complete any additional phase of remediation and prepare workplans and reports related thereto.

(2) I certify:
- That I have read this submission and all attachments to this submission;
- That in performing the professional services as the licensed site remediation professional for the entire site or each area of concern, I adhered to the professional conduct standards and requirements governing licensed site remediation professionals provided in N.J.S.A. 58:10C-16;
- That the remediation conducted at the entire site or each area of concern, that is described in this submission and all attachments to this submission, was conducted pursuant to and in compliance with the remediation requirements in N.J.S.A. 58:10C-14.c;
- That the remediation described in this submission, and all attachments to this submission, was conducted pursuant to and in compliance with the regulations of the Site Remediation Professional Licensing Board at N.J.A.C. 7:26I; and
- That the information contained in this submission and all attachments to this submission is true, accurate, and complete.

(3) I certify, when this submission includes a response action outcome, that the entire site or each area of concern has been remediated in compliance with all applicable statutes, rules, and regulations and is protective of public health and safety and the environment.

(4) I certify that no other person is authorized or able to use any password, encryption method, or electronic signature that the Board or the Department have provided to me.

(5) I certify that I understand and acknowledge that:
- If I knowingly make a false statement, representation, or certification in any document or information I submit to the Department I may be subject to civil and administrative enforcement pursuant to N.J.S.A. 58:10C-17.a.1(a)through (f) by the Board, including but not limited to license suspension, revocation, or denial of renewal; and
- If I purposely, knowingly, or recklessly make a false statement, representation, or certification in any application, form, record, document or other information submitted to the Department or required to be maintained pursuant to the Site Remediation Reform Act, I shall be guilty, upon conviction, of a crime of the third degree and shall, notwithstanding the provisions of subsection b. of N.J.S.2C:43-3, be subject to a fine of not less than $5,000 nor more than $75,000 per day of violation, or by imprisonment, or both.

(6) I certify that I have read this certification prior to signing, certifying, and making this submission.

LSRP Signature: _____    Date: _____

LSRP Name: _____

Company Name: _____

## SECTION J.  PERSON RESPONSIBLE FOR CONDUCTING THE REMEDIATION INFORMATION AND CERTIFICATION

Full Legal Name of the Person Responsible for Conducting the Remediation:

Representative First Name: _____    Representative Last Name _____

Title: _____

Phone Number: _____    Ext: _____    Fax: _____

Mailing Address: _____

City/Town: _____    State: _____    Zip Code: _____

Email Address: _____

☐ The person responsible for conducting the remediation is the person responsible for establishing and maintaining a remediation funding source/financial assurance.

This certification shall be signed by the person responsible for conducting the remediation who is submitting this notification in accordance with Administrative Requirements for the Remediation of Contaminated Sites rule at N.J.A.C. 7:26C-1.5(a).

*I certify under penalty of law that I have personally examined and am familiar with the information submitted herein, including all attached documents, and that based on my inquiry of those individuals immediately responsible for obtaining the information, to the best of my knowledge, I believe that the submitted information is true, accurate and complete. I am aware that there are significant civil penalties for knowingly submitting false, inaccurate or incomplete information and that I am committing a crime of the fourth degree if I make a written false statement which I do not believe to be true. I am also aware that if I knowingly direct or authorize the violation of any statute, I am personally liable for the penalties.*

*I certify I am fully aware of the requirements of N.J.A.C. 7:26C-5 et seq. as they pertain to Remediation Funding Sources and Financial Assurances and the language of any provided Remediation Funding Source or Financial Assurance instrument does not deviate in any way from the language in the Department's model documents found at www.nj.gov/dep/srp/guidance/rfsguide except as approved by the Department.*

*For disbursement notification or request pursuant to N.J.A.C. 7:26C-5.12 or 5.13(d), I certify that the disbursement relates to actual remediation costs, incurred or to be incurred, and does not include ineligible legal fees.*

Signature: _____    Date: _____

Name/Title: _____

**SECTION K. PERSON ESTABLISHING AND MAINTAINING A REMEDIATION FUNDING SOURCE/FINANCIAL ASSURANCE** (complete if different person than Section J)

Full Legal Name of Person Establishing and
Maintaining a Remediation Funding Source:

Representative First Name: _____ Representative Last Name: _____

Title: _____

Phone Number: _____ Ext: _____ Fax: _____

Mailing Address: _____

City/Town: _____ State: _____ Zip Code: _____

Email Address: _____

This certification shall be signed by the person establishing and maintaining a remediation funding source/financial assurance who is submitting this notification in accordance with Administrative Requirements for the Remediation of Contaminated Sites rule at N.J.A.C. 7:26C-1.5(a).

*I certify under penalty of law that I have personally examined and am familiar with the information submitted herein, including all attached documents, and that based on my inquiry of those individuals immediately responsible for obtaining the information, to the best of my knowledge, I believe that the submitted information is true, accurate and complete. I am aware that there are significant civil penalties for knowingly submitting false, inaccurate or incomplete information and that I am committing a crime of the fourth degree if I make a written false statement which I do not believe to be true. I am also aware that if I knowingly direct or authorize the violation of any statute, I am personally liable for the penalties.*

*I certify I am fully aware of the requirements of N.J.A.C. 7:26C-5 et seq. as they pertain to Remediation Funding Sources and Financial Assurances and the language of any provided Remediation Funding Source or Financial Assurance instrument does not deviate in any way from the language in the Department's model documents found at www.nj.gov/dep/srp/guidance/rfsguide except as approved by the Department.*

*For a disbursement notification or request pursuant to N.J.A.C. 7:26C-5.12, I certify that the disbursement relates to actual remediation costs, incurred or to be incurred, and does not include ineligible legal fees*

Signature: _____ Date: _____

Name/Title: _____

Completed forms should be sent to:

> Bureau of Case Assignment & Initial Notice
> Site Remediation and Waste Management Program
> NJ Department of Environmental Protection
> 401-05H
> PO Box 420
> Trenton, NJ 08625-0420