**LOWENSTEIN SANDLER LLP**
Michael S. Etkin, Esq.
Wojciech F. Jung, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Liquidating Debtors*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| Tri Harbor Holdings Corporation (f/k/a Aceto Corporation), *et al.*,[1] | Case No. 19-13448 (VFP) |
| | (Jointly Administered) |
| Liquidating Debtors. | Re: Docket Numbers 892, 996 |

**SUPPLEMENTAL DECLARATION OF LOWENSTEIN SANDLER LLP AS COUNSEL TO THE LIQUIDATING DEBTORS AND PLAN ADMINISTRATOR**

Michael S. Etkin, pursuant to 28 U.S.C. section 1746, declares as follows:

1. I am an attorney at law in the State of New Jersey and am admitted to practice before the Court.

2. I am a partner with the law firm of Lowenstein Sandler LLP ("Lowenstein").

---

[1] The Liquidating Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Tri Harbor Holdings Corporation (f/k/a Aceto Corporation) (0520); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

3. I submit this declaration (the "Supplemental Declaration") based upon my own personal knowledge and belief after consultation with others at Lowenstein familiar with the subject matter set forth in this Supplemental Declaration.

4. This Supplemental Declaration is submitted in connection with Lowenstein's position as counsel to the Liquidating Debtors and Plan Administrator in the above-captioned chapter 11 cases subsequent to the Effective Date (defined below).

5. On August 23, 2019, the Debtors filed the Plan Supplement [Docket No. 892] which included a *Notice of Designation of Plan Administrator* [Docket No. 892, Exhibit F-2] designating Steven S. Rogers ("Mr. Rogers"), the then-current President, Chief Legal Officer, and Secretary of Aceto Corporation, as the proposed Plan Administrator (as defined in the Plan) and sole director, officer and/or manager, as applicable, of each of the Liquidating Debtors.

6. On September 12, 2019, the Court held the confirmation hearing (the "Confirmation Hearing") regarding the *Second Modified Joint Plan of Liquidation of Aceto Corporation and Its Affiliated Debtors* (the "Plan") [Doc. No. 757] and on September 18, 2019, the Court entered an order (the "Confirmation Order") [Doc. No. 996] confirming the Plan. The Plan became effective as of October 1, 2019 at 12:01 a.m. (ET) (the "Effective Date").

7. Pursuant to the Plan and Confirmation Order, Mr. Rogers was appointed (as of the Effective Date) as the Plan Administrator and sole officer, director and/or manager of each of the Liquidating Debtors for the purpose of implementing the Plan and facilitating the orderly liquidation of the Liquidating Debtors' remaining assets for the benefit of the Liquidating Debtors' creditors and other stakeholders.

8. As set forth in the proposed Plan Administrator Agreement [Docket No. 892, Exhibit F-1] filed by the Debtors on August 23, 2019, and reflecting industry norms, Lowenstein

was proposed to be retained as counsel to the Liquidating Debtors and Plan Administrator from and after the Effective Date. Lowenstein assumed that role as of the Effective Date and continues in that role today.

9. During the second week of September 2019, Lowenstein had discussions with Mr. Rogers about his potentially joining the firm and the general terms of his potential employment. However, no details were arrived at and no offer was made to Mr. Rogers at that time.

10. Lowenstein's decisions with respect to potential partnership matters are not binding absent a formal vote of the equity partners of Lowenstein.

11. On September 18, 2019, approximately one week after the Confirmation Hearing, during the meeting of Lowenstein's executive board, the prospect of Mr. Rogers' employment by Lowenstein was proposed and the board voted to recommend to the full partnership Mr. Rogers' admission as a non-equity partner.

12. On September 20, 2019, Lowenstein presented an offer of non-equity partnership to Mr. Rogers. This offer did not include a starting date for Mr. Rogers and was conditioned on an approval vote by Lowenstein's equity partners.

13. Mr. Rogers accepted Lowenstein's offer of non-equity partnership on September 20, 2019. Like the offer, Mr. Rogers' acceptance did not have a start date and was conditioned on the approval vote of Lowenstein's equity partners.

14. That vote of Lowenstein's equity partners took place on September 26, 2019, two weeks after the Confirmation Hearing. Mr. Rogers commenced his employment with Lowenstein on October 2, 2019.

15. Mr. Rogers will issue statements for his services as Plan Administrator consistent with the approved Plan Administrator Agreement and Wind-Down Budget (as defined in the

Plan); Lowenstein will have no interest in those fees. Likewise, Mr. Rogers will have no interest in Lowenstein's compensation as counsel to the Liquidating Debtors and Plan Administrator and he cannot and will not bill any time on account of his status as a partner at Lowenstein.

16. Lowenstein did not extend its offer of non-equity partnership to Mr. Rogers until approximately one week *after* the Confirmation Hearing. As a matter of firm policy, Lowenstein does not disclose negotiations regarding potential offers of employment, whether to partners, counsel, associates or other employees. While some circumstances may warrant an advance disclosure, the status of Mr. Rogers' potential employment by Lowenstein was not, in Lowenstein's view, definite enough to warrant public disclosure prior to the Confirmation Hearing on September 12, 2019 or entry of the Confirmation Order on September 18, 2019.

17. Given the post-confirmation status of these Chapter 11 Cases, Lowenstein did not believe that Rule 2014 required any disclosure under such circumstances. However, at the request of the Office of the United States Trustee, Lowenstein is filing this Supplemental Declaration.

18. The fact that Mr. Rogers joined Lowenstein as a non-equity partner as of October 2, 2019 did not create a conflict of interest. Bankruptcy estate fiduciaries—including plan administrators, liquidation/litigation trustees, chapter 11 trustees, or chapter 7 trustees—often retain their own firms to represent the estate fiduciary, which retention is regularly accepted by this Court and courts around the country without issue.[2]

---

[2] *See, e.g., In re Versatile Distributors, Inc.*, Case No. 16-14837 (VFP) (Bankr. D.N.J. May 12, 2016) [Docket No. 23] (order granting application of chapter 7 trustee, Jay Lubetkin, to retain his own law firm, Rabinowitz, Lubetkin & Tully, LLC as counsel to the chapter 7 trustee); *In re HHH Choices Health Plan, LLC*, Case Nos. 15-11158, 15-13264, and 16-10028 (Bankr. S.D.N.Y. Aug. 1, 2018) [Docket No. 918] (order confirming plan pursuant to which Sean Southard, Esq. was appointed as plan administrator and plan administrator retained his law firm, Klestadt Winters Jureller Southard & Stevens, LLP, as counsel to the plan administrator); *In re Charles DeGennaro, III*, Case No. 18-35222 (CGM) (Bankr. S.D.N.Y. Oct. 9, 2018) [Docket No. 58] (order authorizing the chapter 7 trustee, Fred Stevens, to retain his own law firm, Klestadt Winters Jureller Southard & Stevens, LLP, as counsel to the chapter 7 trustee); *In re M & G USA Corp.*, Case No. 17-12307 (BLS) (Bankr. D. Del. Jan. 29, 2019) [Docket No. 2241]

19.     The Plan Administrator Agreement sets forth procedures for the compensation of the Plan Administrator and his professionals.  As set forth in Section 4.12(e) of the Plan Administrator Agreement, invoices and fee statements of the Plan Administrator and his professionals (including Lowenstein) are subject to review (and the opportunity to object) by the Oversight Committee (as defined in and appointed pursuant to the Plan).  Any unresolved objection to such invoices and fee statements will be addressed by the Court upon a motion and appropriate notice.

20.     Finally, while Lowenstein does not believe that the requirements under Bankruptcy Code section 327(a) and Bankruptcy Rule 2014 are applicable given the current post-confirmation status of these chapter 11 cases, to the best of my knowledge, I believe that Lowenstein (a) does not hold or represent an interest adverse to the Liquidating Debtors by virtue of Mr. Rogers recently joining Lowenstein as a non-equity partner, and (b) was at all times during the course of its representation of the Debtors through the Effective Date and remains a

---

(notice of appearance of law firm, Halperin Battaglia Benzija, LLP, as co-counsel to litigation trust with respect to which a partner of the law firm, Alan Halperin, serves as co-trustee); *In re Oldapco, Inc. (f/k/a Appvion, Inc.),* Case No. 17-12082 (KJC) (Bankr. D. Del. Aug. 30, 2018) [Docket No. 1009] (notice of appearance of law firm, Halperin Battaglia Benzija, LLP, as co-counsel to liquidating trust with respect to which a partner of the law firm, Alan Halperin, serves as co-trustee [*see also* Docket No. 946-1, Schedule 2]); *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Dec. 11, 2008) [Docket Nos. 1, 24] (SIPA liquidation trustee, Irving H. Picard, Esq. retained his own law firm, Baker & Hostetler LLP, as counsel to the trustee); *see also In re C. Wonder LLC*, Case No. 15-11127 (MBK) (Bankr. D.N.J. Sept. 2, 2015) [Docket No. 447 (confirmation order); Docket No. 366-1 (plan administrator retention agreement), available here: https://cases.primeclerk.com/cwonder/Home-DownloadPDF?id1=MTUxODAz&id2=0] (order confirming plan, in a chapter 11 case in which Porzio, Bromberg & Newman, P.C. represented the creditors' committee pre-effective date and plan administrator post-effective date and pursuant to which Brian Ryniker of CBIZ MHM, LLC was appointed plan administrator; pursuant to the plan administrator retention agreement, the plan administrator retained his own firm, CBIZ MHM, LLC as the plan administrator's financial advisor, and to "the extent that Mr. Ryniker performs financial advisory services on behalf of CBIZ, he shall record that time separately from his time spent as Plan Administrator and CBIZ shall be compensated for Mr. Ryniker's time at his normal hourly rate of $595."); *In re Coldwater Creek Inc.,* Case No. 14-10867 (BLS) (Bankr. D. Del. Sept. 17, 2014) [Docket No. 981 (confirmation order); Docket No. 932 (liquidating trust agreement), available here: https://cases.primeclerk.com/coldwater/Home-DownloadPDF?id1=NDU1OTg=&id2=0] (order confirming plan, in case in which Peter S. Kravitz of the Province firm was appointed as liquidating trustee; pursuant to the liquidating trust agreement, the liquidating trustee was to receive a fixed monthly fee and "the Liquidating Trustee may retain analysts from his firm [Province] to assist him with certain financial advisory related tasks and such analysts would be paid on an hourly basis.").

"disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: November 18, 2019

>*/s/ Michael S. Etkin*
>Lowenstein Sandler LLP
>By: Michael S. Etkin