**LOWENSTEIN SANDLER LLP**
Michael S. Etkin, Esq.
Wojciech F. Jung, Esq.
Michael Savetsky, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Liquidating Debtors*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Chapter 11 |
| Tri Harbor Holdings Corporation (f/k/a Aceto Corporation), *et al.*,[1] | Case No. 19-13448 (VFP) |
|  | (Jointly Administered) |
| Liquidating Debtors. | **Hearing Date: January 28, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline: January 21, 2020 at 4:00 p.m. (ET)** |

## LIQUIDATING DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN KAVOD PHARMACEUTICALS LLC AND LONZA SALES AG PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

The above-captioned liquidating debtors (collectively, the "<u>Liquidating Debtors</u>"), by and through their undersigned counsel, submit this motion (the "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Proposed Order</u>"), approving that certain *Settlement Agreement* by and among Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) ("<u>Rising</u>") and Lonza Sales AG

---

[1] The Liquidating Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Tri Harbor Holdings Corporation (f/k/a Aceto Corporation) (0520); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

("Lonza"), dated as of January 7, 2020 (the "Settlement Agreement"), a copy of which is attached hereto as Exhibit B, pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").    In support of the Motion, the Liquidating Debtors respectfully state as follows:

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984 and amended on September 18, 2012.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief sought herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

### A.    General Background

3.    On February 19, 2019 (the "Petition Date"), each of the Liquidating Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court, thereby commencing these chapter 11 cases (the "Chapter 11 Cases").

4.    On February 27, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in the Chapter 11 Cases. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Doc. No. 80].

5.    Additional details regarding the Liquidating Debtors' businesses and the facts and circumstances surrounding the commencement of the Chapter 11 Cases is set forth in the *Declaration of Rebecca A. Roof in Support of First Day Relief* [Doc. No. 19] and in the Disclosure Statement (as defined below).

6.    On September 18, 2019, this Court entered an order (the "Confirmation Order") [Doc. No. 996] approving on a final basis the *Second Modified Disclosure Statement for the*

*Second Modified Joint Plan of Liquidation of Aceto Corporation and Its Affiliated Debtors* [Doc. No. 758] (the "<u>Disclosure Statement</u>") and confirming the *Second Modified Joint Plan of Liquidation of Aceto Corporation and Its Affiliated Debtors* (the "<u>Plan</u>")[2] [Doc. No. 757]. The Plan became effective as of October 1, 2019 at 12:01 a.m. (ET) (the "<u>Effective Date</u>").

7.     Pursuant to the Plan and Confirmation Order, Steven S. Rogers, in his capacity as the Plan Administrator, was appointed as of the Effective Date to serve as the sole officer, director and/or manager of each of the Liquidating Debtors for the purpose of implementing the Plan and facilitating the orderly liquidation of the Liquidating Debtors' remaining assets for the benefit of the Liquidating Debtors' creditors and other parties in interest in the Chapter 11 Cases.

8.     Pursuant to sections 5.13 and 9.03 of the Plan, upon the Effective Date, all of the Debtors' Causes of Action and rights to compromise and settle such Causes of Action and Claims against the Debtors passed to and vested in the Liquidating Debtors.

9.     Pursuant to sections 5.09(c)(vi) and 5.13 of the Plan and section 2.1(c)(viii) of the Plan Administrator Agreement, the Plan Administrator is the only party authorized to bring, settle, release, compromise, or enforce Causes of Action on behalf of the Liquidating Debtors.

10.    Under section 5.14(a) of the Plan, the Plan Administrator is required to consult with and seek the reasonable consent of the Oversight Committee (such consent not to be unreasonably withheld) regarding, among other things, the settlement or resolution of any Claims or Causes of Action to the extent that the Plan Administrator proposes a settlement (including providing for an Allowed Claim) in the amount of $500,000 and above.

**B.     The Lonza Dispute and Rising Claims**

11.    Prior to the Petition Date, Rising, Lonza, Lyne Laboratories, Inc. ("<u>Lyne</u>"), and CorePharma LLC ("<u>CorePharma</u>") were signatories to a certain pharmaceutical manufacture and supply agreement, effective as of May 8, 2008 (as amended, including by Amendment No. 1

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

effective as of April 1, 2014, and together with any schedules and exhibits thereto, collectively, the "Supply Agreement").[3]

12.      Pursuant to the Supply Agreement, Lonza (a Swiss company) agreed to exclusively supply the Active Pharmaceutical Ingredient (or "API") known as Levocarnitine for use in two dosage forms, *i.e.*, oral solution and tablet.  Lyne was the manufacturer of the oral solution product and CorePharma was the manufacturer of the tablet product.

13.      The Supply Agreement was a long-term arrangement that carried an initial term of five years, after which it would be automatically renewed for one year terms unless and until terminated by either party for cause.  (*Id.*, Clause 10).

14.      In April 2014, the Supply Agreement was amended, effective April 1, 2014 ("Amendment No. 1").  Among other things, Amendment No. 1 expanded the sales territory to Canada.  (Amendment No. 1, Clause 2).  Amendment No. 1 also extended the initial term of the Supply Agreement for a period of five additional years, through April 1, 2019.[4]  (*Id.*, Clause 10).

15.      The Supply Agreement is governed by Swiss law and contains a forum-selection clause that provides for disputes to be adjudicated in Switzerland.  (Supply Agreement, Clause 13).

16.      In July 2015, Lonza advised Rising that it would no longer supply product under the Supply Agreement.  At the time Lonza stopped supplying product, nearly four (4) years remained on the term of the Supply Agreement.

17.      Rising and Lyne, with considerable effort, thereafter managed to secure an alternative supplier of Levocarnitine API, and re-entered the Levocarnitine oral solution marketplace in the first quarter of 2017, although at a reduced market share, with the help of Lonza.

---

[3] A copy of the Supply Agreement was previously filed with this Court under seal at the request of Lonza. *See Order Concerning Motion to Seal* [Doc. No. 860].
[4] Amendment No. 1 further provided that, subject to certain conditions described therein, Lonza would continue to supply product for an additional thirty-six (36) month wind-down period in the event of a termination of the Supply Agreement by Lonza.

18.     Despite diligent efforts, however, Rising and CorePharma were never able to re-enter the Levocarnitine tablet marketplace and that product was discontinued.  In October 2017, Rising purchased all of CorePharma's rights in the tablet product, thereby transferring CorePharma's claim against Lonza for breach of the Supply Agreement to Rising.

19.     The Plan Administrator believes Rising has significant claims against Lonza (the "Rising Claims") in the form of lost profits from sales that Rising could have made had Lonza continued to supply product as required under the Supply Agreement for the duration of its term. Rising estimates that its lost profits claim against Lonza is, at a minimum, $4,710,481 to $5,348,471.  Lonza disputes the validity and amount of the Rising Claims.

20.     Rising, prior to the Petition Date and continuing thereafter, engaged Swiss counsel and commenced preparations for litigation against Lonza in Switzerland.  Unlike in the United States, a party wishing to sue in Switzerland must first commence a conciliation proceeding, which is similar to a mediation and requires the parties to appear before the conciliation authority in an effort to amicably resolve the dispute.  If the parties are unable to reach an accord, the conciliation authority will grant the claimant(s) a formal authorization to proceed, which entitles the claimant(s) to file the action in court within a three-month period. Once a lawsuit is commenced, court costs are determined in part by the amount in controversy, which could be significant. For the Rising Claims, such court costs could be significant given the amount in controversy.

21.     On June 19, 2019, Lonza timely filed a proof of claim, which was assigned claim number 213 (the "Lonza Claim") by the Debtors' claims agent, asserting a general unsecured claim against Rising in an unliquidated amount.  While the Lonza Claim contained very few details regarding Lonza's alleged claim, Lonza has asserted that Rising breached the Supply Agreement by failing to pay certain royalties that Lonza maintains it was entitled to receive under the Supply Agreement.  Rising disputes Lonza's assertion and maintains that once Lonza ceased supplying product to Rising under the Supply Agreement, Rising stopped making those royalty payments to Lonza.  Lonza disagrees with Rising's position.

22.     The Liquidating Debtors dispute Lonza's claim that it is owed any royalty payments from Rising.  Accordingly, on July 11, 2019, the Debtors filed an objection to, or, in the alternative, motion to estimate, the Lonza Claim, seeking an order disallowing the Lonza Claim in its entirety or, alternatively, estimating the Lonza Claim, pursuant to sections 105(a) and 502(c) of the Bankruptcy Code, at zero dollars ($0.00) for all purposes in these Chapter 11 Cases [Doc. No. 714] (the "Claim Objection").

23.     On August 15, 2019, Lonza filed a response to the Claim Objection [Doc. No. 849], asserting, among other things, that Rising owes it no less than $666,635.15 in prepetition royalty payments.  In light of the parties' settlement discussions, the hearing on the Claim Objection has been continued.

## C.      The Proposed Settlement

24.     In order to avoid the potential delay, uncertainty, risk and expense of protracted litigation of the Rising Claims and the Lonza Claim, Rising and Lonza have engaged in lengthy, good faith and arm's-length settlement discussions and negotiations and have agreed, subject to this Court's approval, to resolve both of those matters on the terms set forth in the Settlement Agreement.

25.     The key terms of the Settlement Agreement are summarized below.[5]

- **Settlement Payment**. Within twenty (20) calendar days following entry of a final, non-appealable order of this Court, in form and substance acceptable to Lonza and Rising in their respective sole discretion, approving the Settlement Agreement (the "Approval Order"), Lonza shall make a payment in the amount of USD $1,600,000 (the "Settlement Payment") to Rising.  Rising shall be solely responsible for, and legally bound to make payment of, any taxes determined to be due and owing (including penalties and interest related thereto) by it to any federal, state, local, or regional taxing authority as a result of the Settlement Payment.

[5] This summary is intended for informational purposes only. Parties in interest should refer to the Settlement Agreement for the full terms thereof. To the extent this summary is inconsistent with the terms of the Settlement Agreement, the terms of the Settlement Agreement shall govern in all respects.  Capitalized terms used in this summary shall have the meanings ascribed to them in the Settlement Agreement.

- **Settlement Effective Date**. The terms, conditions and obligations set forth in the Settlement Agreement shall not become binding and enforceable until the date on which: (i) each of the Parties has executed the Settlement Agreement; and (ii) the Bankruptcy Court has entered the Approval Order (such date, the "Settlement Effective Date").

- **Release by Rising**. As of the Settlement Effective Date, except as to the rights, benefits, and obligations that arise under the Settlement Agreement, each of Rising, on behalf of itself, its affiliates, and each and all of its and its affiliates' respective past, present and future administrators, successors, assigns, officers, directors, shareholders, managers, members, principals, employees, attorneys, representatives, receivers, beneficiaries, insurers, agents, and anyone claiming by or in the right of Rising (collectively, the "Liquidating Debtor Releasors"), for good and valuable consideration, the receipt of which is hereby acknowledged, hereby unconditionally releases, acquits, and discharges Lonza and each and all of its and its affiliates' respective past, present and future administrators, successors, assigns, officers, directors, shareholders, partners (including general and limited partners), managers, members, principals, employees, attorneys, representatives, receivers, beneficiaries, insurers, and agents (the "Lonza Releasees") from any and all actions, claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, or otherwise, based on, relating to, or in any matter arising from, in whole or in part, the Supply Agreement, the Rising Claims, the Lonza Claim, or the Chapter 11 Cases, which the Liquidating Debtor Releasors ever had, now have, can, shall or may have against the Lonza Releasees, from the beginning of the world to the Execution Date.  For the avoidance of doubt, and without limiting the generality of the foregoing, the Liquidating Debtor Releasors specifically release and waive any and all of the claims that they could have asserted against the Lonza Releasees, including without limitation, the Rising Claims.

- **Release by Lonza**. As of the Settlement Effective Date, except as to the rights, benefits, and obligations that arise under the Settlement Agreement, Lonza, on behalf of itself, its affiliates, and each and all of its and its affiliates' respective past, present, and future administrators, successors, assigns, officers, directors, shareholders, managers, members, principals, employees, attorneys, representatives, receivers, beneficiaries, insurers, agents, and anyone claiming by or in the right of Lonza (collectively, the "Lonza Releasors"), for good and valuable consideration, the receipt of which is hereby acknowledged, hereby unconditionally releases, acquits, and discharges Rising, its affiliates, and each and all of its and its affiliates' respective past, present and future administrators, successors, assigns, officers, directors, shareholders, partners (including general and limited partners), managers, members, principals, employees, attorneys,

representatives, receivers, beneficiaries, insurers, and agents (the "Liquidating Debtor Releasees") from any and all actions, claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, or otherwise, based on, relating to, or in any matter arising from, in whole or in part, the Supply Agreement, the Rising Claims, the Lonza Claim, or the Chapter 11 Cases, which the Lonza Releasors ever had, now have, can, shall or may have against the Liquidating Debtor Releasees, from the beginning of the world to the Execution Date. For the avoidance of doubt, and without limiting the generality of the foregoing, the Lonza Releasors specifically release and waive any and all of its claims that they could have asserted against the Liquidating Debtor Releasees, including without limitation, the Lonza Claim.

- **Withdrawal of Lonza Claim**. Within five (5) calendar days of the Settlement Effective Date, Lonza shall withdraw the Lonza Claim with prejudice and without costs. Lonza shall not receive any distribution from the Liquidating Debtors on account of the Lonza Claim or otherwise.

26.    The Settlement Agreement compromises and releases Rising's claims against Lonza. Nothing in the Settlement Agreement releases direct claims, if any, that Lyne and Lonza may have against each other arising under the Supply Agreement. For the avoidance of doubt, Lonza does not believe that Lyne has any claims against Lonza.

## RELIEF REQUESTED

27.    By this Motion, the Liquidating Debtors seek entry of the Proposed Order approving the Settlement Agreement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BASIS FOR RELIEF

### I.    The Settlement Agreement Falls Well Within the Range of Reasonableness and Should be Approved

28.    It has long been recognized that compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *In re Martin*, 91 F. 3d 389, 393 (3d Cir. 1996). As the Supreme Court has acknowledged, "[i]n administering reorganization proceedings in an economical and practical manner it will often be

wise to arrange the settlement of claims as to which there are substantial and reasonable doubts."

*Protective Comm. For Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson,* 390

U.S. 414, 424 (1968) (citation and internal quotation marks omitted).

29.    Section 105(a) of the Bankruptcy Code provides that a bankruptcy court may

"issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Moreover, Bankruptcy Rule 9019(a) provides,

in relevant part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing,

the court may approve a compromise or settlement."  The authority to approve a compromise

[or] settlement "lies within the sound discretion of the Bankruptcy Court." *In re Petersburg*

*Regency, LLC*, 540 B.R. 508, 535 (Bankr. D.N.J. 2015) (Papalia, J).   In exercising this

discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and

in the best interests of the estate.  *Id* (citing *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 136

(Bankr. D.N.J. 2010).  The court must "assess and balance the value of the claim that is being

comprised against the value to the estate of the acceptable of the compromise proposal." *Id*.

(citation omitted); *In re Roper and Twardowsky, LLC*, 559 B.R. 375, 394 (Bankr. D.N.J. 2016)

(Meisel, J) (this analysis "pits the value of rights relinquished by the estate versus the value

received in return.") (citations omitted).

30.    When determining whether a settlement is fair and reasonable under Bankruptcy

Rule 9019(a), courts in the Third Circuit consider the following factors (collectively, the "Martin

Factors"):

> (a)    the probability of success in litigation;
>
> (b)    the likely difficulties of collection;
>
> (c)    the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and
>
> (d)    the paramount interest of the creditors.

*In re Martin,* 91 F. 3d at 393; *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006); *see also*

*In re Marvel Entm't Grp., Inc*., 222 B.R. 243, 249 (D. Del. 1998) (in applying Bankruptcy Rule

9019(a), whether a court should approve a settlement depends on several factors, including the probability of success in the litigation, the complexity of the litigation, the attendant expense and delay, and the interests of the creditors). A court considering approval of a settlement "should not conduct a "mini trial" on the merits but canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Petersburg Regency*, 540 B.R. at 536 (citation omitted).

31.    Although bankruptcy courts are directed to determine whether settlements are in the "best interests of the estate"—*In re Energy Cooperative, Inc.*, 886 F. 2d 921, 927 (7th Cir. 1989)—the bankruptcy court should not substitute its judgment for that of a debtor in possession or a trustee. *Roper and Twardowsky,* 559 B.R. at 394; *In re Princeton Alternative Income Fund, LP*, 2019 WL 4127148 at *3 (Bankr. D.N.J. Aug. 29, 2019) (holding that the court relies heavily on the judgment of the trustee in approving the settlement) (*citing In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 1999)).

32.    As numerous courts have held, the bankruptcy court is not to decide the numerous questions of law or fact raised in the potential litigation, but rather should canvass the issues to determine whether the settlement falls above the lowest point in the range of reasonableness. *Roper and Twardowsky,* 559 B.R. at 394. *See also In re Pennsylvania Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd* 8 F.3d 812 (3d Cir. 1993) (settlement must not fall below the lowest level in the range of reasonableness); *In re Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (generally, a settlement will be approved as long as it clears a threshold of reasonableness); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[I]n approving a settlement, the court does not have to be convinced that the settlement is the best possible compromise . . . [it] must only conclude that the compromise or settlement . . . be above the lowest point in the range of reasonableness.") (internal quotation and citations omitted).

33.    Application of the Martin Factors here demonstrates that Rising's entry into the Settlement Agreement falls well above the lowest point in the range of reasonableness and should therefore be approved.

**(i)      *The Probability of Success in Litigation Against Lonza is Uncertain and Collection May be Difficult***

34.      With respect to the Lonza Claim, as noted above, Lonza has responded to the Claim Objection and asserted that Rising owes it no less than $666,635.15 in outstanding royalty payments under the Supply Agreement.  While the Liquidating Debtors believe the Lonza Claim has no merit, there is no guarantee that the Liquidating Debtors will prevail if the Claim Objection is litigated.

35.      Likewise, while the Liquidating Debtors believe that the Rising Claims against Lonza are meritorious, as is the case with any disputed and unliquidated litigation claims, the outcome of any such litigation is not certain. For example, Lonza has asserted certain contractual and other defenses to Rising's Claims, including failure to mitigate damages.  Rising disagrees with Lonza's assertions, but there is a risk that a court may credit all or some of Lonza's defenses.  Given these issues and others, Rising's ability to successfully prosecute the Rising Claims is not without risk.

36.      In addition, assuming that Rising obtains a judgment against Lonza, any such judgment may be costly and time consuming to collect since Lonza is located in Switzerland.

**(ii)      *Litigation Against Lonza Would be Complex, Expensive, Inconvenient and Would Delay Recoveries***

37.      Litigation of the Rising Claims against Lonza would be complex and expensive. Among other reasons, putting aside the likely dispute over the enforceability of the forum selection clause, Rising may have to prosecute its Claims in Switzerland, which would require Rising to work with Swiss counsel, transport witnesses, and finance significant court costs. In addition, Rising would need to incur the expense of expert testimony to prove the amount of its damages.

38.      Further, given the amount of time such litigation would take to prosecute to conclusion, the Liquidating Debtors' estates and creditors may not see any recoveries from such litigation for many months or even years, in contrast to the immediate and definite benefits to the Liquidating Debtors' estates of the Settlement Payment under the Settlement Agreement.

39.    Simply put, the Liquidating Debtors' estates and creditors will be much better served by immediate approval of the Settlement Agreement, rather than the Liquidating Debtors' pursuit of complex claims that may be expensive and time-consuming to collect upon.

        ***(iii)***    ***The Paramount Interests of Creditors Weighs Heavily in Favor of Approving the Settlement***

40.    The Court's approval of the Settlement Agreement is an important element of the Liquidating Debtors' ongoing efforts to maximize the value of their estates for the benefit of their creditors. Importantly, in evaluating approval of the Settlement Agreement, the court "must consider the effects of the settlement on all parties to the proceeding – the entire creditor body – and *not* individual creditor interests." *In re Biolitec, Inc.*, 528 B.R. 261, 270 (Bankr. D.N.J. 2014) (Steckrotch, J.) (emphasis added). Approval of the Settlement Agreement will serve the paramount interests of all creditors of the Liquidating Debtors.

41.    For the foregoing reasons, Rising's entry into the Settlement Agreement is a sound exercise of business judgment, fair and reasonable, in the best interests of the Liquidating Debtors' estates and creditors. Moreover, the proposed settlement falls well above the lowest point in the range of reasonableness. Accordingly, the Liquidating Debtors respectfully submit that the Court should approve the Settlement Agreement under Bankruptcy Rule 9019.

## WAIVER OF BANKRUPTCY RULE 6004(h) STAY IF APPLICABLE

42.    To the extent applicable, the Liquidating Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). The Liquidating Debtors do not believe Bankruptcy Rule 6004(h) applies, but out of an abundance of caution seek a waiver of any such stay.

## WAIVER OF MEMORANDUM OF LAW

43.    The Liquidating Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Liquidating Debtors rely is incorporated herein and the Motion does not raise any novel issues of law.

## NO PRIOR REQUEST

44.     No previous motion for the relief sought herein has been made to this or to any other court.

## LIMITED NOTICE

45.     Pursuant to section 12.07 of the Plan, in order to continue receiving documents pursuant to Bankruptcy Rule 2002 after the Effective Date, parties in interest are required to file with the Court a renewed request for such notice.  Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of New Jersey; (ii) Porzio, Bromberg & Newman, P.C., c/o Warren J. Martin, Jr., Esq., Robert M. Schechter, Esq., and Rachel A. Parisi, Esq., as counsel to the Oversight Committee; (iii) Foley & Lardner LLP, c/o Leah M. Eisenberg, Esq. and Erika Morabito, Esq., counsel for Lyne; and (iv) all parties that have filed a renewed request to receive notice pursuant to Bankruptcy Rule 2002, as modified by section 12.07 of the Plan.  In light of the nature of the relief requested herein, the Liquidating Debtors respectfully submit that no other or further notice is required.

*[Remainder of page intentionally left blank]*

## CONCLUSION

**WHEREFORE**, the Liquidating Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: January 7, 2020                          Respectfully submitted,

                                                 **LOWENSTEIN SANDLER LLP**

                                                 */s/ Wojciech F. Jung*
                                                 Michael S. Etkin, Esq.
                                                 Wojciech F. Jung, Esq.
                                                 Michael Savetsky, Esq.
                                                 One Lowenstein Drive
                                                 Roseland, New Jersey 07068
                                                 (973) 597-2500 (Telephone)
                                                 (973) 597-2400 (Facsimile)
                                                 metkin@lowenstein.com
                                                 wjung@lowenstein.com
                                                 msavetsky@lowenstein.com

                                                 *Counsel to the Liquidating Debtors*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin, Esq.
Wojciech F. Jung, Esq.
Michael Savetsky, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Liquidating Debtors*

| | |
|---|---|
| In re:<br><br>Tri Harbor Holdings Corporation (f/k/a Aceto Corporation), *et al.*,[1]<br><br>Liquidating Debtors. | Chapter 11<br><br>Case No. 19-13448 (VFP)<br><br>(Jointly Administered) |

**ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN KAVOD
PHARMACEUTICALS LLC AND LONZA SALES AG PURSUANT TO RULE
9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

The relief set forth on the following pages, numbered two (2) through and including three (3), is hereby **ORDERED**.

---

[1] The Liquidating Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Tri Harbor Holdings Corporation (f/k/a Aceto Corporation) (0520); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

Page:     2
Debtors:  Aceto Corporation, *et al.*
Case No.: 19-13448 (VFP)
Caption:  Order Approving Settlement Agreement Between Kavod Pharmaceuticals LLC and
          Lonza Sales AG Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

---

Upon consideration of the motion (the "Motion")[2] of the above-captioned liquidating debtors (collectively, the "Liquidating Debtors") for entry of an order approving that certain *Settlement Agreement* by and among Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) ("Rising") and Lonza Sales AG ("Lonza"), dated as of January 7, 2020 (the "Settlement Agreement"), a copy of which is attached to the Motion as Exhibit A, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, as amended on September 18, 2012 (Simandle, C.J.); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion being sufficient under the circumstances; and the Court having found and determined that the Settlement Agreement is fair and reasonable and in the best interests of the Liquidating Debtors' estates and creditors and that each of the Martin Factors weighs in favor of approval of the Settlement Agreement; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      The Settlement Agreement is hereby approved pursuant to section 105(a) of the Bankruptcy and Bankruptcy Rule 9019.

3.      Lonza shall pay the Settlement Payment to Rising in accordance with the terms of the Settlement Agreement.

4.      Within five (5) calendar days of the Settlement Effective Date (as defined in the Settlement Agreement), Lonza shall withdraw the Lonza Claim with prejudice and without costs.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Page:      3
Debtors:   Aceto Corporation, *et al.*
Case No.:  19-13448 (VFP)
Caption:   Order Approving Settlement Agreement Between Kavod Pharmaceuticals LLC and
           Lonza Sales AG Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

---

Lonza shall not receive any distribution from the Liquidating Debtors on account of the Lonza Claim or otherwise.

5.      The Liquidating Debtors are authorized to take all actions as may be required or necessary in order to implement the terms of the Settlement Agreement.

6.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or is otherwise waived.

7.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, or any other Bankruptcy Rule, this Order shall be immediately effective and enforceable upon its entry.

8.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

## **Exhibit B**

**Settlement Agreement**

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of January 7, 2020 (the "Execution Date"), by and among Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) ("Rising") and Lonza Sales AG ("Lonza"). Rising and Lonza are referred to herein individually as a "Party" and collectively as the "Parties".

### Recitals

**WHEREAS**, on February 19, 2019, Tri Harbor Holdings Corporation (f/k/a Aceto Corporation) ("Aceto") and its affiliated debtors and debtors in possession (collectively, prior to the Chapter 11 Effective Date (defined below), the "Debtors" and after the Chapter 11 Effective Date, the "Liquidating Debtors")[1] commenced Chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

**WHEREAS**, on June 19, 2019, Lonza timely filed proof of claim No. 213 (the "Claim") against Rising;

**WHEREAS**, the Claim arises under a certain pharmaceutical manufacture and supply agreement between Lonza and Rising dated May 8, 2008 (and any amendments including Amendment No. 1 effective as of April 1, 2014, and together with any schedules and exhibits, collectively, the "Agreement");

**WHEREAS**, on July 11, 2019, the Debtors filed an *Objection to, or, in the Alternative, Motion to Estimate Proof of Claim No. 213 Filed by Lonza Sales AG* [Docket No. 714] (the "Claim Objection");

**WHEREAS,** on July 23, 2019, the Debtors filed their *Second Modified Joint Plan of Liquidation of Aceto Corporation and its Affiliated Debtors* (the "Plan") [Docket No. 747]; [2]

**WHEREAS**, on August 15, 2019, Lonza filed a response to the Claim Objection by filing its *Response to Debtors' Objection to, or, in the Alternative, Motion to Estimate Proof of Claim No. 213 Filed by Lonza Sales AG* [Docket No. 849];

---

[1] More specifically, the Liquidating Debtors are: Tri Harbor Holdings Corporation (f/k/a Aceto Corporation); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.); Kavod Health LLC (f/k/a Rising Health, LLC); Kavris Health LLC (f/k/a Acetris Health, LLC); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC); Arsynco, Inc; and Acci Realty Corp.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**WHEREAS**, on August 23, 2019, the Debtors filed their *Plan Supplement to the Second Modified Joint Plan of Liquidation of Aceto Corporation and its Affiliated Debtors* (the "Plan Supplement") [Docket No. 892], in which the Debtors, among other things, alleged certain potential Causes of Action against Lonza (collectively, the "Rising Claims");

**WHEREAS**, Lonza disputes the Rising Claims in their entirety;

**WHEREAS**, on September 18, 2019, the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law and Order (I) Approving on a Final Basis the Second Modified Disclosure Statement and (II) Confirming Second Modified Joint Plan of Liquidation of Aceto Corporation and its Affiliated Debtors* [Docket No. 996];

**WHEREAS,** on October 1, 2019 (the "Chapter 11 Effective Date"), the terms and conditions of the Plan became effective [Docket No. 1067];

**WHEREAS**, upon the Chapter 11 Effective Date, the Debtors became the Liquidating Debtors and Steven S. Rogers became the Plan Administrator for the Liquidating Debtors;

**WHEREAS**, Section 9.03 of the Plan provides that after the Chapter 11 Effective Date, the right to compromise and settle various Claims or Interests and Causes of Action that the Debtors have against other Entities shall pass to the Liquidating Debtors without the need for further approval of the Bankruptcy Court (but subject to the rights of the Oversight Committee set forth in Section 5.14 and the Plan Administrator Agreement);

**WHEREAS**, Section 5.14(a) of the Plan states that after the Chapter 11 Effective Date, the Plan Administrator shall "first consult with and seek the reasonable consent of the Oversight Committee (such consent not to be unreasonably withheld)" regarding the "settlement or resolution of any Claims or Causes of Action to the extent that the Plan Administrator proposes a settlement (including providing for an Allowed Claim) in the amount of $500,000 and above";

**WHEREAS**, Section 2.1(c) of the Plan Administrator Agreement provides that "[i]n connection with the management of the Liquidating Debtors and implementation of the Plan on behalf of the Liquidating Debtors and the Beneficiaries, subject to the rights of the Oversight Committee as set forth herein and in the Plan (including as set forth in Section 5.14(a) of the Plan), the duties and powers of the Plan Administrator shall include. . . prosecuting and settling Causes of Action, including but not limited to certain specified Causes of Action identified in the Plan Supplement";

**WHEREAS**, on or about August 1, 2019, Rising and Lonza executed that certain Nondisclosure Agreement (the "NDA") for the purpose of fostering an amicable resolution of Lonza's Claim and the Rising Claims;

**WHEREAS**, the Plan Administrator has determined that the terms set forth herein are fair and reasonable and in the best interests of the Liquidating Debtors and their creditors;

**WHEREAS**, the Plan Administrator has sought the reasonable consent of the Oversight Committee with respect to this Settlement Agreement, and the Oversight Committee has

consented (or did not object) to the Liquidated Debtors' entry into the Settlement Agreement; and

**WHEREAS**, the Parties have agreed to resolve their disputes on the terms and conditions set forth in this Settlement Agreement.

### Agreement

**NOW, THEREFORE,** for and in consideration of the mutual agreements and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confirmed, without the admission of liability or the adjudication of any issue of fact or law, and upon the consent and agreement of the Parties to this Settlement Agreement by their authorized officials, each Party hereby agrees as follows:

1.      Recitals. The foregoing recitals are hereby incorporated by reference into this Settlement Agreement.

2.      Settlement Payment. Within twenty (20) calendar days following entry of a final, non-appealable order of the Bankruptcy Court, in form and substance acceptable to Lonza and Rising in their respective sole discretion, approving the Settlement Agreement (the "Approval Order"), Lonza shall make a payment in the amount of USD $1,600,000 (the "Settlement Payment") to Rising. The Settlement Payment shall be delivered in accordance with the instructions attached hereto as Exhibit A. Rising shall be solely responsible for, and legally bound to make payment of, any taxes determined to be due and owing (including penalties and interest related thereto) by it to any federal, state, local, or regional taxing authority as a result of the Settlement Payment.

3.      Settlement Effective Date. For the avoidance of doubt, the terms, conditions and obligations set forth in this Settlement Agreement shall not become binding and enforceable until the date on which: (i) each of the Parties has executed the Settlement Agreement; and (ii), unless otherwise agreed to by the Parties, the Bankruptcy Court has entered the Approval Order (such date, the "Settlement Effective Date").

4.      Release by Rising. As of the Settlement Effective Date, except as to the rights, benefits, and obligations that arise under this Settlement Agreement, each of Rising, on behalf of itself, its affiliates, and each and all of its and its affiliates' respective past, present and future administrators, successors, assigns, officers, directors, shareholders, managers, members, principals, employees, attorneys, representatives, receivers, beneficiaries, insurers, agents, and anyone claiming by or in the right of Rising (collectively, the "Liquidating Debtor Releasors"), for good and valuable consideration, the receipt of which is hereby acknowledged, hereby unconditionally releases, acquits, and discharges Lonza and each and all of its and its affiliates' respective past, present and future administrators, successors, assigns, officers, directors, shareholders, partners (including general and limited partners), managers, members, principals, employees, attorneys, representatives, receivers, beneficiaries, insurers, and agents (the "Lonza Releasees") from any and all actions, claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen,

matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, or otherwise, based on, relating to, or in any matter arising from, in whole or in part, the Agreement, the Rising Claims, the Claim, or the Chapter 11 Cases, which the Liquidating Debtor Releasors ever had, now have, can, shall or may have against the Lonza Releasees, from the beginning of the world to the Execution Date. For the avoidance of doubt, and without limiting the generality of the foregoing, the Liquidating Debtor Releasors specifically release and waive any and all of the claims that they could have asserted against the Lonza Releasees, including without limitation, the Rising Claims.

     5.    <u>Release by Lonza</u>. As of the Settlement Effective Date, except as to the rights, benefits, and obligations that arise under this Settlement Agreement, Lonza, on behalf of itself, its affiliates, and each and all of its and its affiliates' respective past, present, and future administrators, successors, assigns, officers, directors, shareholders, managers, members, principals, employees, attorneys, representatives, receivers, beneficiaries, insurers, agents, and anyone claiming by or in the right of Lonza (collectively, the "<u>Lonza Releasors</u>"), for good and valuable consideration, the receipt of which is hereby acknowledged, hereby unconditionally releases, acquits, and discharges Rising, its affiliates, and each and all of its and its affiliates' respective past, present and future administrators, successors, assigns, officers, directors, shareholders, partners (including general and limited partners), managers, members, principals, employees, attorneys, representatives, receivers, beneficiaries, insurers, and agents (the "<u>Liquidating Debtor Releasees</u>") from any and all actions, claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, or otherwise, based on, relating to, or in any matter arising from, in whole or in part, the Agreement, the Rising Claims, the Claim, or the Chapter 11 Cases, which the Lonza Releasors ever had, now have, can, shall or may have against the Liquidating Debtor Releasees, from the beginning of the world to the Execution Date. For the avoidance of doubt, and without limiting the generality of the foregoing, the Lonza Releasors specifically release and waive any and all of its claims that they could have asserted against the Liquidating Debtor Releasees, including without limitation, the Claim.

     6.    <u>No Admission of Liability</u>. This Settlement Agreement is not, and shall not in any way be construed as an admission that either Party, or any of their former or current parent companies, successors, assigns, affiliates, subsidiaries, joint venturers, partners, or the directors, officers, employees or agents of any of them, has acted wrongfully and/or illegally in any manner and the settlement set forth herein shall not be construed by any person or in any court, agency or tribunal whatsoever as a present or past admission of liability of any Party and shall not be offered or received or construed as evidence of such an admission, except that nothing herein shall prevent this Settlement Agreement or its terms from being used, offered or received in evidence in any proceeding to enforce any or all of the terms herein.

     7.    <u>Governing Law/Venue Selection/Service of Process</u>. This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, without regard to any conflict of laws principles. The Parties hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey, or, if such court is unavailable for any reason, the United States District

-4-

Court for the District of New Jersey, for any lawsuits, actions or other proceedings relating solely to the enforcement of this Settlement Agreement. For the avoidance of doubt, and notwithstanding anything contained in this Settlement Agreement to the contrary, the Parties do not consent or submit to the jurisdiction of the United States Bankruptcy Court for the District of New Jersey or the United States District Court for the District of New Jersey for any lawsuits, actions or other proceedings arising out of or relating to the Agreement. Solely with respect to any lawsuit, action or other proceeding commenced to enforce this Settlement Agreement, the Parties hereby agree that service of process shall be valid and deemed effectuated by sending a copy of the summons and complaint (or other equivalent initiating pleading) via an internationally-recognized courier service and electronic mail as follows:

As to Rising:

Steven Rogers
Kavod Pharmaceuticals, LLC
c/o Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020
srogers@triharborholdings.com

*With a copy to (which shall not be deemed to effectuate service):*

Gavin J. Rooney, Esq.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068
grooney@lowenstein.com

*and*

Steven E. Siesser, Esq.
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020
ssiesser@lowenstein.com

As to Lonza:

Albert Pereda
Lonza Sales Ltd.
Muenchensteinerstrasse 38
CH-4002 Basel, Switzerland
albert.pereda@lonza.com

*With a copy to (which shall not be deemed to effectuate service):*

Shaya Rochester, Esq.
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022-2585
shaya.rochester@katten.com

8.      Attorney's Fees and Costs. In any action to enforce the terms of this Settlement
Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and
costs incurred in connection with such proceeding.

9.      Sole Holder of Claims.

   (a)    Rising represents that it is the only entity that has any interest in the claims
          being released under Section 4 hereof, including the claims (if any) against
          Lonza for breach of the Agreement previously held by CorePharma LLC but
          which are now held by Rising, and further that it has not assigned, granted or
          otherwise transferred any of such claims or any part thereof to any other
          person or entity in any way.

   (b)    Lonza represents that it is the only entity that has any interest in the claims
          being released under Section 5 hereof and that it has not assigned, granted or
          otherwise transferred any of such claims or any part thereof to any other
          person or entity in any way.

10.     Withdrawal of Claim. Within five (5) calendar days of the Settlement Effective
Date, Lonza shall withdraw its Claim with prejudice and without costs. Lonza shall not receive
any distribution from the Liquidating Debtors on account of the Claim or otherwise.

11.     Miscellaneous

        a.      Nothing in this Settlement Agreement shall be deemed to void, modify,
supersede, replace, or otherwise compromise in any way the NDA, which remains in full force
and effect.

        b.      The Parties agree that if any provision of this Settlement Agreement is
determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that
provision shall not be a part of this Settlement Agreement. The legality, validity, and
enforceability of the remaining provisions shall not be affected by a provision of this Settlement
Agreement that is illegal, invalid, or unenforceable.

        c.      The language of this Settlement Agreement was reviewed and accepted by
the Parties' respective legal counsel prior to execution, and no Party shall be entitled to have any
language of this Settlement Agreement construed against the other Party as principal drafter
hereof.

-6-

d.      This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

e.      This Settlement Agreement may be executed in identical counterparts, including by facsimile and/or electronic mail, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

f.      The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations, and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

g.      Each Party represents that it possesses full power and authority to execute, deliver, and perform its respective obligations under this Settlement Agreement (including, without limitation, Section 4 and 5 hereof) and that the persons executing this Settlement Agreement on their behalf are duly authorized to execute and deliver this Settlement Agreement.

h.      The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

i.      This Settlement Agreement shall not be modified, altered, amended, or vacated without written consent of all parties hereto.


[Remainder of Page Intentionally Left Blank]

**IN WITNESS WHEREOF**, the Parties have set their hands in agreement as of Execution Date.

LONZA SALES AG

By: _____

Name: **Cordula Altekrüger**
Title: **Associate** General Counsel

Dr. Matthias Maurer
Associate General Counsel

KAVOD PHARMACEUTICALS LLC (F/K/A RISING PHARMACEUTICALS, INC., F/K/A RISING PHARMACEUTICALS, LLC)

By: _____

Name: Steven S. Rogers
Title: Plan Administrator

## Exhibit A

Payment Instructions

Bank:

SIGNATURE BANK
565 5th Ave, 12th Fl
New York, NY 10017

ABA Routing#:

Account #:

Account Name: Tri Harbor Holdings Corporation – Distributions Account