UNITED STATES BANKRUPTY COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------------x

**In re:**

**Tri Harbor Holdings Corporation (f/k/a Aceto Corporation),** *et al.*,[1]

    **Liquidating Debtors.**

**Chapter 11**

**Case No. 19-13448 (VFP)**

-------------------------------------------------------------x

## RESPONSE IN SUPPORT OF PENDING APPLICATION FOR APPROVAL

The United States, on behalf of the Environmental Protection Agency ("EPA"), the Department of Commerce acting through the National Oceanic and Atmospheric Administration ("NOAA"), and the Department of the Interior ("DOI"), respectfully submits to the Court this response in support of the pending application to approve the Consent Order that was lodged in this matter on February 22, 2021, Doc 1427 ("Debtors' Application"). The Consent Order addresses the liabilities of the Liquidating Debtors under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 *et seq*. ("CERCLA") in connection with the Berry's Creek Study Area ("BCSA") operable unit of the Ventron/Velsicol Superfund Site, located in Bergen County, New Jersey and a 12.3-acre parcel of property located at 511 13th Street in Carlstadt, New Jersey (the "Former Arsynco Facility"), collectively the

---

[1] The Liquidating Debtors in these chapter 11 cases and the last four digits of each Liquidating Debtor's taxpayer identification number are as follows: Tri Harbor Holdings Corporation (f/k/a Aceto Corporation) (0520); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392) ("Arsynco"); and Acci Realty Corp. (4433).

–1–

"Sites." The Consent Order provides for distributions of all remaining assets in the Estate available for distribution to holders of general unsecured claims, which assets total approximately $539,000 ("the Remaining Assets"). Debtors' Application (Doc. No. 1427) at 6 ¶19. The United States, together with the State of New Jersey ("NJ"), will receive all but $4,119.25 of the Remaining Assets. The distributions to the United States and NJ address the allowed general unsecured claims by the United States and NJ for the recovery under CERCLA of: (i) response costs incurred or to be incurred by the United States; and (ii) natural resource damages and assessment costs at the Sites.

The United States published notice of the lodging of the Consent Order in the Federal Register on February 26, 2021. 86 Fed. Reg. 11793. That notice informed the public that comments concerning the proposed Order could be filed with the Department of Justice ("DOJ") within sixty days thereof. The public comment period ended on April 27, 2021. Only one comment was received.

As set forth below, after considering the only public comment received, the United States believes that the proposed Order is fair, reasonable, and consistent with the purposes of CERCLA. Further, because the proposed Order meets the legal standard for judicial approval of settlement agreements, the United States respectfully supports the pending application before the Court to approve the proposed Order as a final judgment.

### I.  BACKGROUND

The Liquidating Debtors filed with the United States Bankruptcy Court for the District of New Jersey ("the Bankruptcy Court") a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), which cases have been jointly administered

as *In re: Tri Harbor Holdings Corporation (f/k/a Aceto Corporation), et al.*, Case No. 19-13448 (VFP) (the "Bankruptcy Case). (ECF No. 1426-1 at 2.)

The BCSA encompasses industrial, commercial, and institutional facilities that manufactured, processed, or used chemical products containing hazardous substances that may have been released, directly or indirectly, to or near Berry's Creek. Such releases include polychlorinated biphenyls ("PCBs"), mercury, as well as other contaminants. Both fish and crustaceans found at or near Berry's Creek are currently subject to EPA human consumption advisories —with specific focus on both mercury and PCB contamination found in these species. Arsynco manufactured pharmaceuticals and organic chemicals at the Former Arsynco Facility, which is adjacent to the BCSA. EPA has incurred unreimbursed past response costs in its work related to studying and cleaning up contamination at the BCSA, and natural resources have been injured as a result of the release of hazardous substances from the Sites.

The United States' Proof of Claim alleges that the Debtors are liable for response costs and natural resource damages under CERCLA at:

a. The Berry's Creek Study Area ("BCSA") operable unit of the Ventron/Velsicol Superfund Site, located in Bergen County, New Jersey; and

b. The Former Arsynco Facility.

The New Jersey Department of Environmental Protection (the "State" or "New Jersey") has also filed a proof of claim (Claim No. 264) ("New Jersey Proof of Claim") contending, *inter alia*, that Arsynco is liable under applicable federal and state environmental statutes and regulations including the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11 to -23.24, CERCLA, 42 U.S.C. §§ 9601-9675, for, among other things, natural resource

damages, remediation costs, and assessment costs in connection with the BCSA and/or the Former Arsynco Facility. Finally, the Berry's Creek Study Area Cooperating PRP Group (the "PRP Group"), which is implementing response actions at the BSCA, has filed a proof of claim (Claim No. 191)(the "PRP Group Proof of Claim"), contending, *inter alia*, that Arsynco is liable under CERCLA, 42 U.S.C. §§ 9601-9675 for response action and response costs at the BCSA. Each of the Proofs of Claim asserts the aforementioned liabilities as general unsecured claims against Debtor Arsynco.

## II. PROPOSED CONSENT ORDER

The proposed Consent Order resolves the Proof of Claim filed in August 2019 in the Asyrnco Inc. Chapter 11 bankruptcy relating to EPA's CERCLA cost recovery claim and DOI's and NOAA's NRD claims concerning the debtor's liability at the Berry's Creek Study Area of the Ventron/Velsicol Superfund Site (NJ). EPA, NOAA, DOI, NJ, the PRP Group, and the Liquidating Debtors are parties to the Consent Order. Pursuant to the Order, the EPA will receive an allowed claim of $9,566,000 for response costs related to remedial action at the Sites. This figure represents Arsynco's allocated share of responsibility, among other responsible parties, for EPA's unreimbursed response costs at the Sites. NOAA and DOI, along with the State of New Jersey, will receive an allowed claim for $8,215,000. This figure represents Arsynco's allocated share of responsibility, among other responsible parties, for the estimated natural resource damages at the Sites. The United States estimates that the total anticipated pro rata distribution would be approximately $287,760 (53.8%) to EPA, and $247,120 (46.2%) to NOAA, DOI and the State of New Jersey for each of the two allowed claims from the Remaining Assets. Thus, under the proposed Consent Order, virtually the entirety of the Remaining Assets

–4–

will be distributed to EPA, NJ, NOAA, and DOI. Upon deposit of EPA's distribution, the approximately $1.4 million claim of the PRP Group against Debtor Arsynco will be deemed withdrawn.

The Consent Order also contains other provisions for conditions on the distributions; covenants from the EPA, Liquidating Debtors, and Plan Administrator; and rights reserved to the United States and the State of New Jersey.

### III. STANDARD OF REVIEW

This court should review the settlement agreement to ensure that it is "fair, reasonable, and consistent with the Constitution and the mandate of law." United States v. Kramer, 19 F. Supp.2d 273, 280 (D.N.J. 1998); United States v. Southeastern Pa. Transp. Auth., 235 F.3d 817, 823 (3d Cir. 2000) ("A court should approve a proposed consent decree if it is fair, reasonable, and consistent with [statutory] goals."). The approval of a settlement is a judicial act that is committed to the informed discretion of the court. Donovan v. Robbins, 752 F.2d 1170, 1176-77 (7th Cir. 1985); United States v. Jones & Laughlin Steel Corp., 804 F.2d 348, 351 (6th Cir. 1986). The relevant standard for that determination "is not whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." Kramer, 19 F. Supp. 2d at 280 (quoting United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990)). The court's role in considering a proposed settlement agreement is a limited one, i.e., "[t]he court may either approve or disapprove the settlement; it may not rewrite it." Harris v. Pernsley, 654 F. Supp. 1042, 1049 (E.D. Pa.), aff'd, 820 F.2d 592 (3d Cir. 1987). Accordingly, judicial review of a settlement agreement negotiated by the United States does not involve de novo

–5–

evaluation of the settlement's merits or "second-guessing the Executive Branch." Id.; see generally Sam Fox Pub. Co. v. United States, 366 U.S. 683, 689 (1961).

In general, public policy strongly favors settlements of disputes without litigation. Donovan v. Robbins, 752 F.2d at 1177; Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1372 (6th Cir. 1976). The Third Circuit has stated that:

> Voluntary settlement of civil controversies is in high judicial favor . . . [w]hen the effort [to settle] is successful, the parties avoid the expense and delay incidental to litigation of the issues; the court is spared the burdens of a trial and the preparation and proceedings that must forerun it.

Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 80 (3d Cir. 1982).

Moreover, a consent decree is a "highly useful tool for government agencies [because] it maximizes the effectiveness of limited law enforcement resources" by permitting the government to obtain compliance with the law without lengthy litigation. United States v. City of Jackson, 519 F.2d 1147, 1151 (5th Cir. 1975). Indeed, courts have held that "sound policy would strongly lead [the court] to decline . . . to assess the wisdom of the Government's judgment in negotiating and accepting [a] . . . consent decree, at least in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting." Sam Fox Publishing Co., Inc. v. United States, 366 U.S. 683, 689 (1961).

The public policy in favor of the resolution of litigation by settlement is particularly strong in environmental cases. See, e.g., B.F. Goodrich v. Betkoski, 99 F.3d 505, 527 (2d Cir. 1996); United States v. Acton Corp., 733 F. Supp. 869, 872 (D.N.J. 1990); In re Acushnet River & New Bedford Harbor, 712 F. Supp. 1019, 1029 (D. Mass. 1989) ("Congressional purpose is better served through settlements which provide funds to enhance environmental protection,

–6–

rather than the expenditure of limited resources on protracted litigation."); Kramer, 19 F. Supp.2d at 281. This is because "the presumption in favor of settlement is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency specially equipped, trained or oriented in the field." In United States v. Cannons Eng'g Corp, 720 F. Supp. 1027, 1035 (D. Mass. 1989), aff'd, 899 F.2d 79 (1st Cir. 1990). Because "EPA is such an Agency," id., "there is a presumption of validity" to such settlements. Kelley v. Thomas Solvent Co., 790 F. Supp. 731, 735 (W.D. Mich. 1991). In sum, the Court's role in reviewing this Consent Order is limited.

### IV.   ARGUMENT

Because the proposed settlement is fair, reasonable, consistent with the goals of the statute which underlies it, and is in the public interest, this Court should enter the Consent Order.

#### A.   The Consent Order is Fair.

"To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." Cannons, 899 F.2d at 86; Arizona v. Nucor Corp., 825 F. Supp. 1452, 1456 (D. Ariz. 1992) aff'd sub nom. Arizona v. Components Corp., 66 F.3d 213 (9th Cir. 1995) (quoting Cannons). The courts have held that a settlement is entitled to a presumption of validity where it is negotiated at arm's length by experienced counsel with adequate information to evaluate the strengths and weaknesses of the case. See, e.g., Cannons, 899 F.2d at 84. Indeed, "[t]o the extent that the process was fair and full of 'adversarial vigor,' the results come before the court with a much greater assurance of substantive fairness." United States v. Montrose Chem. Corp., 793 F. Supp. 237, 240 (C.D. Cal. 1992).

The Consent Order is procedurally fair. The United States was represented by the United States Department of Justice, as well as experienced attorneys from EPA, NOAA, and DOI. Likewise, New Jersey was represented by experienced counsel from the Office of the Attorney General, and attorneys from the NJDEP. Finally, the Liquidating Debtors were also represented by experienced counsel. Where, as here, a proposed settlement agreement is "the product of good faith, arms-length negotiations" it is "presumptively valid." United States v. Oregon, 913 F.2d 576, 581 (9th Cir. 1990) (citation omitted).

The Consent Order is also substantially fair. The Consent Order is based on an allocation of the Debtors' share of responsibility relative to other parties who are also liable for response costs and natural resource damages. In reaching the proposed settlement, the United States carefully considered this allocation of responsibilities, as well as the assets of the estate. None of the other responsible parties has objected to the Consent Order, and the Liquidating Debtors consent to the Court's entry of Consent Order. Thus, the Consent Order is both procedurally and substantively fair.

B.     The Consent Order is Reasonable and Furthers Statutory Goals.

There are several reasons why the Consent Order is reasonable and furthers statutory goals. For example, the Liquidating Debtors will deposit approximately $287,760 into the EPA's Ventron/Velsicol Site Special Account based on an allowed claim of $9,556,000, as payment for the EPA's past and future costs of remediation of the BCSA addressing hazardous substances released from the Former Arsynco Facility among other sources. The Liquidating Debtors will also distribute an anticipated amount of approximately $247,120 for natural resources damages into an interest-bearing DOI special account for the BCSA, based on an

allowed claim of $8,215,000 for the NOAA, DOI, and the State of New Jersey. These funds will serve to, respectively, further the remediation of Superfund sites, as CERCLA intends, and to enable natural resource restoration planning and implementation related to natural resource injuries. (*See* ECF No. 1426-1 at ¶ 6). In addition, there will be savings in terms of judicial resources and the Parties' litigation costs. Finally, as in any case, there are risks associated with litigation that have been taken into account by the Parties—and, in this case, the dangers that general unsecured claims will not be paid out in the absence of a settlement. Thus, the Consent Order is a reasonable resolution of claims and furthers statutory goals.

    C.    <u>The Consent Order is in the Public Interest.</u>

For the same reasons that the proposed settlement furthers statutory goals, it is in the public interest. The public receives the benefit of funds for the remediation and restoration of the contaminated Sites. In addition, costly litigation that drains public resources will be avoided. Finally, the United States, together with NJ, is receiving virtually all the Remaining Assets in the Estate. A claim of about $4,000 will be paid to private parties who conducted environmental work related to the Sites. Therefore, the settlement is in the public interest.

    D.    <u>The Single Comment Received During the Period for Public Comment Does Not Warrant Disapproval of the Consent Order.</u>

Only one public comment was received on the proposed Order. See Exhibit A hereto. The comment was sent by e-mail and states as follows (the typographical errors appear in original):

> Subject: Re: nj polluter gettnig off easy
>
> public comment on federal register
> this company should be charged $20 milloin for its negative effects on teh life and earth of nj residents. this amount is far too low. letting pollutere get off cheap does not

–9–

> help the lives of those who suffer. this comment is for the public record. plase rceipt. jeanpubliee [personal e-mail address redacted]

The comment does not disclose facts or considerations indicating that the proposed Consent Order is inappropriate, improper, or inadequate.

First, the commenter is misinformed. This is a bankruptcy proceeding. The estate has a limited amount of money available for general unsecured creditors. Second, rather than letting Arsynco "get off cheap," the United States stands to recover virtually all the Remaining Assets of Arsynco under the Consent Order. Finally, because this settlement is "the product of good faith, arms-length negotiations," it is "presumptively valid." Oregon, at 581 (9th Cir. 1990).

Bare accusations that an environmental settlement is improper, without specifics or otherwise pointing to particular record references, are not enough to upset a consent decree. See United States v. Comunidades Unidas Contra la Contaminacion Comunidades Unidas, 204 F.3d 275, 281 (1st Cir. 2000) (citing United States v. District of Columbia, 933 F.Supp. 42, 48-49 (D.D.C. 1996)). By resolving its allowed claims in this bankruptcy settlement, the United States has avoided expending its and the Liquidating Debtors' resources through prolonged litigation, while at the same time, recovering the vast majority of the Remaining Assets. The Consent Order is appropriate and represents a fair settlement that promotes the purposes of CERCLA and the public's interest.

## V.    CONCLUSION

For the reasons stated above, the United States respectfully submits that the proposed Consent Order is fair, reasonable, in furtherance of statutory goals, and in the public interest. The United States respectfully requests that the Court to sign the proposed Consent Order and enter it as a final judgment.

–10–

Respectfully submitted,

NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

BY: /s/ *C.A. Fiske*
Catherine Adams Fiske
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

OF COUNSEL:

CLAY MONROE
Assistant Regional Counsel
EPA, Region 2
290 Broadway, 17th floor
New York, NY 10007-1866
Phone: (212) 637-3142
monroe.clay@epa.gov

MARK BARASH, Esq.
Senior Attorney
Office of the Solicitor of the United States Department of the Interior
15 State St., 8th Floor
Boston, MA 02109-3502
mark.barash@sol.doi.gov

KATE BARFIELD
National Oceanic and Atmospheric Administration
Office of General Counsel, Natural Resources
1315 East-West Highway
SSMC3# Room 15107
Silver Spring, MD 20910-3282
kate.barfield@noaa.gov